Jason Crews
1515 N Gilbert Rd Ste 107-204
Gilbert, AZ 85234
602-295-1875
Jason.crews@gmail.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT ARIZONA

PHOENIX DIVISION

| | |
|---|---|
| Jason Crews, | Case No.: 2:24-cv-00366-CDB |
| Plaintiff, | |
| vs. | Complaint for Violations of: |
| First Family Insurance, LLC; | 1. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.] |
| And | |
| John Cosgriff | |
| Defendants. | 2. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.] |
| | DEMAND FOR JURY TRIAL |

COMPLAINT- 1

# COMPLAINT

## Preliminary Statement

1. Plaintiff Jason Crews ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2. The Defendants in this action First Family Insurance, LLC and John Cosgriff orchestrated placing at least twelve (12) illegal telemarketing calls using an Automated Telephone Dialing System ("ATDS") to a number assigned to a cellular service which was included on the national Do-Not-Call List within a twelve-month period.

3. Plaintiff never consented to receive such messages.

## Parties

4. Plaintiff Jason Crews ("Crews") is and was a resident of Maricopa County, Arizona at all relevant times, and a resident of this District.

5. Defendant First Family Insurance, LLC ("FFI"), incorporated in Florida and is in the business of brokering health insurance, life insurance, and medical savings plans to the public[1].

6. Defendant John Cosgriff ("Cosgriff"), a resident of Minnesota, was at all times relevant the CEO of FFI who directed and authorized the illegal calls complained of herein.

## Jurisdiction & Venue

7. The Court has federal question subject matter jurisdiction over these TCPA claims: *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

8. The Court has specific personal jurisdiction over the Defendants because they have repeatedly placed calls to Arizona residents, including the Plaintiff. Defendants purposely placed calls to Arizona residents.

---

[1] https://archive.ph/mYiCI

COMPLAINT- 2

9. The venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the calls to Plaintiff were placed into this District.

## The Telephone Consumer Protection Act

8. In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]": Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

9. Under the TCPA, an individuals such as Cosgriff may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, Case 2:22-cv-02724-ER Document 1 Filed 07/11/22 Page 2 of 11 3 shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as of that person. 47 U.S.C. § 217 (emphasis added).

10. When considering individual liability under the TCPA, other Courts have agreed that an officer or individual involved in the telemarketing at issue may be personally liable under the TCPA. See, e.g., *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute.") (cleaned up) and *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

11. Cosgriff personally participated in the complained-of actions by personally directing and authorizing the scripting and selecting of calls to be made, selecting, and orchestrating the calling strategy, including by choosing to use pre-recorded calls.

### Factual Allegations

12. To promote their services Defendants also relied on the use of ATDS systems.

13. Plaintiff had no prior business relationship with Defendants.

14. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

15. Defendant Cosgriff is a "person" as defined by 47 U.S.C. § 153(39).

16. Defendant FFI is a "person" as defined by 47 U.S.C. § 153(39).

17. The phone number (602) 295-XXXX ("Cell Number") belongs to Plaintiff.

18. The Cell Number has been on the Do-Not-Call registry since November 7, 2006.

19. Despite this registration, Defendants placed the calls summarized in the following table with an Automated Telephone Dialing Systems ("ATDS").

| Date | Time | Caller ID |
| --- | --- | --- |
| 12/9/2023 | 9:22 AM | (602)452-9702 |
| 12/9/2023 | 9:38 AM | (860)517-4558 |
| 12/12/2023 | 10:49 AM | (860)517-4558 |
| 12/19/2023 | 8:32 AM | (860)517-4558 |
| 12/21/2023 | 3:58 AM | (860)517-4558 |
| 12/28/2023 | 10:51 AM | (860)517-4558 |
| 12/28/2023 | 10:58 AM | (860)517-4558 |
| 12/28/2023 | 12:35 AM | (860)517-4558 |
| 12/28/2023 | 2:33 PM | (860)517-4558 |
| 1/2/2024 | 1:38 PM | (860)517-4558 |
| 1/2/2024 | 1:39 PM | (860)517-4558 |
| 1/16/2024 | 3:24 PM | (860)517-4558 |

20. The Cell Number is assigned to a cellular phone used exclusively for personal residential purposes.

21. Plaintiff did not consent to receive telephone calls via ATDS.

22. The Cell Number is not associated with a business.

COMPLAINT- 4

Calls to Plaintiff

23. On or about December 9, 2023, at 9:22 am, Plaintiff was interrupted while working by a call presenting caller ID (602)452-9702. Plaintiff was greeted by an individual who said
> "The reason of my call is let you market benefits for 2024 with $0 because this is time of open enrollment. So I do believe you don't have Medicare and Medicaid. Is that correct?"

24. Having received numerous similar calls where the caller would not identify the true identity of party they were calling on behalf of in the past Plaintiff played along with the hopes of ascertaining their identity and asking them to stop calling.

