SHARON A. URIAS (SBN 016970)
**GREENSPOON MARDER LLP**
8585 E. Hartford Drive, Suite 700
Scottsdale, AZ 85255
Tel. 602.726.0711
Fax 480.306.5459
Email: sharon.urias@gmlaw.com
azdocket@gmlaw.com

JEFFREY A. BACKMAN (admitted *pro hac vice*)
ROY TAUB (admitted *pro hac vice*)
**GREENSPOON MARDER LLP**
200 East Broward Boulevard, Suite 1800
Ft. Lauderdale, FL 33301
Tel. 954.491.1120
Fax 954.213.0140
Email: jeffrey.backman@gmlaw.com
roy.taub@gmlaw.com
mary.torres@gmlaw.com
cheryl.cochran@gmlaw.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jason Crews,<br><br>                Plaintiff,<br><br>v.<br><br>First Family Insurance, LLC and John Cosgriff,<br><br>                Defendants. | No. 2:24-cv-00366-CDB<br><br>**DEFENDANTS FIRST FAMILY INSURANCE, LLC AND JOHN COSGRIFF'S MOTION TO DISMISS PLAINTIFF JASON CREWS' FIRST AMENDED COMPLAINT** |

Defendants First Family Insurance, LLC ("First Family") and John Cosgriff, hereby move, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), to dismiss Plaintiff Jason Crews' First Amended Complaint (the "FAC").

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiff is a serial litigant.  He has filed twenty-four lawsuits alleging purported violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") in this Court since October 2022.  Here, he alleges that First Family called him twelve times in violation of the TCPA and the Florida Telephone Solicitation Act, (Fla. Stat. § 501.059) ("FTSA"), and also names as a defendant John Cosgriff, the Chief Executive Officer of First Family.  For a number of reasons, Plaintiff's conclusory, plead-by-numbers FAC should be dismissed.  First, neither First Family nor Cosgriff is within the Court's personal jurisdiction.  ***In fact, First Family never called Plaintiff, nor did it authorize or cause anyone to call Plaintiff***.  Plaintiff alleges he was ultimately transferred on one of the calls to an independently contracted insurance advisor, but First Family (and Cosgriff) had no involvement in whatever telemarketing led to that transfer.  Nor has Plaintiff plausibly alleged the requisite agency connection, and he has no evidence to refute First Family's sworn testimony.

Even if there were personal jurisdiction in the face of sworn testimony that First Family (and Cosgriff) had nothing to do with the telephone calls at issue, the FAC still fails to allege facts sufficient to state a plausible claim against First Family or Cosgriff.  Plaintiff fails to offer any well-pleaded facts supporting any theory of individual liability against Cosgriff.  The law is clear that his position as defendant's CEO is not sufficient (otherwise senior executives would be named in every lawsuit filed against their company).  Furthermore, Plaintiff conclusorily alleges that whoever called him supposedly used automated dialing equipment prohibited by the TCPA and FTSA, but courts require more than simply parroting the statutory elements, namely well-pleaded facts sufficient to render that assertion plausible, but the FAC states none.  Finally, Plaintiff fails to allege a requirement on a TCPA do-not-call claim, namely that he registered the telephone number.  Without that allegation, this claim, too, is insufficiently stated.

# ARGUMENT

## I. APPLICABLE LEGAL STANDARDS

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). A "nonspecific conclusory statement is not enough" to satisfy that burden. *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986). The Court may consider written materials, and in opposing such a motion, the "plaintiff cannot simply rest on the bare allegations of its complaint," but must make at least "a prima facie showing of jurisdictional facts." *Schwarzenegger*, 374 F.3d at 800; *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Because "the jurisdictional limit of [Arizona's] long-arm statute is coextensive with that of the United States Constitution," "the Court need only determine whether exercising personal jurisdiction here would comport with federal due process." *Nat'l Cas. Co. v. Burns & Wilcox Ltd.*, No. CV-19-04854-PHX-DWL, 2020 WL 4039119, *3 (D. Ariz. July 17, 2020).

