SHARON A. URIAS (SBN 016970)
**GREENSPOON MARDER LLP**
8585 E. Hartford Drive, Suite 700
Scottsdale, AZ 85255
Tel. 602.726.0711
Fax 480.306.5459
Email: sharon.urias@gmlaw.com
          azdocket@gmlaw.com

JEFFREY A. BACKMAN (admitted *pro hac vice*)
ROY TAUB (admitted *pro hac vice*)
**GREENSPOON MARDER LLP**
200 East Broward Boulevard, Suite 1800
Ft. Lauderdale, FL 33301
Tel. 954.491.1120
Fax 954.213.0140
Email: jeffrey.backman@gmlaw.com
          roy.taub@gmlaw.com
          mary.torres@gmlaw.com
          cheryl.cochran@gmlaw.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jason Crews,<br><br>                Plaintiff,<br><br>v.<br><br>First Family Insurance, LLC and John Cosgriff,<br><br>                Defendants. | No. 2:24-cv-00366-GMS<br><br>**DEFENDANTS FIRST FAMILY INSURANCE, LLC AND JOHN COSGRIFF'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |

**PRELIMINARY STATEMENT**

Plaintiff is a serial *pro se* plaintiff who commenced this action under the Telephone Consumer Protection Act on February 22, 2024. *See* Dkt. No. 1. He filed a First Amended Complaint ("FAC") as of right on April 10, 2024. *See* Dkt. Nos. 16 & 18. Defendants First Family Insurance, LLC ("First Family") and John Cosgriff filed a Motion to Dismiss the FAC for lack of personal jurisdiction and failure to state a claim for relief, which is supported by two declarations. *See* Dkt. Nos. 21-23. Rather than respond, Plaintiff filed a Motion to Stay, a Motion for Extension of time to respond, and the subject Motion for Leave to File Plaintiff's Second Amended Complaint. *See* Dkt. Nos. 28-31. The grounds asserted in the Motion to Dismiss establish that Plaintiff's claims against First Family and Cosgriff are plainly outside the personal jurisdiction of this Court and deficient as a matter of law. The proposed amendment will not cure these legal insufficiencies. Accordingly, before allowing Plaintiff to multiply the proceedings in this case, including by adding new Defendants who likewise are not sufficiently alleged to be within the Court's personal jurisdiction nor are plausible claims for relief stated against them, the Court should decide the pending Motion to Dismiss Plaintiff's First Amended Complaint. *See* Dkt. No. 21. Permitting this *pro se* litigant to amend at this time, without resolving the merits of the pending Motion to Dismiss, will only create additional, unnecessary work for the parties and the Court. Therefore, Plaintiff's motion should be denied at this time, and any leave to amend is advisable only after the Court first rules on the pending Motion to Dismiss and Plaintiff can be informed of the deficiencies determined by the Court and attempt to address those, rather than constantly try to reset the pleadings upon the filing of a motion to dismiss.

# ARGUMENT

## I. APPLICABLE LEGAL STANDARDS

Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, after a responsive pleading is served, or twenty days after a pleading is filed if it is one to which no response is required, a party may amend its pleading only by leave of court or by written consent of the opposing party. While leave to amend is to be liberally granted, the decision of whether to allow amendment to a pleading is entrusted to the trial court's discretion. *Int'l Ass'n of Machinists and Aerospace Workers v Republic Airlines,* 761 F.2d 1386 (9th Cir. 1985). The propriety of a motion for leave to amend is generally determined by reference to the following factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party. *See id.* at 1390.

## II. PLAINTIFF SHOULD BE DENIED LEAVE TO AMEND AS THE AMENDMENT WILL BE FUTILE

"A district court does not err in denying leave to amend where the amendment would be futile . . . or would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (internal citations omitted). *See also Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied if it appears to be futile or legally insufficient.") (citation omitted). An amendment is considered futile when the proposed amendment would not survive a Rule 12(b) challenge. *See, e.g.*, *Whitmore v. Remedy Temp. Servs. Inc.*, No. CV-15-02161-PHX-SRB, 2016 WL 11602311, *1 (D. Ariz. Mar. 17, 2016).

### A. This Court Still Lacks Personal Jurisdiction

In the instant matter, Plaintiff's request for leave to amend must be denied because, even if granted, Plaintiff's proposed Second Amended Complaint ("SAC") would still be subject to dismissal for lack of personal jurisdiction over First Family and Cosgriff (as well as the three proposed new Defendants).

