Jason Crews
1515 N Gilbert Rd Ste 107-204
Gilbert, AZ 85234
602-295-1875
Jason.crews@gmail.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT ARIZONA
PHOENIX DIVISION

Jason Crews,

                    Plaintiff,

vs.

First Family Insurance, Inc, *et al.*
                    Defendants.

Case No.: CV-24-00366-PHX-GMS

Plaintiff's Reply to Defendants First Family Insurance, LLC AND John Cosgriff's Opposition To Plaintiff's Motion For Leave to File Second Amended Complaint

DEMAND FOR JURY TRIAL

Plaintiff Jason Crews hereby replies to Defendants First Family Insurance, LLC AND John Cosgriff's Opposition To Plaintiff's Motion For Leave to File Second Amended Complaint.

**"Justice So Requires" Leave for Plaintiff to Amend his complaint.**

The Federal Rules of Civil Procedure permit a party to amend its complaint "with the opposing party's written consent or the court's leave" and provide that the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend ... unless it determines that the pleading **could not possibly** be cured by the allegations of other facts." *Lopez*, 203 F.3d at 1130 (9th Cir.2000) (internal quotation marks and citations omitted)(emphasis added), and This policy is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990)).

REPLY- 1

Granting leave to amend in this case will serve the interests of justice. The Plaintiff seeks to amend the complaint to include First Family Insurance Agency, Inc., Ryan Anthony Lopez, and Kenneth Grushoff as Defendants due to their involvement in the alleged illegal telemarketing calls and to, *inter alia,* allege facts that clarify the court's personal jurisdiction over the defendants, their vicarious liability, and ratification of Defendant Cosgriff's involvement. It also includes facts leading the Plaintiff to believe in the Defendants' use of an Automated Telephone Dialing System ("ATDS") and their knowing and willful placement of calls, along with exhibits including a certified transcript of the call which led the Plaintiff to the Defendants' involvement, proposed defendant Lopez's Arizona license, Defendant Cosgriff's resume confirming his participation in distribution operations, a schedule of business associated with Defendant Cosgriff, and other cases facing similar allegations of violations of the TCPA. Defendants First Family Insurance, LLC, First Family Insurance Agency, Inc., John Cosgriff, Ryan Anthony Lopez, and Kenneth Grushoff individually and collectively acted to contribute to the violations alleged in the TCPA complaint. It is imperative for justice that the Defendants' willful behavior be halted, the Plaintiff be compensated for damages incurred through their willful disregard of the TCPA, and the public be informed of all entities involved in this misconduct.

**No Factor Militating Against Leave to Amend Is Present**

As courts in this circuit and others have repeatedly held, the consideration of prejudice to the opposing party carries the most significant weight. See *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 185 (9th Cir.1987). Prejudice is the "touchstone of the inquiry under rule 15(a)." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir.2001); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir.1973)(stating that "the crucial factor is the resulting prejudice to the opposing party"); cf. *DCD Programs*, 833 F.2d at 186–87 (noting that [the] party opposing amendment "bears the burden of showing prejudice"). Absent prejudice or a strong showing of any of the remaining *Foman* factors, **there exists a *presumption* under Rule 15(a) in favor of granting leave to amen**d. *See Lowrey v. Tex. A & M UnivSys.*, 117 F.3d 242, 245 (5th Cir.1997)(emphasis added).

The Defendants have failed to demonstrate the "touchstone of the inquiry under Rule 15(a)", which is prejudice. They have failed to adequately address the remaining *Foman* factors, let alone make a 'strong showing,' and ultimately fail to meet their burden. Despite this failing, Plaintiff will address each factor in turn.