25. The caller said he was attempting to transfer Plaintiff to a licensed agent numerous times, and eventually Plaintiff disconnected the call rather than waiste more time on the phone with the telemarketer.

26. On or about December 9 at 9:38 am Plaintiff was interrupted while working by a phone call presenting caller ID (860) 517-4558.

27. The individual identified themselves as Brian, and, despite the different caller ID, Plaintiff belived to be the same individual who called at 9:22 am that day because he complained about Plaintiff disconnecting the call.

28. Once again plaintiff played along to ascertain the identity of the caller and the company he represented.

29. Brian eventually transferred Plaintiff to an individual who identified himself as Andrew, who in turn transferred Plaintiff to a "licensed agent in your area".

30. That agent identified themselves as Ryan Anthony Lopez from First Family Insurance LLC.

31. Once Plaintiff believed he had established the identity of the callers, he requested that Ryan place him on their internal do-not-call list and send him a copy of their internal do not call policies.

32. Plaintiff did not receive a copy of their internal do not-call-policy ("DNC Policy") from Defendants.

33. Plaintiff avers and therefor believes this is because not such DNC Policy exists.

34. If any DNC Policy exists Plaintiff avers and therefor believes Defendant's employees and vendors were not trained its existence and/or its usage.

35. On or about December 16, 2023, Plaintiff sent an email to Defendant FFI requesting any evidence of consent in their possession, to be placed on their internal do-not-call list, and again requested a copy of their DNC Policy.

36. Defendants did not respond.

37. This is because Plaintiff did not consent.

38. Plaintiff avers and therefor believes this is because not such DNC Policy exists.

39. Despite Plaintiff's clear request to not be called FFI called at least 10 additional times from the same caller ID.

### Defendants' Use of an ATDS

40. FFI'scalled frequently and from various different numbers.

41. FFI's representatives used the identical or nearly identical scripts.

42. FFI's representatives purposefully attempted to conceal the identity of their company.

43. For these reasons, Plaintiff believes the telemarketers used an ATDS to generate leads for Defendant's debt relief services.

44. The calls were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator: *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

45. The Third Circuit recently clarified that "Congress envisioned a broad understanding of 'equipment'" that constitutes an ATDS. It also clarified that the analysis of whether an ATDS was used in violation of the TCPA centers around "whether the

COMPLAINT- 6

Defendants employ[s] [ATDS] capacities to make automated calls": *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it held that Congress intended to "ban all autodialed calls" because Congress "found autodialer technology to be uniquely harmful": Id. at 879 (cleaned up).

46. In enacting the ATDS prohibition, the Third Circuit cited favorably to Congressional understanding "that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications," including by "relying on computerized databases containing telephone numbers during their dialing campaigns": Id. at 880 (cleaned up). The Third Circuit held that, in passing the TCPA's ATDS prohibition, Congress intended to remedy the problems caused by callers using computer software to dial numbers randomly or sequentially from a list or database: *Id.*

47. The system(s) that Defendants used to place the calls to Plaintiff is/are an ATDS because it would be illogical to dial a number manually, have Plaintiff answer the phone, and only then connect Plaintiff to a human being.

48. Audible pauses, clicks, and beeps are hallmark indicia of ATDS systems. This supports the inference that Defendants used an ATDS, such as one that "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a pre-produced list": *Facebook*, 141 S. Ct. at 1171 n.7.

49. Other courts have held, post-Facebook, that allegations similar to those herein of the absence of a relationship between the parties, and the random nature of the automation device (such as the ability to randomly generate caller ID numbers), are all indicia of use of a random or sequential dialing device. This gives rise to the inference at the pleadings stage that an ATDS was used to make the calls: *Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021).

50. No facts exist here to support the conclusion that Defendants was calling from a curated list of his past customers. In contrast to a company that dials calls en masse to multiple individuals from a list of telephone numbers (as here), a company that calls its

1  existing customers utilizing an imported customer list does not place calls using an
2  ATDS. Such calling uses a database targeting existing customers' information rather than
3  computer-generated tables or lists of individuals to be called: *Panzarella*, 37 F.4th at
4  881–882.

5  51. Plaintiff is ignorant of the exact process by which the system(s) used by
6  Defendants operates other than by drawing the reasonable inference and alleging that the
7  system(s) stores or produces telephone numbers randomly or possibly sequentially based
8  on the facts ascertainable from the calls Plaintiff received, as outlined above. Indeed, as
9  at least one district court explained, "The newly clarified definition of an ATDS is more
10 relevant to a summary judgment motion than at the pleading stage": *Gross v. GG Homes,
11 Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021);
12 accord *Miles v. Medicredit, Inc.*, No. 4:20-cv- 01186-JAR, 2021 WL 2949565 (E.D. Mo.
13 July 14, 2021).

### Defendants' Conduct Was Knowing and Willing

15 52. Defendants intentionally called Plaintiff multiple times in order to advertise
16 their services to Plaintiff

17 53. Defendants knew his actions were in violation of the TCPA and willfully
18 continued his conduct.