"[T]o survive a motion to dismiss" under Rule 12(b)(6), "a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## II. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

### A. The Court Lacks General Personal Jurisdiction

General jurisdiction allows a court to hear any claim against a defendant, irrespective of the underlying claim's connection to the forum state, and applies when a defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation omitted). The Supreme Court has clarified the limited bases that would permit general jurisdiction are an "individual's domicile," and, "[w]ith respect to a corporation, the place of incorporation and principal place of business . . . ." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). None of these applies here. Plaintiff concedes First Family is a limited liability company organized under the laws of the State of Florida and Cosgriff is a resident of Minnesota. *See* FAC at ¶¶ 5-6. Moreover, First Family has its principal place of business in Florida, and lacks any significant contacts with Arizona that could possibly otherwise give rise to general jurisdiction. *See* Declaration of John Blanchard at ¶¶ 2-5. Accordingly, this Court lacks general personal jurisdiction over either Defendant.

### B. The Court Lacks Specific Personal Jurisdiction

Specific jurisdiction permits a court to hear a particular case that arises out of or relates to the defendant's contacts with the forum. *Daimler*, 571 U.S. at 127. Three elements must be shown to establish specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

**1.     There is No Specific Personal Jurisdiction over First Family**

It is black letter law that the "'minimum contacts' necessary to create specific jurisdiction . . . . must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122-23 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* (collecting cases).  There are, however, no such jurisdictional contacts between First Family and Arizona.

"For a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, *4 (N.D. Cal. Jan. 4, 2018) (citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014)).  The same level of allegations sufficient to state liability under an agency theory are required to show personal jurisdiction on that basis.  *See Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, *13 (N.D. Cal. Dec. 4, 2017) ("*TranzVia*").

First Family did not place or make any telephone calls to Plaintiff.  *See* Blanchard Decl. at ¶ 6.   And the FAC is devoid of any factual allegations from which the Court could infer that First Family made the calls.  Rather, Plaintiff generally alleges that "Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf" placed the calls, and thus Defendants "made and/or knowingly allowed" the telephone calls to be made to him. FAC at ¶¶ 71, 73, 85, 86.  Courts have repeatedly rejected such "catch-all" formulations as failing to assert any well-pleaded fact beyond the speculative level that there was an agency relationship.[1]  Especially given First Family's sworn testimony denying any involvement with

---

[1] *See*, *e.g.*, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 n.5 (9th Cir. 2017); *Winters v. Grand Caribbean Cruises Inc*., No. CV-20-00168-PHX-DWL, 2021 WL 511217, *5-6 (D. Ariz. Feb. 11, 2021); *Naiman v. Freedom Forever, LLC*, No. 19-CV-00256-JSC, 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019); *Pallamary v. Elite Show Servs., Inc*., No. 17CV2010-WQH-BGS, 2018 WL 3064933, *14 (S.D. Cal. June 19, 2018); *Luis v. Walker v. Ditech Fin. LLC*, No. 16-CV-03084-KAW, 2016 WL 5846986, *4 (N.D. Cal. Oct. 6, 2016); *Emazing Lights, LLC v. De Oca*, No. SACV 15-1561-AG(EX), 2016 WL 7507765, *3 (C.D. Cal. June 20, 2016); *Freidman v. Massage Envy Franchising, LCC*, No.

or record of any calls to Plaintiff, Plaintiff is required to "show[ ] that [his caller] is subject to this court's jurisdiction, and that [the caller's] actions are attributable to [First Family] because [the caller] was [First Family's] agent with respect to the calls that [the caller] allegedly made to plaintiff." *TranzVia*, 2017 WL 5992123 at *10.  That is because "[i]t is only when the acts of an agent can be imputed to the principal that the court can exercise personal jurisdiction over the principal for those acts." *Id.* (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 414 (9th Cir. 1977).  The FAC is entirely devoid of any such well-pleaded facts, and Plaintiff has no supporting evidence.