### 1.     General Personal Jurisdiction

Nothing in the proposed SAC changes the legal conclusion that First Family and Cosgriff, both of which are still alleged to be foreign Defendants, are not within the Court's general personal jurisdiction. *See* Dkt. No. 21 at 4. The same is true of the newly proposed Defendants, namely First Family Insurance Agency, Inc. ("FFIA"), which is alleged to be incorporated in Florida, its President, Kenneth Grushoff, and Ryan Anthony Lopez, both of whom are alleged to be residents of Florida. *See* Dkt. No. 31-1 at ¶¶ 7, 9, 10.

### 2.     Specific Personal Jurisdiction

As detailed in Defendants' Motion to Dismiss, Plaintiff lacks specific personal jurisdiction over First Family. First Family did not place or make any telephone calls to Plaintiff, and Cosgriff had nothing to do with them, either. *See* Dkt. No 23 at 3-8; Declaration of John Blanchard at ¶ 6; Declaration of John Cosgriff at ¶ 3. Similar to the FAC, the proposed SAC is devoid of any factual allegations from which the Court could infer that any of the named Defendants made the calls. Inexplicably, in the face of sworn testimony from First Family and Cosgriff, Plaintiff instead chose to double down, asserting against all ***five*** proposed Defendants:

> the Court has specific personal jurisdiction over **Defendants** because **Defendants** caused the events complained of herein to occur in Arizona; the TCPA claims arose from those events, **Defendants** had minimum contacts with Arizona to justify the assertion by an Arizona court of personal jurisdiction . . . . **Defendants** intentionally called or caused Plaintiff's number to be called by dialing an Arizona area code at least 11 times . . . . [and] [d]uring one of these calls, **Defendants** confirmed Plaintiff's residence in Arizona, . . . stated they would be connected with 'with a licensed agent from your state,' . . . and provided a copy of Lopez's Arizona license . . . to sell insurance in Arizona.

Dkt. No. 31-1 at ¶ 11 (emphases added)

Elsewhere in the proposed SAC, Plaintiff generally alleges that "Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf" placed

3

the calls, and thus Defendants "made and/or knowingly allowed" the telephone calls to be made to him. SAC at ¶¶ 140, 142, 154, 155. All five of these proposed Defendants apparently called Plaintiff? Because it is clearly not possible that two different businesses and three individuals all called a person, the courts have repeatedly rejected such "catch-all" formulations as failing to assert any well-pleaded fact beyond the speculative level that there was an agency relationship, whether to impute jurisdictional contacts or to state a claim for liability.[1] Especially given First Family's sworn testimony denying any involvement with or record of any calls to Plaintiff, Plaintiff is required to "show[ ] that [his caller] is subject to this court's jurisdiction, and that [the caller's] actions are attributable to [First Family] because [the caller] was [First Family's] agent with respect to the calls that [the caller] allegedly made to plaintiff." *Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, *10 (N.D. Cal. Dec. 4, 2017). That is because "[i]t is only when the acts of an agent can be imputed to the principal that the court can exercise personal jurisdiction over the principal for those acts." *Id.* (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 414 (9th Cir. 1977).

The proposed SAC does not do any of that. In the words of another court in this District that was faced with a similar pleading shortcut by a TCPA plaintiff,

> Plaintiffs do not distinguish between entities when setting out the challenged conduct, instead using the term "Defendant" as shorthand throughout the FAC.

---

[1] *See, e.g., Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 n.5 (9th Cir. 2017); *Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL 511217, *5-6 (D. Ariz. Feb. 11, 2021); *Naiman v. Freedom Forever, LLC*, No. 19-CV-00256-JSC, 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019); *Pallamary v. Elite Show Servs., Inc.*, No. 17CV2010-WQH-BGS, 2018 WL 3064933, *14 (S.D. Cal. June 19, 2018); *Luis v. Walker v. Ditech Fin. LLC*, No. 16-CV-03084-KAW, 2016 WL 5846986, *4 (N.D. Cal. Oct. 6, 2016); *Emazing Lights, LLC v. De Oca*, No. SACV 15-1561-AG(EX), 2016 WL 7507765, *3 (C.D. Cal. June 20, 2016); *Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, *3 (S.D. Cal. June 13, 2013); *Mindlab Media, LLC. v. LWRC Int'l LLC*, No. CV 11-3405 CAS FEMX, 2012 WL 386695, *4 (C.D. Cal. Feb. 6, 2012); *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1084 (N.D. Cal. 2011); *Barba v. Seung Heun Lee*, No. 09-1115-PHX-SRB, 2010 WL 11515658, *8 (D. Ariz. Aug. 25, 2010).