**Defendants will not be prejudiced.**

The only argument the Defendants make, which can barely be considered an argument, is to argue that the "Plaintiff is a serial litigant who has filed at least twenty-four lawsuits alleging purported violations of the TCPA in this Court since October 2022" (Doc. 34, at 14), a fact is entirely irrelevant to the current matter before the court., and to make an unfounded conclusory statement that "Proceeding otherwise, as the Plaintiff seeks, would be prejudicial to the Defendants and a waste of judicial and party resources" (Doc. 34, at 15). Unlike the Defendants, who have repeatedly refused to confer and have opposed even reasonable requests for additional time, the Plaintiff has not wasted judicial resources and merely seeks leave from the court to amend his complaint.

In the Ninth Circuit, courts consider the following factors when analyzing whether "prejudice to the opposing party" exists.

**Timing**

First, the Court disfavors amendments sought late in the litigation, particularly after the close of discovery, thereby delaying proceedings and escalating costs (*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). In this case, the litigation process is just beginning, and discovery has not started due entirely to the defendant's actions. There will be no delay in proceedings as no proceedings have been set.

**Effect**

Amendments that substantially alter the legal and factual issues are disfavored. (*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)). Plaintiff's proposed amendment does not substantially alter the legal or factual issues.

**Tactical Delays**

Repeated failures to amend after prior opportunities can suggest tactical delays and may be deemed prejudicial, particularly if these amendments do not address prior

deficiencies (*Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, Plaintiff has amended once with leave of the court when Defendants had not yet answered the Complaint or filed a motion under Rule 12(b) even though leave was not needed (Doc. 15). The plaintiff now seeks leave to file his second amended complaint to address the defendant's perceived deficiencies in his FAC.

**Trial Preparations**

Finally, the potential impact on trial preparations; amendments prompting significant strategy changes or recalibrations of case theories close to the trial date can disadvantage the opposing party, thus being viewed as prejudicial (*Acri v. International Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986)). Here, the parties are nowhere near trial; thus, defendants could not be so prejudiced.

**The plaintiff has caused no undue delay.**

"Undue delay," for purposes of determining whether to grant a motion for leave to amend a pleading, is defined as a delay that prejudices the nonmoving party or imposes unwarranted burdens on the court (*Davis v. Powell*, 901 F. Supp. 2d 1196, 1212 (S.D. Cal. 2012) (internal quotations and citations omitted)). Factors relevant to evaluating undue delay include: (1) whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading, (2) the length of the delay measured from the time the moving party obtained relevant facts, (3) whether discovery has closed, and (4) proximity to the trial date (See *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990); see also *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798-99 (9th Cir. 1991)).

**The plaintiff could not have known the facts and theories raised by the amendment in the original pleading.**

The Defendants highlighted various issues within the complaint, which the Plaintiff has addressed through amendments. Central to the Defendants' objections were affidavits revealing facts previously unknown to the Plaintiff. Notably, when requested by the Plaintiff, the Defendants consistently refused to participate in a Rule 26(f) conference, which would have provided an ideal opportunity to disclose any relevant evidence they possessed. This factor supports the Plaintiff's position in seeking the amendment.

REPLY- 4

**The Length of the Delay Measured From the Time the Moving Party Obtained Relevant Facts**

Defendants have not claimed any prejudice related to delays, nor is there any evidence suggesting that the Second Amended Complaint (SAC) or any other procedural actions were delayed in a way that adversely affected the proceedings. All motions related to the case have been filed on time. Upon learning of Defendant's concerns regarding his FAC, he immediately sought to remedy those concerns through a SAC. When it became apparent that Plaintiff would need additional time to complete his SAC, he proactively requested a 14-day courtesy extension from the defendants, which they opposed, to finalize the SAC.  Ultimately, the Plaintiff filed the necessary motions less than five days after making that request. No further delays have been reported. Given these circumstances, this factor distinctly supports the Plaintiff's position.