### The TCPA Prohibits All Automated Calls to Protected Numbers

20 54. The TCPA makes it unlawful "to make any call (other than a call made for
21 emergency purposes or made with the prior express consent of the called party) using an
22 automated telephone dialing system or an artificial or prerecorded voice … to any
23 telephone number assigned to a … paging service, cellular telephone service, specialized
24 mobile radio service, or other radio common carrier service, or any service for which the
25 party is charged for the call": 47 U.S.C. § 227 (b)(1)(A)(iii).

26 55. Congress singled out these services for special protection because Congress
27 realized their special importance in terms of consumer privacy (as is the case with

COMPLAINT- 8

cellular phones): *Barr v. Am. Ass'n of Pol. Consultants Inc.*, 140 S. Ct. 2335, 2356, (2020) (Gorsuch, J. & Thomas, concurring in part and dissenting in part).

56. According to findings by the Federal Communications Commission ("FCC"), which is the agency Congress vested with the authority to issue regulations implementing the TCPA, such messages are prohibited because, as Congress found, automated or prerecorded messages are a greater nuisance and invasion of privacy than live ones, are costly, and are inconvenient.

57. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(1)(3).

58. These causes of action apply to users of any of four protected services (pager, cellular, specialized mobile radio [i.e., radio telephony locator beacon or dispatch system], or another radio common carrier service [i.e., ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged: *Lynn, Monarch Recovery Mgmt. Inc.*, 953 F. Supp. 2d 612, 623, (D. Md. 2013).

59. "Non-Emergency pre-recorded voice or autodialed calls to the destinations enumerated in 47 U.S.C. § 227(b)(1)(A) are permissible only with the prior express consent of the called party."

60. U.S.C. § 227(c)(2) states, "No person or entity shall initiate any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government" and defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person…": U.S.C. § 227(f)(15).

61. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used": In re Rules and

Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

62. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered:

> [A] Consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

63. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

64. 47 C.F.R. § 64.1200 extends 47 U.S.C. § 227 and establishes several delivery restrictions. It states, "No person or entity may … [e]xcept as provided … initiate any telephone call … using an automatic telephone dialing system or an artificial or prerecorded voice."

65. 47 C.F.R. § 64.1200(a)(1) specifically protects the following: "emergency telephone line," "guest room or patient room of a hospital, health care facility, elderly home, or similar establishment," and/or "cellular telephone service." 47 C.F.R. § 64.1200(a)(2) further prohibits entities from "initiat[ing], or caus[ing]to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described… "

66. The National Do-Not-Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers: 47 C.F.R. § 64.1200(c)(2).

67. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator": *Id.*

68. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provide a private right of action against any entity making those calls or "on whose behalf" such calls are promoted: 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

69. 47 C.F.R. § 64.1200(d) states, "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." It goes on to establish specific "minimum standards":

> (1) "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand…"
> (2) "[P]ersonnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list."
> (3) "If a person or entity making a call for telemarketing purposes … receives a request … not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name … and telephone number on the do-not-call list at the time the request is made … must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."
> (4) "A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."
> (5) "A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls."

## Claims

### Count One

70. Plaintiff incorporates the foregoing allegations as fully set forth herein.

COMPLAINT- 11

71. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute violations of the TCPA, 47 U.S.C. § 227, by sending calls, except for emergency purposes, to Plaintiff's telephone which is assigned to a cellular telephone service using an ATDS.

72. As a result of their unlawful conduct, Defendants invaded Plaintiff's personal privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling him to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop his illegal calling campaign.

73. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or his affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls or sending messages, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

74. Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violations of 47 U.S.C. § 227(b)(3)(B)

75. Defendants' violations were willful and/or knowing.

## Count Two

76. Plaintiff incorporates the foregoing allegations as fully set forth herein.

77. Defendants called Plaintiff's private residential telephone number which was registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

78. As a result of their unlawful conduct, Defendants invaded Plaintiff's personal privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(c)(3)(F) entitling him to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop his illegal calling campaign.

79. Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violations of 47 U.S.C. § 227(c)(3)(F).

80. Defendants' violations were willful and/or knowing.

## Count Three

### Violation of the Florida Telephone Solicitation Act, Fla. Stat. § 501.059

81. Plaintiff incorporates the foregoing allegations as fully set forth herein.

82. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

83. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

84. Defendant failed to secure prior express written consent from Plaintiff.

85. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff without Plaintiff's prior express written consent.

86. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff to be made utilizing an automated system for the selection or dialing of telephone numbers.

87. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff was harmed and are each entitled to a minimum of $500.00 in damages for each violation. *Id.*

### **Relief Sought**

WHEREFORE, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or prerecorded voice and/or ATDS.

B. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(3).

D. Because of Defendants' violations of the FTSA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(3).

E. Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED on this April 11, 2024.

/s/ *Jason Crews*
———————————
Jason Crews

COMPLAINT- 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT- 15