The Ninth Circuit has recognized that the TCPA "incorporate[s] federal common law agency principles of vicarious liability . . . ." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013)).  *See also Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) ("A defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it.").  These common law agency principles "includ[e] not only formal agency, but also principles of apparent authority and ratification." *Dish Network*, 28 F.C.C. Rcd. at 6584.  *See also Abante*, 2018 WL 288055 at *4 (same).  The FAC makes no attempt to allege any facts required to place First Family within a plausible agency relationship with whomever called Plaintiff under any of these theories.  *See, e.g., TranzVia*, 2017 WL 5992123 at *12; *Abante*, 2018 WL 288055 at *5; *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014); *Rogers v. Postmates Inc.*, No. 19-cv-05619, 2020 WL 3869191, *4 (N.D. Cal. July 9, 2020) ("*Rogers II*").

Under the law of agency, "[i]t is not enough that each representative identified him or herself as acting on behalf of [First Family].  Such allegations say nothing about whether defendant consented to those representations.  And, more importantly, such allegations indicate nothing about the amount of control, if any, defendant purportedly exercised over the

---

3:12-CV-02962-L-RBB, 2013 WL 3026641, *3 (S.D. Cal. June 13, 2013); *Mindlab Media, LLC. v. LWRC Int'l LLC*, No. CV 11-3405 CAS FEMX, 2012 WL 386695, *4 (C.D. Cal. Feb. 6, 2012); *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1084 (N.D. Cal. 2011); *Barba v. Seung Heun Lee*, No. 09-1115-PHX-SRB, 2010 WL 11515658, *8 (D. Ariz. Aug. 25, 2010).

representatives." *Abante*, 2018 WL 288055 at *5. *See also Clemons v. State Farm Mut. Automobile Ins. Co.*, No. 1:20-CV-1050, 2020 WL 4193997, *4 (C.D. Ill. July 21, 2020) (same); *Rogers II*, 2020 WL 3869191 at *5 (finding allegations that company sent text messages on behalf of another failed to plausibly allege agency, as opposed to beneficial contractual relationship). Not only has Plaintiff failed to make any of these requisite allegations, plausible or otherwise, but the evidence is that "First Family has never authorized, directed, controlled, or caused any third party to place or initiate a telephone call to the Plaintiff," who does not appear in its records even as a lead, including his telephone number. *See* Blanchard Decl. at ¶¶ 6-7.

Moreover, as the specific jurisdictional contacts must provide the basis for actual agency for purposes of a TCPA claim, Plaintiff "must do more than establish an agency relationship. [He] must also establish that the purported agent had actual authority to place the unlawful calls," *i.e.*, to place a telephone call using an ATDS, automated system, or in violation of the "do-not-call" rules. *Jones*, 887 F.3d at 449. *See also Declements v. Americana Holdings LLC*, No. CV-20-00166-PHX-DLR, 2020 WL 4220075, *1 (D. Ariz. July 23, 2020) ("[E]ven assuming Mr. Berube's actions could be attributed to Mr. Stark, Plaintiff has not shown that Mr. Stark can be held liable for TCPA violations because Plaintiff does not allege that Mr. Berube directed agents use an autodialer in any way that violates the TCPA."); *Rogers v. Postmates Inc.*, No. 19-CV-05619-TSH, 2020 WL 1032153, *4 (N.D. Cal. Mar. 3, 2020) ("*Rogers I*") ("[E]ven if the sender was authorized to market on Postmates' behalf, there are no factual allegations suggesting that Postmates knew or reasonably should have known that the sender of the text or any of its agents or sub-agents were violating the TCPA on its behalf.").

The FAC has no well-pleaded facts along these lines. Moreover, First Family has submitted sworn testimony that it "never authorized any third party to place or initiate a telephone call to Plaintiff that would violate the [TCPA or FTSA]," and instead "requires that all such persons who seek to contract with First Family, including independent contractor insurance advisors such as Ryan Lopez," whom Plaintiff identifies in the FAC, (FAC at ¶¶ 30-31), "represent and agree that their insurance marketing and advertising activities will be in compliance with all applicable federal and state laws, which includes the TCPA and FTSA."