4

> But as noted, Plaintiffs define "Defendant" to simultaneously mean Grand Caribbean alone and Grand Caribbean plus an unspecified group of subsidiaries and/or agents. Such contradictory allegations make it impossible for the Court to determine the precise identity of the entity against whom the allegations are directed.

*Winters*, 2021 WL 511217 at *5. Judge Lanza aptly called the allegations defining "Defendant" in that manner a "word salad of allegations," (*id.*), an appellation that applies equally here and likewise renders the proposed SAC's attempt to avoid the irrefutable jurisdictional challenge made by First Family and Cosgriff futile.

Furthermore, the proposed SAC continues to fail to provide a *prima facie* basis for exercising personal jurisdiction over Cosgriff, First Family's Chief Executive Officer. To add to the conclusory allegation made in the FAC that Cosgriff "personally direct[ed] and authoriz[ed] the scripting and selecting of calls to be made, selecting, and orchestrating the calling strategy, including by choosing to use pre-recorded calls" (FAC at ¶ 11),[2] Plaintiff includes in the proposed SAC the similarly makeweight and unexplained assertion that Cosgriff "approv[ed] the use of ATDSs, and personally select[ed] and approv[ed] all third parties who placed calls on Defendants' behalf advertising Defendants' products and services, essential activities, and FFI's primary distribution operations." Dkt. No. 31-1 at ¶ 16. Plaintiff also adds outlandish allegations that Cosgriff, from his position at the top of First Family, "personally participated in the calls at issue because Cosgriff directed the calls to be transmitted," "has direct and personal involvement and ultimate control over every aspect of Defendant FFI's wrongful conduct," "controls the day-to-day operations of FFI and directs his employees, agents, salespersons, and solicitors to make TCPA-violating phone calls," "is not merely a bystander [but] is the mastermind who schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior," and "is the principal director and officer of Defendant FFI and the only person with the power to make unlawful, fraudulent,

---

[2] Curiously, Plaintiff never alleges he received a pre-recorded call.

5

and unethical behavior stop." *Id.* at ¶¶ 91, 95, 99, 100, 101. These are conclusory assertions without any stated basis in fact.

Courts also regularly find such allegations are insufficient to state the level of involvement required to state a claim for individual liability, in particular because they fail to plausibly allege authorization of conduct known to be in violation of the law. *See Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV, 2015 WL 3644598, *3 (S.D. Fla. June 10, 2015) ("[I]n every known case holding a corporate officer personally liable under the TCPA, the officer had either directly committed or knowingly authorized the corporation's wrongful acts."). Rather, a plaintiff must allege and show that the officer "failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA, or that he authorized or personally engaged in conduct that ***clearly*** violated the TCPA." *Id.* at *4 (emphasis added). Simply alleging a defendant is an executive with certain responsibilities and asserting as a result they must have had control is insufficient. *See*, *e.g.*, *Savanna Grp., Inc. v. Trynex, Inc.*, No. 10 C 7995, 2013 WL 4734004, *8 (N.D. Ill. Sept. 3, 2013) ("[P]remising Truan's liability solely on his status as the head of marketing would run afoul of the principle that a corporate officer may not be liable for corporate acts based purely on his or her status in the corporation.").

In any event, the proposed SAC's allegations about Cosgriff still fail to avoid dismissal for lack of personal jurisdiction because they ignore the sworn testimony submitted by Cosgriff that expressly refutes the conclusory allegation made against him in the FAC and now in the proposed SAC. Far from being the "mastermind" of the alleged calls to Plaintiff (Dkt. No. 31-1 at ¶ 100), Cosgriff averred that "in my job responsibilities, I have nothing to do with directing or authorizing any telephone calls, the scripting or selection of calls to be made, or selecting or 'orchestrating' any calling strategy." Dkt. No. 23 at ¶ 3. Plaintiff's repeated allegations to the contrary are not only futile, they are frivolous. If allowed, any

6

such amendment will simply delay the inevitable dismissal for lack of personal jurisdiction because Plaintiff must now do more than make (baseless) allegations, he must come forth with *evidence* to refute Cosgriff's sworn testimony. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The proposed SAC refers to no such evidence needed to alter that outcome.