**Discovery Has Yet to Commence**

Discovery in this case has not yet commenced because the Defendants have consistently declined to participate in a Rule 26(f) conference in spite of the Plaintiff's requests. This lack of cooperation in beginning the discovery process supports the Plaintiff's position, as it highlights the Defendants' reluctance to engage in preliminary discussions that could facilitate the proceedings. This factor, therefore, weighs in favor of the Plaintiff, indicating a tactical delay by the Defendants, which can be seen as contributing to the lack of progress in discovery.

**Proximity to the trial date**

Since no trial date has been set and no deadlines have been imposed on the parties by the court, Plaintiff's SAC would not disrupt the court's schedule or cause undue delay in the proceedings, thus favoring Plaintiff's request for an amendment.

**The plaintiff has not behaved in bad faith**

if the party seeking the amendment is doing so in bad faith or with a dilatory motive, the court may deny the amendment (Foman v. Davis, 371 U.S. 178, 182 (1962)). In their opposition, Defendant has provided no evidence that Plaintiff's motion was made in bad faith or for dilatory reasons.

1     **The plaintiff's SAC is not futile.**

2       **A. Personal Jurisdiction**

3         Defendants expend considerable effort arguing that Plaintiff's amended complaint

4 is futile and inaccurate and ignores applicable legal standards.

5         The plaintiff "need only demonstrate facts that if true would support jurisdiction

6 over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Although the

7 plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted

8 allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (citations

9 omitted). "Conflicts between [the] parties over statements contained in affidavits must be

10 resolved in the plaintiff's favor." *Id.*

11         To establish jurisdiction, "conflicts between the facts contained in declarations

12 submitted by the two sides must be resolved in the Plaintiff's favor." *Rhoades v. Avon Prods.,*

13 *Inc.*

14     **B. The Court possesses General Personal Jurisdiction.**

15         "[G]eneral jurisdiction permits a defendant to be haled into court in the forum

16 state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at

17 801. *854 It exists where a nonresident defendant's activities within a state are "substantial"

18 or "continuous and systematic." *Data Disc.*, 557 F.2d at 1287. Such contracts must "be of

19 the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,

20 223 F.3d 1082, 1086 (9th Cir. 2000).  *Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848,

21 853–54 (N.D. Cal. 2022)

22         The test's first prong may be satisfied by "purposeful availment of the

23 privilege of doing business in the forum; by purposeful direction of activities at the forum;

24 or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,

25 433 F.3d 1199, 1206 (9th Cir. 2006) (citation and internal quotation marks omitted). The

26 second prong does not necessarily require a "a strict causal relationship between the

27 defendant's in-state activity" and the claim, but it does require "an affiliation between the

28 forum and the underlying controversy, principally, an activity or an occurrence that takes

place in the forum State and is therefore subject to the State's regulation." *Ford Motor Co. v.*

*Montana Eighth Jud. Dist. Ct.*, U.S., 141 S. Ct. 1017, 1025–26, 209 L.Ed.2d 225 (2021) (internal quotation marks, citations, and alteration omitted).  *Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848, 854 (N.D. Cal. 2022)

### 1. Prong One

Defendants have, and Plaintiff has alleged in his SAC, purposefully availed themselves of the privilege of doing business in Arizona, "...Defendants caused the events complained of herein to occur in Arizona; the TCPA claims arose from these events. Defendants had minimum contacts with Arizona to justify the assertion by an Arizona court of personal jurisdiction, *Meyers v. Hamilton Corp.,* 693 P.2d 904 (Ariz. 1985). Defendants intentionally called or caused Plaintiff's number to be called by dialing an Arizona area code at least 11 times within a 12-month period to advertise their services, despite Plaintiff's number being listed on the National Do Not Call Registry. Thus, these calls violated the TCPA. During one of these calls, Defendants confirmed Plaintiff's residence in Arizona, Exhibit 1 Page 1 ¶¶11, 15, Page 2,¶16; Page 3 ¶16, 23; Page 7 ¶10, stated they would be connected with "with a licensed agent from your state", *Id.* Page 2 ¶20-25 and provided a copy of Lopez's Arizona license (Exhibit 2) to sell insurance in Arizona"(Doc. 31-1 ¶ 11 ).