Blanchard Decl. at ¶ 8. That testimony precludes any finding that First Family authorized anyone to violate the TCPA or FTSA. *Accord Jones*, 887 F.3d at 449 (explaining contractual prohibition of "any act or omission that violates applicable state or Federal law, including but not limited to 'robo-calling,'" precluded finding of authority to place telephone calls in violation of the TCPA); *Abante Rooter & Plumbing*, *Inc. v. Arashi Mahalo, LLC*, No. 18-CV-07311-VC, 2019 WL 6907077, *1 (N.D. Cal. Dec. 19, 2019) ("*Abante II*") ("Abante doesn't contend that Arashi actually granted DTX the authority to use an ATDS or to call merchants on the Do-Not-Call Registry. And for good reason: Arashi presented unrebutted evidence that DTX 'repeatedly represented that its services were compliant with the TCPA.'").

As Plaintiff has failed to adequately plead any common law basis for agency, and can point to nothing to contradict First Family's sworn testimony denying any jurisdictional contacts – direct or through purported agents – Plaintiff cannot satisfy his burden to establish personal jurisdiction, and First Family should be dismissed on that basis.

## 2. There is No Specific Personal Jurisdiction over Cosgriff

Nor has Plaintiff provided a *prima facie* basis for exercising personal jurisdiction over Cosgriff, First Family's CEO. The only involvement alleged is the conclusory assertion that he "personally direct[ed] and authoriz[ed] the scripting and selecting of calls to be made, selecting, and orchestrating the calling strategy, including by choosing to use pre-recorded calls." FAC at ¶ 11.[2] Courts regularly find such allegations are insufficient to state the level of involvement required to state a claim for individual liability, in particular because they fail to allege authorization of conduct known to be in violation of the law. *See Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV, 2015 WL 3644598, *3 (S.D. Fla. June 10, 2015) ("[I]n every known case holding a corporate officer personally liable under the TCPA, the officer had either directly committed or knowingly authorized the corporation's wrongful acts."). For example, in *Mais v. Gulf Coast Collection Bureau, Inc*., No. 11-61936-CIV-SCOLA, 2013 WL 1283885, *3 (S.D. Fla. Mar. 27, 2013), the court found the mere allegation that the individual defendant was the company's "vice president and 20% owner," "control[led]

---

[2] Curiously, Plaintiff never alleges he received a pre-recorded call.

the policies and practices of [Gulf Coast] regarding the TCPA," and "authorized those policies and practices complained of herein" – virtually identical to the FAC's allegations – were insufficient to state any claim for relief against him "as a matter of law." Rather, a plaintiff must allege and show that the officer "failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA, or that he authorized or personally engaged in conduct that ***clearly*** violated the TCPA." *Id.* at *4 (emphasis added). Nothing like that is alleged against Cosgriff. In any event, Cosgriff, who is also the Chief Executive Officer of UnitedHealthOne, the individual, family, and distribution line of business within UnitedHealth Group Incorporated, the ultimate parent company of First Family, submits sworn testimony expressly refuting the conclusory allegation made against him. *See generally* Declaration of John Cosgriff.

Moreover, it is settled law that, "[u]nder the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). "Instead, some other reason for the court to disregard the corporate form must exist," such as a basis to pierce the corporate veil, and "the party seeking to invoke jurisdiction has the burden of proving that the court should pierce the corporate veil and exercise jurisdiction." *SinglePoint Direct Solar LLC v. Curiel*, No. CV-21-0989-PHX-JAT, 2022 WL 331157, *10 (D. Ariz. Feb. 3, 2022) (citing *Revolution Distribution v. Evol Nutrition Associates, Inc.*, No. CV-11-2120-PHX-JAT, 2012 WL 2368634, *7-8 (D. Ariz. Jun. 21, 2012)). As in *Single Point*, the FAC "does not include any facts or allegations that would support piercing the corporate veil with respect to" Cosgriff, and Plaintiff has "not submitted any declarations or affidavits alleging facts that would provide a prima facie showing of jurisdiction against [Cosgriff]." *Id.* Cosgriff should be dismissed for lack of personal jurisdiction as well.

### III.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST FIRST FAMILY

In addition to the jurisdictional problems with Plaintiff's Complaint, the FAC should also be dismissed for failure to state a claim against First Family.