### B.    Plaintiff Fails to State a Claim Against "Defendants"

"[N]umerous courts have held that a proposed amendment that clearly is frivolous, advancing a claim or defense that is legally insufficient on its face, or that fails to include allegations to cure defects in the original pleading, should be denied." 6 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1487 (3rd ed. 2020). Here, Plaintiff's proposed amendments are futile because, even with the new allegations, for the same reasons the FAC fails to state a plausible claim for relief, so does the proposed SAC.

#### 1.    Count I:  ATDS Claim

Nothing in the proposed SAC avoids the grounds for dismissal for Count I, Plaintiff's TCPA ATDS claim, that applied to the same claim asserted in the FAC. *See* Dkt. No. 31-1 at ¶¶ 73-87, 139-144. Other than inexplicably attempting to make the claim apply to all five proposed Defendants, Plaintiff makes only minimal amendments to his factual allegations, rendering this proposed allegation futile. Plaintiff again alleges that "audible pauses, clicks, and beeps are hallmark indicia of ATDS systems." *Id.* at ¶ 83. That continues to be false. As First Family and Cosgriff explain in their Motion to Dismiss, those factors indicate only the use of a predictive dialer, which many courts had, before the Supreme Court's ruling in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), regarded as a type of ATDS. *See* Dkt. No. 21 at 10-12. After *Duguid*, that is no longer the law. Plaintiff now merely proposes to add that "Plaintiff heard silence and was forced to say hello multiple times while waiting to be connected to Defendants' representatives," and "[w]hen answering, Plaintiff heard a 'bloop'

before being connected to Defendants' representatives." Dkt. No. 31-1 at ¶¶ 76-77. That is just more of the same irrelevancy on an ATDS claim.

### 2. Count II: NDNC Claim

The proposed SAC also fails to address the deficiency identified in the FAC, namely the lack of any allegation that Plaintiff himself registered his telephone number on the National Do Not Call Registry, which precludes a private right of action under 47 U.S.C. § 227(c)(5). *See* Dkt. No. 21 at 12-13 (citing *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278 (N.D. Iowa June 9, 2022)). Despite being placed on notice of this deficiency, Plaintiff refuses to address it, deleting his allegation that "[t]he Cell Number has been on the Do-Not-Call registry since November 7, 2006," (FAC at ¶ 18), but asserting in Paragraph 52 that "[t]he Cell Number has been on the Do-Not-Call registry continuously since November 7, 2006." Dkt. No. 31-1 at ¶ 52. Plaintiff fails to add any allegation that he *himself* registered the telephone number, which is exactly what is needed for this claim to avoid dismissal, rendering this aspect of the request for leave to amend futile as well.

### 3. Count III: FTSA Claim

Nor does the proposed SAC allege any facts sufficient to assert a viable claim under the Florida Telephone Solicitation Act, Fla. Stat. § 501.059(8)(a) ("FTSA"), which is the claim asserted in Count III of both the FAC and the proposed SAC. That subsection of the FTSA prohibits using an "automated system for the selection or dialing of telephone numbers," (*id.*), but just like the FAC, the proposed SAC lacks any well-pleaded facts plausibly suggesting any such system was used by whomever he now alleges called him (whether the five named Defendants against whom this claim is leveled or possibly the unnamed "offshore telemarketer"). *See* Dkt. No. 31-1 at ¶¶ 109-110. Once again, Plaintiff simply parrots the statutory language, (*id.* at ¶ 155), which is plainly insufficient to state a

claim for relief, as argued in First Family's and Cosgriff's Motion to Dismiss. *See* Dkt. No. 21 at 13-14.

### 4. Claims Against Cosgriff

As explained above in connection with Cosgriff's jurisdictional challenge, the proposed SAC still fails to state any plausible claim for individual liability against Cosgriff, First Family's Chief Executive Officer. Rather than allege any well-pleaded, non-conclusory facts, Plaintiff layers additional conclusory assertions that are fact-free and plainly implausible, such as that Cosgriff "personally participated in the calls at issue" to Plaintiff, "closely holds [First Family] and is intimately involved in all decision making and legal activities of [First Family]," "directed his employees to use the [unspecified] technology with the intent of breaking state and federal laws," has "direct and personal involvement in and ultimate control over every aspect of [First Family]'s wrongful conduct that violated the TCPA and/or directly controlled and authorized this conduct," and "controls the day-to-day operations of [First Family]," among a host of other conclusory and fact-free assertions. Dkt. No. 31-1 at ¶¶ 91-102. None of these allegations are well-pleaded or can be credited by the Court, and therefore the requested leave to amend would be futile.