"Cosgriff personally participated in the complained-of actions by personally directing and authorizing the scripting and selecting of calls to be made, selecting and orchestrating the calling strategy, including by choosing and approving the use of ATDSs systems to use pre-recorded calls, and personally selecting and approving all third parties who placed calls on Defendant's' behalf advertising on Defendant's' products and services, essential activities, and FFI"s primary distribution operations" (Doc. 31-1 ¶ 16).

### 2. Prong Two

The occurrence which took place in the forum is apparent.  Plaintiff is a resident of Maricopa County, Arizona (Doc. 31-1, ¶5), which is situated within this district. On multiple occasions (Doc. 31-1 ¶53) has purposefully directed their activities at the forum by calling a cell phone with an Arizona telephone area code (Doc. 31-1 ¶22), utilizing

telephone numbers with Arizona caller ID's (Doc. 31-1, ¶ 26), confirming Plaintiff's place of residence on the call (Doc. 31-1 ¶ 11 ), and utilizing individuals such as Proposed Defendant Lopez who are licensed to sell insurance within Arizona.

**C.  The court possesses Specific Personal Jurisdiction.**

Specific jurisdiction arises when a defendant's particular contacts with the forum give rise to or relate to the claim in question. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). "A court exercises specific jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." G*lencore Grain Rotterdam BV v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). The Ninth Circuit employs a three-part test to determine whether there is specific jurisdiction over a defendant: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. *Schwarzenegger*, 374 F.3d at 802. *Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848, 854 (N.D. Cal. 2022).

**1.  Prong 1**

The test's first prong may be satisfied by "purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (citation and internal quotation marks omitted).  *Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848, 854 (N.D. Cal. 2022)

All non-resident Defendants and Proposed Defendants purposefully availed themselves of the privilege of conducting activities in the forum.   If this were not so, Defendants and their representatives would not have called telephone numbers with Arizona residents, confirmed the residency of Plaintiff in Arizona, or utilized the services of a sales representative who is licensed to sell health insurance products in Arizona on

insurance marketplaces approved by Arizona, which would include in their network health care providers in Arizona.

### 2. Prong 2

The second prong does not necessarily require a "a strict causal relationship between the defendant's in-state activity" and the claim, but it does require "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,  U.S., 141 S. Ct. 1017, 1025–26, 209 L.Ed.2d 225 (2021) (internal quotation marks, citations, and alteration omitted*).  Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848, 854 (N.D. Cal. 2022).

Plaintiff's claims arise out of and relate to the defendant's forum-related activities. Plaintiff's claims arise solely from Defendant's alleged illegal telemarketing calls into this district.  Defendants willfully and intentionally sell insurance products in this district, and within that forum, Plaintiff has plausibly alleged they violated the TCPA.

### 3. Prong 3

The plaintiff bears the burden of satisfying the first two prongs of the test. *Schwarzenegger*, 374 F.3d at 802. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a **compelling case**" that the exercise of jurisdiction would not be reasonable."  *Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848, 854 (N.D. Cal. 2022) (emphasis added). *Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848, 854 (N.D. Cal. 2022)

Defendants have made no case, much less a compelling one; the exercise of jurisdiction would not be reasonable.

### D. Defendants Jurisdictional Arguments

"Similar to the FAC, the proposed SAC is devoid of any factual allegations from which the Court could infer that any of the named Defendants made the calls" (Doc 34 at 4).

1   This is untrue; see SAC Doc. 31-1 ¶ 39 and Doc 31-1 Exhibit 1 at Page 8 ¶¶ 15-23.

2   "That agent identified themselves as Ryan Anthony Lopez ("Lopez") from "First Family

3   Insurance."

4   "All five of these proposed Defendants apparently called Plaintiff? Because it is

5   clearly not possible that two different businesses and three individuals all called a person,

6   the courts have repeatedly rejected such "catch-all" formulations as failing to assert any

7   well-pleaded fact beyond the speculative level that there was an agency relationship,

8   whether to impute jurisdictional contacts or to state a claim for liability" (Doc 34 at 4).