A.     **The TCPA ATDS Claim (Count I) Should be Dismissed**

Plaintiff's first cause of action is for violation of the TCPA's prohibition against the use of an ATDS. *See* FAC at ¶¶ 70-75. Plaintiff's allegations fall short of alleging what is now definitively required to state a plausible ATDS claim.

The TCPA defines an ATDS as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." 47 U.S.C. § 227(a)(1). The Supreme Court has clarified that to qualify as an ATDS under the TCPA, "**whether storing or producing** numbers to be called, the equipment in question **must use a random or sequential number generator**." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170 (2021) (emphases added). "After the *Duguid* [*Facebook*] opinion, the ATDS portion of the claim requires an allegation that [defendant] used a random or sequential number generator to place a call to Plaintiff's cellphone . . . ." *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2021 WL 5040228, *3 (N.D. Tex. Oct. 29, 2021) (quoting *McEwen v. Nat'l Rifle Ass'n of Am.*, No. 2:20-CV-00153-LEW, 2021 WL 1414273, *7 (D. Me. Apr. 14, 2021)).

In the FAC, while Plaintiff acknowledges the *Facebook* decision and its requirement of the use of a random or sequential number generator, (FAC at ¶ 44), he never alleges – plausibly or otherwise – that the calls at issue were placed to him using such number generation. Rather, he alleges an ATDS was used "because it would be illogical to dial a number manually, have Plaintiff answer the phone, and only then connect Plaintiff to a human being." FAC at ¶ 47. Plaintiff never explains what is "illogical" about that or how connecting him to a human being requires the use of equipment that uses a random or sequential number generator, *i.e.*, an ATDS. Moreover, manual dialing is not the only alternative to an ATDS. And there is nothing "illogical" about Plaintiff being called twelve times over the course of five or so weeks, (FAC at ¶ 19), by manual dialing or through some other equipment that did not randomly or sequentially generate his telephone number. The FAC falls far short of plausibly alleging an ATDS was used. Just as numerous courts have done following *Facebook* when faced with

similarly lacking or conclusory allegations, the Court should dismiss Count I for failure to state a plausible ATDS claim.[3]

Plaintiff alleges that "audible pauses, clicks, and beeps are hallmark indicia of ATDS systems." FAC at ¶ 48. That is false, as those factors indicate only the use of a predictive dialer, which many courts had, pre-*Facebook*, regarded as a type of ATDS. *See*, *e.g.*, *Abramson v. Oasis Power LLC*, No. 2:18-CV-00479, 2018 WL 4101857, *2 (W.D. Pa. July 31, 2018) (reciting allegation that "the dialing technology that causes a distinctive click and/or pause is known as a 'predictive dialer,' in which lines are dialed using an algorithm to predict when a call center operator will be available—leading to the 'pause and click' as the operator takes the call"), report and recommendation adopted, 2018 WL 4095538 (W.D. Pa. Aug. 28, 2018). The Eleventh Circuit explained that predictive dialers were a "change[ ]" in "[t]echnology and marketing strategies" in which "companies *switch[ed] from using machines that dialed a high volume of **randomly or sequentially generated numbers*** to using '*predictive dialers*' that called a **list of pre-determined potential customers**," and thus are not included in the narrow definition of an ATDS that was later adopted by the Supreme Court. *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1308-09 (11th Cir. 2020) (emphases added).

The Supreme Court has now made clear that dialing equipment that does not "use . . . random or sequential number generator technology," such as a predictive dialer, cannot be deemed to be included in a "broad autodialer definition" when Congress was focused on the "unique problems for business, emergency, and cellular lines" caused by "random or sequential