### 5. Claims Against FFI Agency, Grushoff, and Lopez

The proposed SAC also fails to state a plausible claim for relief against the newly named Defendants. Plaintiff alleges Grushoff, "at the behest of Cosgriff, directed and authorized the illegal calls complained of herein," (Dkt. No. 31-1 at ¶ 9), which overlaps with the conclusory allegations made against Cosgriff. Lopez is alleged to be an employee of First Family who "placed at least one of the illegal calls complained of herein." *Id.* at ¶ 10. There are no allegations made against First Family Insurance Agency, Inc. ("FFI Agency") aside from those made against the lumped-together concept of "Defendants," so no claim is stated against it whatsoever.

Plaintiff also alleges in the proposed SAC, in a section under the hearing of "Vicarious Liability," that First Family, "through their authorized representative Defendant Lopez, made multiple auto-dialed robocalls to Plaintiff." *Id.* at ¶ 103. Plaintiff proceeds to attempt to allege an agency relationship under formal agency and ratification concepts. *See id.* at ¶¶ 104-122. This, too, fails to state a plausible claim for relief.

With respect to formal agency, "[a]n agent is one who 'act[s] on the principal's behalf and subject to the principal's control.'" *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010) (quoting *Restatement (Third) of Agency* § 1.01 (2006)). "Generally, an individual acting as an 'independent contractor,' rather than an agent, does not have the traditional agency relationship with the principal necessary for vicarious liability." *TranzVia*, 2017 WL 5992123 at *12. The conclusory and nonspecific nature of the allegations advanced by Plaintiff preclude him from plausibly alleging formal agency. Courts do not accept conclusory and naked assertions of authorization and control, completely lacking in any factual enhancement and an explanation as to how Plaintiff could know such facts, as sufficient and plausible to allow a court to draw the reasonable inference of the existence of an agency relationship, as opposed to a standard contractual relationship. What Plaintiff alleges here effectively could be alleged about anybody (and, given his litigation experience, almost certainly has been). Far more is required to state a ***plausible*** claim. As another court wrote about the "instructive" *TranzVia* ruling, which applies with equal force here:

> There, the plaintiff alleged he had received a call from a telemarketer which violated the TCPA. 2017 WL 5992123. The plaintiff alleged that the defendant had hired the telemarketer, a third-party, to act as its agent in marketing its payment services. He alleged that the defendant "had control over [the third-party's] actions on its behalf," "limited the types of business [the telemarketer] could solicit," "restricted the geography within which [the telemarketer] could promote [the defendant's business]," "decided whether . . . it would accept a customer from [the telemarketer]," "instructed [the telemarketer] with respect to the volume of calling," and "had day-to-day control over [the telemarketer's] actions." *Id.* at *11. The court found these

> allegations, which the plaintiff asserted showed that defendant had control over the telemarketer's actions on its behalf, were insufficient to demonstrate that the plaintiff had "'had control over'" the telemarketer's actions and thus were insufficient to demonstrate a plausible claim for relief based on vicarious liability. *Id.* ***The court reasoned that the allegations, "without any facts showing how [defendant] did those things or how it knew those things, or what facts the allegations are based on – are not facts that allow the court to draw the reasonable inference that [defendant] is vicariously liable for [the telemarketer's] alleged misconduct***." *Id*. . . . . Here, [Plaintiff] similarly has not alleged any facts that support the inference that [First Family] exercised any control over [Lopez] or [his] marketing . . . .