9   Plaintiff's allegations are not catch-all but reflect the reality of the facts at hand.   Individuals

10  and companies that utilize Telemarketing are rife with fraud and abuse; rather than take

11  measures to comply with the TCPA, they hide behind layers of intermediate companies,

12  lead providers, and called "independent contractors" to knowingly and willfully violate the

13  TCPA and profit.  As such, Plaintiff has not alleged that all defendants physically placed the

14  phone calls. Instead, Plaintiff has alleged that to one degree or another, all Defendants are

15  liable for placing the phone calls.  See Doc. 31-1, ¶¶ 16, 39, 91-122.

16  "Especially given First Family's sworn testimony denying any involvement with or

17  record of any calls to Plaintiff, Plaintiff is required to "show[ ] that [his caller] is subject to

18  this court's jurisdiction, and that [the caller's] actions are attributable to [First Family]

19  because [the caller] was [First Family's] agent with respect to the calls that [the caller]

20  allegedly made to plaintiff." *Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL

21  5992123, *10 (N.D. Cal. Dec. 4, 2017). That is because "[i]t is only when the acts of an

22  agent can be imputed to the principal that the court can exercise personal jurisdiction over

23  the principal for those acts." *Id.* (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d

24  406, 414 (9th Cir. 1977)." (Doc 34 at 4).   The link from the call to the Defendant First

25  Family is direct, as alleged. Plaintiff has alleged "That agent identified themselves as Ryan

26  Anthony Lopez ("Lopez") from "First Family Insurance." Doc. 31-1 ¶ 39. Doc 31-1 Exhibit

27  1 at Page 8 ¶¶ 15-23.

28  "Judge Lanza aptly called the allegations defining "Defendant" in that manner a

"word salad of allegations," (*id.*), an appellation that applies equally here and likewise

renders the proposed SAC's attempt to avoid the irrefutable jurisdictional challenge made by First Family and Cosgriff futile" Doc. 34 at 5.  The plaintiff has made specific allegations for each defendant as appropriate, and simply because he, in some instances, refers to them as a whole does not render his complaint futile. See Doc. 31-1, ¶¶ 16, 39, 91-122.

Defendants accuse Plaintiff of utilizing "conclusory assertions without any stated basis in fact. "  Doc 34 at 7, "Rather, a plaintiff must allege and show that the officer "failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA, or that he authorized or personally engaged in conduct that clearly violated the TCPA." *Id.* at *4 (emphasis added)." Doc 34 at 7.  Plaintiff's SAC contains numerous allegations and supplementary evidence from certified transcripts, Doc 31-1 Exhibit 1, Copies of licenses presented to Plaintiff by Defendant First Family and their representative Proposed defendant Lopez, Doc 31-1 Exhibit 2, Defendant Cosgriff's LinkedIn Profile which states "John Cosgriff is the Chief Executive officer of UnitedHealthOne... the **distribution** line of business within United Healthcare" (emphasis added. Doc 31-1 Exhibit 3 lists other entities with which Mr. Cosgriff is associated, and cases are known to the plaintiff where those entities face allegations of TCPA violations in different districts. Doc 31-1 Exhibit 4 and 5.  All of which support the claims made by Plaintiff.