---

[3] *See*, *e.g.*, *Hunsinger*, 2021 WL 5040228 at *3 ("The complaint fails to plead, however, that Alpha Cash sent the text messages using an ATDS . . . . because Hunsinger does not allege that Alpha Cash's system used a random or sequential number generator."); *Camunas v. Nat'l Republican Senatorial Comm.*, No. CV 21-1005, 2021 WL 5143321, *6 (E.D. Pa. Nov. 4, 2021) ("Camunas does not allege that his number was stored after it was generated by a random or sequential number generator. Thus, Camunas has not pleaded facts sufficient to support a reasonable inference that NRSC used a device that had 'the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator.'") (quoting *Facebook*, 141 S. Ct. at 1167)); *DeClements v. Americana Holdings LLC*, No. CV-20-00166-PHX-DLR, 2021 WL 5138279, *2 (D. Ariz. Nov. 4, 2021) (dismissing ATDS claim because "the complaint does not allege any facts showing that Plaintiff was texted as a result of an autodialer sequentially or randomly generating the digits of his phone number").

-10-

number generator technology" and proceeded to adopt a "narrow statutory design" to address just that kind of autodialer. *Facebook*, 141 S. Ct. at 1172. As one district court explained pre-*Facebook*, it is only through the "broader definition" of "ATDS" rejected in *Facebook* that "predictive dialers" are "to be considered an ATDS." *Bristow v. Am. Nat'l Ins. Co.*, No. 20-10752, 2021 WL 22457, \*3 (E.D. Mich. Jan. 4, 2021). *Facebook* resolved that circuit split and the Supreme Court unanimously adopted the narrow definition that excludes predictive dialers from the meaning of an ATDS. *See also*, *e.g.*, *Legere-Gordon v. FirstCredit, Inc.*, No. 1:19-CV-360 WBS, 2021 WL 2269503, \*8 (D. Idaho June 2, 2021) ("[T]he Supreme Court recently held that the definition of an ATDS under the statute was significantly narrower than many courts had assumed.") (citing *Facebook*, 141 S. Ct. at 1163). Accordingly, alleged facts that suggest the use of a predictive dialer – such as a brief pause or beep – do not indicate use of equipment that has the capacity, *using a random or sequential number generator*, to **store** or **produce** telephone numbers, and thus any alleged pause fails to raise beyond the speculative level the alleged use of an ATDS.

Plaintiff further confuses things by comparing a predictive dialer with its clicks and beeps with equipment that "use[s] a random [or sequential] number generator to determine the other in which to pick phone numbers from a pre-produced list." FAC at ¶ 48. It is not exactly clear how that renders plausible that anyone who called him used an ATDS, but Plaintiff's assertion is based on a misreading of a statement in a footnote in the *Facebook* decision regarding a device identified in an *amicus* brief, (141 S. Ct. at 1172 n.7), and the technology addressed in that footnote could be read to involve an ATDS only to the extent the "preloaded" list of telephone numbers itself was randomly or sequentially (*e.g.*, 817-555-0001, 817-555-0002) generated, something not plausibly alleged in the FAC.[4] Regardless, Plaintiff never alleges that he heard on any of the telephone calls at issue "[a]udible pauses, clicks, and beeps," (FAC at ¶ 48), and therefore none of his exposition supports his assertion in this case, likely recycled from his two dozen lawsuits, that an ATDS was used in violation of the TCPA. That accusation is never

---

[4] *See*, *e.g.*, *Borden v. eFinancial, LLC*, No. C19-1430JLR, 2021 WL 3602479, \*5 (W.D. Wash. Aug. 13, 2021); *Hufnus v. DoNotPay, Inc.*, No. 20-CV-08701-VC, 2021 WL 2585488, \*1 (N.D. Cal. June 24, 2021).

plausibly stated. To the contrary, Plaintiff alleges that on each of the telephone calls at issue he immediately spoke with a live representative, each of whom supposedly "used the identical or nearly identical scripts." *See id.* at ¶¶ 23-25, 27-31, 41. That Plaintiff spoke with a live person each time further undermines the use of an ATDS. *See, e.g.*, *Martin v. Direct Wines*, Inc., 2015 WL 4148704, at *2 (N.D. Ill. July 9, 2015) ("[T]he only pertinent fact [plaintiff] includes about the two calls--that he spoke to a live human, . . . --undercuts his conclusory assertion that defendants used an ATDS . . . ."); *Duran v. Wells Fargo Bank, N.A.*, 878 F. Supp. 2d 1312, 1316 (S.D. Fla. 2012) ("On the four occasions Defendant made phone calls to Plaintiff, Plaintiff alleges that he ***spoke*** with Defendant's representatives, which negates a claim that the calls were made by an automated dialing system or artificial or prerecorded voice.").