*Rogers v. Postmates Inc.*, No. 19-cv-05619, 2020 WL 3869191, *4 (N.D. Cal. July 9, 2020) ("*Rogers II*") (emphasis added).[3]

Here, Plaintiff states no facts plausibly suggesting that First Family "controlled or had the right to control [Lopez] and, more specifically, the manner and means of the [marketing] . . . [he]conducted," which is necessary for actual agency. *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014). Moreover, while Plaintiff seeks to premise some agency relationship upon the fact that the company that allegedly called Plaintiff transferred the call to Lopez, who identified himself as "from First Family Insurance," (Dkt. No. 31-1 at ¶¶ 17-42), "[i]t is not enough that each representative identified him or herself as acting on behalf of [the purported principal]. Such

---

[3] *See also*, *e.g.*, *Canary v. Youngevity Int'l, Inc.*, No. 5:18-CV-03261-EJD, 2019 WL 1275343, *5–7 (N.D. Cal. Mar. 20, 2019) (finding allegations that "Youngevity 'allows' employees and agents like Cordell to market loans through DAC by making autodialed and prerecorded calls to non-customers; that Cordell 'had the actual authority of Youngevity to make the complained-of calls'; and that Cordell 'was an authorized agent of Youngevity when he made the call'" to be "too general and conclusory"); *Ewing v. Encor Solar, LLC*, No. 18-CV-2247-CAB-MDD, 2019 WL 277386, *7 (S.D. Cal. Jan. 22, 2019) (holding allegations that "Sunrun had exercised control over [two purported agents], expressly told them what to do, and that each of the calls were made on behalf of Sunrun, identifying Sunrun as the 'principal' . . . . insufficient to establish vicarious liability"); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440 (VEC), 2015 WL 7736547, *7 & n.13 (S.D.N.Y. Nov. 30, 2015) ("Plaintiffs seem to suggest that the allegations that Experian 'had the right to control the sending of the texts' and 'in fact controlled and even scheduled the sending of each segment of the texts' are sufficient to plead Experian's vicarious liability for Archer's actions. . . . But to plead vicarious liability under the TCPA in accordance with traditional tort principles, Plaintiffs must allege *some* facts regarding the relationship between an alleged principal and agent . . . .").

11

allegations say nothing about whether defendant consented to those representations. And, more importantly, such allegations indicate nothing about the amount of control, if any, defendant purportedly exercised over the representatives." *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, *5 (N.D. Cal. Jan. 4, 2018). *See also Clemons v. State Farm Mut. Automobile Ins. Co.*, No. 1:20-CV-1050, 2020 WL 4193997, *4 (C.D. Ill. July 21, 2020) (same); *Rogers II*, 2020 WL 3869191 at *5 (finding allegations that company sent text messages on behalf of another failed to plausibly allege agency, as opposed to contractual relationship). Furthermore, a TCPA or FTSA plaintiff "must do more than establish an agency relationship. They must also establish that the purported agent had actual authority to place the unlawful calls," *i.e.*, to place a telephone call using an ATDS, automated system, or in violation of the "do-not-call" rules. *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018).[4] The proposed SAC has no such well-pleaded allegations of fact.

Significantly, Plaintiff does not allege that Lopez called him. Rather, Plaintiff pins all primary violations of the TCPA and FTSA upon "an offshore telemarketer" that First Family allegedly "hired . . . to make phone calls on their behalf," and confusingly states, even though First Family allegedly hired this telemarketer, "Lopez is the agent of FFI, and the offshore telemarketer is the subagent of FFI." Dkt. No. 31-1 at ¶ 109. At the same time, Cosgriff allegedly "personally directed the calls to be transmitted," (*id.* at ¶ 91), presumably by the "offshore telemarketer." Again, especially against this confusing backdrop where he tries to wrap in all of the newly named "Defendants," Plaintiff must do more than say the word

---

[4] *See also Declements v. Americana Holdings LLC*, No. CV-20-00166-PHX-DLR, 2020 WL 4220075, *1 (D. Ariz. July 23, 2020) ("Plaintiff does not allege that Mr. Berube directed agents use an autodialer in any way that violates the TCPA."); *Rogers v. Postmates Inc.*, No. 19-CV-05619-TSH, 2020 WL 1032153, *4 (N.D. Cal. Mar. 3, 2020) ("*Rogers I*") ("[E]ven if the sender was authorized to market on Postmates' behalf, there are no factual allegations suggesting that Postmates knew or reasonably should have known that the sender of the text or any of its agents or sub-agents were violating the TCPA on its behalf.").

"agent" or "subagent" and cannot simply make conclusory assertions of "control," which is all he does in the proposed SAC. *See id.* at ¶¶ 110-111 (alleging "[t]he offshore telemarketer made the phone calls at the direction and control of FFI" and "FFI exercised interim control over whom and under what conditions referrals would be accepted"). These conclusory assertions cannot be credited.