"The proposed SAC's ... ignore the sworn testimony submitted by Cosgriff that expressly refutes the conclusory allegation made against him in the FAC and now in the proposed SAC. Far from being the "mastermind" of the alleged calls to Plaintiff (Dkt. No. 31-1 at ¶ 100), Cosgriff averred that "in my job responsibilities, I have nothing to do with directing or authorizing any telephone calls, the scripting or selection of calls to be made, or selecting or 'orchestrating' any calling strategy," Doc 34 at 7.  Here, the parties appear to have a genuine dispute of facts.  As previously discussed, in dispute where the facts are in dispute, the court must side with the Plaintiff.  The extent to which Defendant Cosgriff may or may not be involved with the distribution operations of the company for which he is the CEO is more appropriately suited for the finder of fact.   Additionally, it should be noted that Defendants have refused several attempts to initiate discovery, which would have been an opportunity to learn the truth of the matter.

REPLY- 11

"[N]umerous courts have held that a proposed amendment that clearly is frivolous, advancing a claim or defense that is legally insufficient on its face, or that fails to include allegations to cure defects in the original pleading, should be denied." 6 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1487 (3rd ed. 2020)

**E. Defendant's ATDS Arguments**

Defendants argue

"Nothing in the proposed SAC avoids the grounds for dismissal ...Plaintiff makes only minimal amendments to his factual allegations, rendering this proposed allegation futile. Plaintiff again alleges that "audible pauses, clicks, and beeps are hallmark indicia of ATDS systems." *Id.* at ¶ 83. That continues to be false. As First Family and Cosgriff explain in their Motion to Dismiss, those factors indicate only the use of a predictive dialer, which many courts had, before the Supreme Court's ruling in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), regarded as a type of ATDS. See Dkt. No. 21 at 10-12. After Duguid, that is no longer the law. Plaintiff now merely proposes to add that "Plaintiff heard silence and was forced to say hello multiple times while waiting to be connected to Defendants' representatives," and "[w]hen answering, Plaintiff heard a 'bloop' before being connected to Defendants' representatives." Dkt. No. 31-1 at ¶¶ 76-77. That is just more of the same irrelevancy on an ATDS claim."

However, this position does not accurately reflect the position of this Court.   In a recent ruling in *Crews v. National Solar et al.*, CV-23-01589-PHX-DWL, District of Arizona, the Honorable Judge Lanza wrote, "Courts have accepted the plausibility of ATDS-related allegations. See, e.g., Schmidt, 2020 WL 6135181 at *5 (concluding that "Schmidt has adequately alleged that AmerAssist utilized an ATDS to place those calls" in part because "Schmidt alleges that, upon answering AmerAssist's phone call, she was met with approximately three seconds of 'dead air,' after which she was connected with a live agent"); *McCarver v. Cap. One, N.A.*, 2020 WL 2141804, *3 (C.D. Cal. 2020) ("Courts in this Circuit have held that experiencing 'dead air' on several calls may raise a reasonable inference that the caller is using an ATDS."); *Lofton v. Verizon Wireless* (VAW) LLC, 2015 WL 1254681, *5 (N.D. Cal. 2015) ("[G]eneral allegations [of use of an ATDS] are sufficiently bolstered by specific descriptions of the 'telltale' pause after plaintiff picked up each call until the agent began speaking, which suggests the use of a predictive dialing system, and thus renders

plausible the conclusory allegation that an ATDS was used.")."  Here, the plaintiff has raised plausible allegations that raise a reasonable inference that the caller is using ATDS.

**F.  Defendant's DNC registry Arguments**

The lack of allegation that Plaintiff registered his telephone number on the National Do Not Call Registry precludes a private right of action under 47 U.S.C. § 227(c)(5). See Dkt. No. 21 at 12-13 (citing *Rombough v. Robert D. Smith Ins.* Agency, Inc., No. 22-CV-15-CJW-MAR, 2022 WL 2713278 (N.D. Iowa June 9, 2022))" and "Plaintiff fails to add any allegation that he himself registered the telephone number, which is exactly what is needed for this claim to avoid dismissal, rendering this aspect of the request for leave to amend futile as well". Doc 34 at 8.