Since Plaintiff has failed to include sufficient-well pleaded allegations of fact, as opposed to conclusory parroting of statutory elements, to plausibly suggest that an ATDS was used to make the telephone calls at issue, Count One should be dismissed.

### B.    Plaintiff Fails to State a NDNC Claim (Count II)

Count II attempts to assert a claim under 47 U.S.C. § 227(c), which creates a private right of action for any person who has "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection . . . ." 47 U.S.C. § 227(c)(5). As is relevant for Plaintiff's NDNC claim, the regulations prohibit "initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government . . . ." 47 C.F.R. § 64.1200(c)(2).

Plaintiff, though, is ***not*** "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . ." *Id.* Plaintiff never alleges that he registered his telephone number on the Registry, instead simply alleging that "[t]he Cell Number has been on the Do-Not-Call registry since November 7, 2006." FAC at ¶ 18. For this reason, Plaintiff has no private right of action and cannot state a claim for relief for an alleged violation of 47 C.F.R. § 64.1200(c)(2).

As another court recently explained,

> [t]he plain language of Section 64.1200(c) indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry. . . . Section 6[4].1200(c) does not include a private remedy for a residential telephone subscriber who has not registered his or her telephone number on the national do-not-call registry. ***The regulation's plain language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else***.

*Rombough v. Robert D. Smith Ins. Agency, Inc*., No. 22-CV-15-CJW-MAR, 2022 WL 2713278, *2 (N.D. Iowa June 9, 2022) (emphasis added).

Consistent with the reasoning that § 64.1200(c) is specific to the person who actually registered the telephone number, the government agency charged with maintenance of the National Do-Not-Call Registry, the Federal Trade Commission, advises that registered telephone numbers are "automatically" removed from the Registry if, like Plaintiff's telephone number, they are reassigned. *See* Ex. A at 6 ("Do I need to take my old phone number off the list when I get a new number? No. The system removes numbers automatically when they're disconnected and reassigned.").

In *Rombough*, the court dismissed the complaint because the plaintiff failed to "allege that she registered her telephone number on the do-not-call registry." *Rombough,* 2022 WL 2713278 at *3. Plaintiff's complaint fails for the same reason.

### C. Count Three Should be Dismissed because Plaintiff Fails to Plausibly Allege Use of an "Automated System"

Count III of the FAC attempts to assert a claim under the Florida Telephone Solicitation Act, Fla. Stat. § 501.059(8)(a) ("FTSA"), which prohibits, in relevant part, "mak[ing] or knowingly allow[ing] a telephone sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers . . . without the prior express written consent of the called party."  The FAC is devoid of any well-pleaded facts plausibly suggesting any such system was used by whomever called Plaintiff in any of the telephone calls placed to him.

Plaintiff simply alleges that "Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff to be made utilizing an automated system for the selection or dialing of

-13-

telephone numbers." FAC at ¶ 86. That language simply parrots the language of the FTSA, which of course is not enough to state a plausible claim. *See Iqbal*, 556 U.S. at 678. There are no facts alleged in the FAC that plausibly suggest an "automated system for the selection or dialing of telephone numbers," as opposed to any other system, was used to place the twelve calls to Plaintiff over the five-week period identified in the FAC.

The Middle District of Florida has ruled that effectively the same scant allegation – in that case, "[t]o transmit the above telephonic sales calls, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers" – was conclusory and insufficient to state a plausible claim for relief. *Davis v. Coast Dental Servs., LLC*, No. 8:22-CV-941-KKM-TGW, 2022 WL 4217141, *2 (M.D. Fla. Sept. 13, 2022). The court explained that the plaintiff "could have pleaded facts such as information on [the defendant's] website indicating that messages are sent through automated systems, information regarding the formality of the message, or information regarding the phone number from which the message was received that could indicate an automated source," but the conclusory allegation akin to Plaintiff's here was equally consistent with the hiring of "a marketing firm to send individual messages from a personal cell phone in full compliance with the FTSA." *Id*. The same is true here. For effectively the same reasons set forth on the ATDS claim under the TCPA, Plaintiff has failed to allege facts sufficient to plausibly suggest the text messages were sent to him using an "automated system" for purposes of the FTSA.