Plaintiff's ratification allegations are also insufficient to avoid dismissal. Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting *Restatement (Third) of Agency* § 4.01(1)). "Even if a principal ratifies an agent's act, '[t]he principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking.'" *Id.* (quoting *Restatement (Third) of Agency* § 4.01, cmt. b). Thus, to allege that First Family ratified the making of any "allegedly improper calls, plaintiff must allege facts sufficient to allow the court to reasonably infer that [First Family] knew that [the overseas telemarketer] violated the TCPA and that [First Family] 'knowingly' accepted the benefits of [the overseas telemarketer's] violation." *TranzVia*, 2017 WL 5992123 at *13. No such facts are alleged in the proposed SAC.

Plaintiff once again advances only conclusory allegations. *See* TAC at ¶¶ 15-16, 37-38, 60-61. First, there is no asserted basis to infer there were any benefits – a health insurance policy sold to Plaintiff – to accept in the first place. Ratification is not possible under those circumstances. *Accord Kristensen*, 879 F.3d at 1014-15. Second, Plaintiff's complete failure to allege or establish any agency relationship is also fatal to a ratification finding because, "[a]lthough a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 680 (9th Cir. 2014). *See also Kristensen*, 879

13

F.3d at 1015; *Abante*, 2018 WL 288055 at *6. Third, Plaintiff's allegation that First Family knew that the unidentified overseas telemarketer had violated the TCPA, (Dkt. No. 31-1 at ¶ 112), is made without any explanation or factual basis, wholly unadorned with anything that could render such a charge plausible. How? When? What is Plaintiff's basis for making that significant and weighty allegation? From this bald, conclusory predicate Plaintiff alleges First Family "continu[ed] to accept referrals," (*id.*), yet another conclusory and fact-free allegation that fails to plausibly suggest knowledge or notice. Here, too, the proposed SAC fails to state any plausible theory of vicarious liability to connect First Family to any purported TPCA violations by Lopez or, more significantly, the unidentified overseas telemarketer.[5]

### III. LEAVE TO AMEND SHOULD BE DENIED FOR BAD FAITH, DILATORY MOTIVE, AND UNDUE PREJUDICE TO THE DEFENDANTS

Leave to amend should also be denied where there is a showing of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party by virtue of allowance of the amendment. *Blau v. America's Servicing Co.*, No. CV 08-773-PHX-MHM, 2008 WL 3845383, *1 (D. Ariz. August 18, 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

As discussed more fully in the Defendants' Motion to Dismiss, Plaintiff is a serial litigant and has filed at least twenty-four lawsuits alleging purported violations of the TCPA in this Court since October 2022. Mooting Defendants' Motion to Dismiss will only restart the motion to dismiss practice, which already envisions, if appropriate, Plaintiff being given leave to file an amended complaint *after* obtaining a ruling on Defendants' Motion to

---

[5] As noted, the proposed SAC provides no basis for any asserted claim against FFI Agency.

14

Dismiss. Proceeding otherwise, as Plaintiff seeks, would be prejudicial to Defendants and a waste of judicial and party resources.

## CONCLUSION

Defendants have shown in their motion to dismiss that Plaintiff's claims under the TCPA and FTSA, along with Plaintiff's jurisdictional assertions, have serious flaws. Plaintiff's proposed amendment will not, and does not, cure these defects, and it would be unduly prejudicial to allow the requested leave to file the proposed SAC. Accordingly, Defendants submit that the Court should deny Plaintiff's motion for leave to amend.

DATED: June 10, 2024  Respectfully Submitted,

GREENSPOON MARDER LLP

*/s/ Roy Taub*
Jeffrey A. Backman (admitted *pro hac vice*)
Roy Taub (admitted *pro hac vice*)
200 East Broward Boulevard, Suite 1800
Ft. Lauderdale, FL 33301
Tel. 954.491.1120
Fax 954.213.0140
jeffrey.backman@gmlaw.com
roy.taub@gmlaw.com
mary.torres@gmlaw.com
cheryl.cochran@gmlaw.com

Sharon A. Urias (SBN 016970)
8585 E. Hartford Drive, Suite 700
Scottsdale, AZ  85255
Tel.  602.726.0711
Fax  480.306.5459
sharon.urias@gmlaw.com
azdocket@gmlaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

                                                 */s/ Roy Taub*
                                                 ROY TAUB