First, the Defendant would have the court make a new law in this Court. Defendant's reading of the TCPA to require that the recipient of an illegal call personally register their telephone number on the Do Not Call Registry rests on a statutory interpretation that is "a bit strained as an initial matter." *Riley v. California*, 573 U.S. 373, 397 (2014). As with any question of statutory interpretation, the court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016).

The Defendant's sole case supporting its proposition that a subscriber must personally register their number on the Registry is *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022), a case from the Northern District of Iowa holding that a plaintiff must personally register their number on the Do Not Call Registry. Relying on *Rombough*, the Defendant misstates the applicable law. The FCC's regulations permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." *Id.* Previously, such registrations had to be renewed, but this hasn't been the case since at least the mid-2000s. Therefore, *Rombough* requires some TCPA plaintiffs (not this one) to do the impossible–personally reregister a number already on the Registry.

REPLY- 13

*Rombough* has been rejected by a multitude of courts, most notably in *Callier v. Am.-Amicable Life Ins. Co. of Texas*, No. EP-22-CV-00018-FM, 2022 WL 17732717, at *5 (W.D. Tex. Oct. 18, 2022), where the Western District of Texas called the argument underlying the *Rombough* decision one that "**borders on the frivolous**"(emphasis added). The Callier court went on to state:

> *Rombough's* nitpicky formality is thoroughly unpersuasive. The DNC is not auto-populated; it is a list of phone numbers for individuals who have requested that telemarketers not contact them. While it is possible a third-party may have registered a plaintiff's phone number before a plaintiff acquired it, this is unlikely given how infrequently people change numbers. It is particularly unlikely here, given Plaintiff's well-documented desire for telemarketers to respect his registration with the DNC. *Id.* at *6 (cleaned up).

*Rombough* also ignores the fact that the subscriber or regular user of a telephone line has standing under the TCPA. *D.G. v. William W. Siegel & Assocs.*, 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011) ("Plaintiff is the regular user and carrier of the phone, Plaintiff qualifies as a "called party" under the TCPA."); *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1225 (S.D. Cal. 2014) ("Defendant seeks to arbitrarily limit standing to only the individual whose name appears on the bill. Notably, Defendant does not cite a single case to support this position. Further, this position has been rejected by other courts."). This is notwithstanding the fact that the plain text of the TCPA's DNC standing provision allows any "person who has received" a call in violation of the FCC's regulations to sue. 47 U.S.C. § 227(c)(5).

Other courts have similarly rejected the Rombough court's approach, including at class certification and in refusing to strike class allegations. See, e.g., *Watson v. Manhattan Luxury Automobiles, Inc.*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *9 (S.D.N.Y. Sept. 29, 2022). (holding that "whether each class member registered their number on the NDNCR is irrelevant."); *Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185, at *4 (D. Colo. Nov. 14, 2023) (refusing to strike class allegations and reformulating class definition). As a result, there is no requirement that an individual personally register their number on the Do Not Call Registry, and this Court does not even

need to consider the issue when determining whether to strike the class allegations at the pleadings stage.

Regardless, the Plaintiff has, in fact, registered his number personally on the National Do Not Call Registry. He has pled to the same in his complaint. Compl. ¶ 18. Nowhere in the complaint does he plead that someone else registered the number on the Registry or even that it was on the Registry before he came to possess the number. Thus, the entire analysis of *Rombough* or its applicability to this case does not even come into question, and the motion to dismiss it on this basis must also be denied.

In the alternative, this is not a fatal flaw that cannot be remedied. The plaintiff did register his numbers and can plead to that effect if needed.

**G. Defendant's FTSA Arguments**

"Plaintiff simply parrots the statutory language (*id.* at ¶ 155), which is plainly insufficient to state a claim for relief, as argued in First Family's and Cosgriff's Motion to Dismiss. See Dkt. No. 21 at 13-14" (Doc 34 at 8-9).  Plaintiff does not merely "parrot the statutory language"; he has well-pleaded facts supporting his allegations.  See Plaintiff's discussion above in "Defendant's ATDS Arguments."