## IV.  PLAINTIFF FAILS TO STATE A CLAIM AGAINST COSGRIFF

Separate and apart from the numerous deficiencies that require dismissal of Counts I, II, and III as asserted against First Family, which on their own merit dismissal of any claims for individual liability against Cosgriff, for the same reasons that Plaintiff's conclusory allegation that Cosgriff authorized First Family's "calling strategy" fails to allege a *prima facie* basis for the exercise of personal jurisdiction over Cosgriff, it also fails to state a claim for relief against him.[5] Plaintiff's bald, unsupported accusation that Cosgriff "orchestrat[ed] the calling strategy"

---

[5] *See, e.g., Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, No. 14 C 5602, 2019 WL 527497, *7 (N.D. Ill. Feb. 11, 2019); *Mais*, 2013 WL 1283885 at *3-4; *Physicians Healthsource*,

of using "pre-recorded calls," (FAC at ¶ 11), fails to plausibly allege the necessary involvement of a senior executive to state a claim for individual liability under the TCPA.

Furthermore, the Third Circuit recently questioned the "direct participation or authorization" standard for personal liability under the TCPA, and suggested that officers should rarely be held liable under the TCPA if acting in their corporate, rather than personal, capacities. *See City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 159-161 (3d Cir. 2018). The Third Circuit wrote that it is more appropriate to analyze "whether the relationship between the corporation and the individual defendant was 'eccentric under accepted norms' of corporate conduct such that faxes were really sent on behalf of the individual instead of the entity." *Id.* at 160 (quoting *United States v. Bestfoods*, 524 U.S. 51, 72 (1998)). Regardless, under either standard, Plaintiff falls far short of providing a plausible basis for asserting individual liability against First Family's CEO under the TCPA.

## CONCLUSION

For the foregoing reasons, Defendants First Family Insurance, LLC and John Cosgriff respectfully request that the Court enter an order dismissing Plaintiffs' First Amended Complaint, and granting any other relief the Court deems appropriate.

## CERTIFICATION PURSUANT TO LRCiv 12.1(c)

The undersigned hereby certifies that, in accordance with LRCiv 12.1(c), on May 3, 2024, Roy Taub, counsel for Defendants, met and conferred with Plaintiff *Pro Se*, by e-mail. Counsel and Plaintiff continued to correspond via e-mail, and Plaintiff elected not to pursue a telephonic meet and confer to further discuss the asserted grounds for dismissal. The parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party.

---

2015 WL 3644598 at *3; *Savanna Group, Inc. v. Trynex, Inc.*, No. 10 C 7995, 2013 WL 4734004, *8 (N.D. Ill. Sept. 3, 2013); *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001)

| | |
|---|---|
| DATED: May 9, 2024 | Respectfully Submitted,<br><br>GREENSPOON MARDER LLP<br><br>*/s/ Roy Taub*<br>Jeffrey A. Backman (admitted *pro hac vice*)<br>Roy Taub (admitted *pro hac vice*)<br>200 East Broward Boulevard, Suite 1800<br>Ft. Lauderdale, FL 33301<br>Tel.  954.491.1120<br>Fax  954.213.0140<br>jeffrey.backman@gmlaw.com<br>roy.taub@gmlaw.com<br>mary.torres@gmlaw.com<br>cheryl.cochran@gmlaw.com<br><br>Sharon A. Urias (SBN 016970)<br>8585 E. Hartford Drive, Suite 700<br>Scottsdale, AZ  85255<br>Tel.  602.726.0711<br>Fax  480.306.5459<br>sharon.urias@gmlaw.com<br>azdocket@gmlaw.com<br><br>*Attorneys for Defendants* |

### CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

      */s/ Roy Taub*
      ROY TAUB