**H. Plaintiff's Claims against Cosgriff**

"None of these allegations are well-pleaded or can be credited by the Court, and therefore the requested leave to amend would be futile." Doc. 34 at 9.  As previously discussed, Plaintiff has well-pleaded allegations and provided supporting documentation in the  SAC, which Defendant now opposes.

**I. Claims Against FFI Agency, Grushof, and Lopez**

"The same is true of the newly proposed Defendants, namely First Family Insurance Agency, Inc. ("FFIA"), which is alleged to be incorporated in Florida, its President, Kenneth Grushoff, and Ryan Anthony Lopez, both of whom are alleged to be residents of Florida. See Dkt. No. 31-1 at ¶¶ 7, 9, 10". Doc. 34 at 3.

"The proposed SAC  also fails to state a plausible claim for relief against the newly named Defendants. Plaintiff alleges Grushoff, "at the behest of Cosgriff, directed and authorized the illegal calls complained of herein," (Dkt. No. 31-1 at ¶ 9), which overlaps

1  with the conclusory allegations made against Cosgriff. Lopez is alleged to be an employee of

2  First Family who "placed at least one of the illegal calls complained of herein." *Id.* at ¶ 10.

3  There are no allegations made against First Family Insurance Agency, Inc. ("FFI Agency")

4  aside from those made against the lumped-together concept of "Defendants," so no claim

5  is stated against it whatsoever." Doc. 34 at 9.

6          Defendants' First Family and Cosgriff's undersigned counsel have not appeared on

7  behalf of the Proposed Defendants and, as such, lack standing to object to adding these

8  parties to the complaint. By their reasoning, they also lack any foundation supporting

9  knowledge of the newly proposed defendants or their oppressions.

10         Here, the Defendant would like to have their cake and eat it too.  On the one

11  hand, they argue, "Generally, an individual acting as an 'independent contractor,' rather than

12  an agent, does not have the traditional agency relationship with the principal necessary for

13  vicarious liability." *TranzVia*, 2017 WL 5992123 at *12" (Doc. 34 at 11).   Suggesting that

14  anyone who may have made the calls and implicated them was acting as "an independent

15  contractor" who would have knowledge or control.  Yet they have enough knowledge and

16  control over proposed Defendants First Family Insurance Agency, Kenneth Grushoff, and

17  Ryan Anthony Lopez ("Proposed Defendants") to make arguments about their jurisdiction.

18  **Defendants have not made the case that their concerns "could not possibly be**

19  **cured."**

20         As discussed above, the Ninth Circuit has "repeatedly held that a district court

21  should grant leave to amend ... unless it determines that the pleading **could not possibly** be

22  cured by the allegations of other facts." *Lopez*, 203 F.3d at 1130 (9th Cir.2000) (internal

23  quotation marks and citations omitted)(emphasis added), and This policy is "to be applied

24  with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th

25  Cir.2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th

26  Cir.1990)).

27         Defendants have made arguments pointing out deficiencies, in their view, which

28  have not been addressed by SAC, but made no plausible argument that those same

deficiencies could not be remedied while at the same time arguing that Plaintiff should be

REPLY- 16

denied the opportunity to rectify his complaint and have his case determined on the merits rather than dismissed on technical grounds which is opposed to the 9th District's general stance "Cases should be decided upon their merits whenever reasonably possible. *Pena v. Seguros La Comercial, S.A.* 770 F.2d 811, 814 (9th Cir.1985).  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)"

RESPECTFULLY SUBMITTED on this June 15, 2024.


By: _____ */s/Jason Crews*
                                 Jason Crews

**COPIES** of the forgoing were filed with the court electronically via CM/ECF this same date.


By: _____ */s/Jason Crews*_____
           Jason Crews

REPLY- 17