SHARON A. URIAS (SBN 016970)
**GREENSPOON MARDER LLP**
8585 E. Hartford Drive, Suite 700
Scottsdale, AZ 85255
Tel. 602.726.0711
Fax 480.306.5459
Email: sharon.urias@gmlaw.com
   azdocket@gmlaw.com

JEFFREY A. BACKMAN (admitted *pro hac vice*)
ROY TAUB (admitted *pro hac vice*)
**GREENSPOON MARDER LLP**
200 East Broward Boulevard, Suite 1800
Ft. Lauderdale, FL 33301
Tel. 954.491.1120
Fax 954.213.0140
Email: jeffrey.backman@gmlaw.com
   roy.taub@gmlaw.com
   mary.torres@gmlaw.com
   cheryl.cochran@gmlaw.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jason Crews,<br><br>    Plaintiff,<br><br>v.<br><br>First Family Insurance, LLC; First Family Insurance Agency, Inc.; John Cosgriff; Ryan Anthony Lopez; and Kenneth Grushoff,<br><br>    Defendants. | No. 2:24-cv-00366-PHX-GMS<br><br>**DEFENDANTS FIRST FAMILY INSURANCE, LLC AND JOHN COSGRIFF'S MOTION TO DISMISS PLAINTIFF JASON CREWS'S SECOND AMENDED COMPLAINT** |

Defendants First Family Insurance, LLC ("First Family") and John Cosgriff hereby move, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), to dismiss Plaintiff Jason Crews' Second Amended Complaint (the "SAC") with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiff is a serial litigant. He has filed over thirty lawsuits alleging purported violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") in this Court since October 2022. Plaintiff amends his Complaint a second time, re-alleging twelve violations of the TCPA and the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA"), but he now names "First Family Agency, Inc." ("FFIA")—an entity that does not exist—and its alleged president, Kenneth Grushoff, as Defendants, while also adding Ryan Anthony Lopez, an insurance agent he asserts is an employee of First Family. It appears that Plaintiff actually intended to name *Family First* Insurance Agency, Inc.; however, that entity has no association to First Family or Cosgriff.

Plaintiff's conclusory, plead-by-numbers SAC should be dismissed for a number of reasons. First, neither First Family nor Cosgriff is within the Court's personal jurisdiction. ***In fact, First Family never called Plaintiff, nor did it authorize or cause anyone to call Plaintiff***. It remains unclear who Plaintiff alleges called him. At times he says it was "Defendants," sometimes he says it was First Family, he also says Lopez called him as First Family's agent, and he also claims calls by some unidentified "offshore telemarketer." He is specific only when he contends he received one call where he was transferred by the caller, "Brian," first to "Andrew," and then to Lopez, an independently contracted licensed insurance advisor, but First Family (and Cosgriff) had no involvement in whatever telemarketing led to that transfer or any of the other calls. Nor has Plaintiff plausibly alleged the requisite agency relationship to support jurisdiction, and he has no evidence to refute First Family's sworn testimony denying these facts.

Even if there was personal jurisdiction in the face of sworn testimony that First Family (and Cosgriff) had nothing to do with the telephone calls at issue, the SAC still fails to allege facts sufficient to state a plausible claim against First Family or Cosgriff. Plaintiff fails to

1

specify the allegations against each of the (now) five Defendants, instead conflating them in generalized claims against all without any distinctions. Plaintiff also fails to offer any well-pleaded facts supporting any theory of individual liability against Cosgriff. The law is clear that his position as defendant's CEO is not sufficient (otherwise senior executives would be named in every lawsuit filed against their company) as there must be allegations indicating that the individual was personally involved in initiating the calls. Furthermore, Plaintiff conclusorily alleges that whoever called him supposedly used automated dialing equipment prohibited by the TCPA and FTSA, but courts require more than simply parroting the statutory elements, namely well-pleaded facts sufficient to render that assertion plausible, but the SAC states none. Finally, Plaintiff fails to allege a requirement on a TCPA do-not-call claim, namely that he registered the telephone number. Without such an allegation, this claim, too, is insufficiently pleaded.

**ARGUMENT**

**I.    APPLICABLE LEGAL STANDARDS**

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). A "nonspecific conclusory statement is not enough" to satisfy that burden. *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986). The Court may consider written materials, and in opposing such a motion, the "plaintiff cannot simply rest on the bare allegations of its complaint," but must make at least "a prima facie showing of jurisdictional facts." *Schwarzenegger*, 374 F.3d at 800; *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Because "the jurisdictional limit of [Arizona's] long-arm statute is coextensive with that of the United States Constitution," "the Court need only determine whether exercising personal jurisdiction . . . comport[s] with federal due process." *Nat'l Cas. Co. v. Burns & Wilcox Ltd.*, No. CV-19-04854-PHX-DWL, 2020 WL 4039119, *3 (D. Ariz. July 17, 2020).

"[T]o survive a motion to dismiss" under Rule 12(b)(6), "a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (citation omitted). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## II. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

### A. The Court Lacks General Personal Jurisdiction

General jurisdiction allows a court to hear any claim against a defendant, irrespective of the underlying claim's connection to the forum state, and applies when a defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation omitted). The Supreme Court clarified that an "individual's domicile," and, "a corporation['s], . . . place of incorporation and principal place of business . . . ." are the only bases upon which general jurisdiction may be permitted. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). None of these apply here. Plaintiff concedes First Family is a limited liability company organized under the laws of the State of Florida and Cosgriff is a resident of Minnesota. *See* SAC at ¶¶ 6 & 8. Moreover, First Family has its principal place of business in Florida, and lacks any significant contacts with Arizona that could possibly otherwise give rise to general jurisdiction. *See* Declaration of John Blanchard at ¶¶ 2-5. Accordingly, this Court lacks general personal jurisdiction over either Defendant.

### B. The Court Lacks Specific Personal Jurisdiction

Specific jurisdiction permits a court to hear a particular case that arises out of or relates to the defendant's contacts with the forum. *Daimler*, 571 U.S. at 127. Three elements must be shown to establish specific personal jurisdiction:

3

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

### 1.     There is No Specific Personal Jurisdiction over Cosgriff

Plaintiff has not provided a *prima facie* basis for exercising specific personal jurisdiction over Cosgriff, First Family's CEO. The only involvement alleged are the conclusory assertions that the CEO of the company supposedly "personally direct[ed] and authoriz[ed] the scripting and selecting of calls to be made, selecting, and orchestrating the calling strategy, including choosing and approving the use of ATDSs," and "personally select[ed] and approv[ed] all third parties who placed calls on Defendants' behalf . . ." SAC at ¶¶ 16, 94-95. Courts regularly find such allegations are insufficient to state the level of involvement required to state a claim for individual liability, in particular because they fail to plausibly allege authorization of conduct known to be in violation of the law. *See Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV, 2015 WL 3644598, *3 (S.D. Fla. June 10, 2015) ("[I]n every known case holding a corporate officer personally liable under the TCPA, the officer had either directly committed or knowingly authorized the corporation's wrongful acts."); *Edwards v. Juan Martinez, Inc.*, 506 F. Supp. 3d 1061, 1073 (D. Nev. 2020) (finding that the plaintiff could not and did not allege facts that the corporate defendants or the CEO exercised sufficient control over the caller to be held vicariously liable under the TCPA); *Mais v. Gulf Coast Collection Bureau, Inc*., No. 11-61936-CIV-SCOLA, 2013 WL 1283885, *3 (S.D. Fla. Mar. 27, 2013) (finding that the mere allegation that the individual defendant was the company's "vice president and 20% owner," "control[led] the policies and practices of [Gulf Coast] regarding the TCPA," and "authorized those policies and practices complained of herein" – virtually identical to the

4

SAC's allegations – were insufficient to state any claim for relief against him "as a matter of law.").

This is not the first time Plaintiff has made such overreaching allegations. He has filed dozens of TCPA lawsuits, and has used the same recycled allegations, to target senior executives. In *Crews v. Sun Sols. AZ LLC*, he made identical claims against the owner and manager of the LLC defendant, and the court dismissed them as boilerplate, conclusory and unsupported by specific facts. No. CV-23-01589-PHX-DWL, 2024 WL 2923709, at *7 (D. Ariz. June 10, 2024). That pattern is repeating here. To state a valid claim Plaintiff must do more than rely on generic accusations, he must allege and show that the officer "failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA, or that he authorized or personally engaged in conduct that ***clearly*** violated the TCPA." *Mais*, 2013 WL 1283885, at *4 (emphasis added). Nothing like that is alleged against Cosgriff. Plaintiff does not point to any specific act that violated the law, nor does he specify what agent Cosgriff allegedly directed to violate the law. Moreover, given that Plaintiff never plausibly explains First Family's alleged role – it serves in the three roles alleged by Plaintiff as the caller, the party that hired Lopez to allegedly call him, and the party that hired an "offshore telemarketer" to allegedly call him – that indefinite role precludes Plaintiff from plausibly alleging Cosgriff personally directed, approved, and authorized all of those varying things. In any event, Cosgriff, who is also the CEO of UnitedHealthOne, the individual, family, and distribution line of business within UnitedHealth Group Incorporated, the ultimate parent company of First Family, submits sworn testimony expressly refuting the conclusory allegations made against him. Declaration of John Cosgriff at ¶ 3.[1]

**2.     There is No Specific Personal Jurisdiction over First Family**

Specific personal jurisdiction is also lacking over First Family. It is black letter law that

---

[1] Moreover, it is settled law that, "[u]nder the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). The SAC does not plausibly allege any basis to avoid the fiduciary shield doctrine when it comes to Cosgriff.

5

the "'minimum contacts' necessary to create specific jurisdiction . . . must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122-23 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* (collecting cases). There are, however, no such specific jurisdictional contacts between First Family and the State of Arizona—not even a single call.

"For a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, *4 (N.D. Cal. Jan. 4, 2018) (citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014)). The same level of allegations sufficient to state liability under an agency theory are required to show personal jurisdiction on that basis. *See Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, *13 (N.D. Cal. Dec. 4, 2017) ("*TranzVia*"). Plaintiff confusingly alleges the calls were made by First Family, "Defendants," Lopez, **_and_** an "offshore telemarketer" (the latter two as First Family's alleged agents, supposedly). *See* SAC at ¶¶ 53, 73, 78, 82, 88, 103, 110, 140. To be clear, First Family did not place or make any telephone calls to Plaintiff. *See* Blanchard Decl. at ¶ 6. And while Plaintiff takes an "all of the above" approach to alleging who placed the calls that could implicate personal jurisdiction through an agency relationship, courts have repeatedly rejected such "catch-all" formulations as failing to assert any well-pleaded fact beyond the speculative level that there was an agency relationship.[2]

---

[2] *See, e.g.*, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 n.5 (9th Cir. 2017); *Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL 511217, *5-6 (D. Ariz. Feb. 11, 2021); *Barba v. Seung Heun Lee*, No. 09-1115-PHX-SRB, 2010 WL 11515658, *8 (D. Ariz. Aug. 25, 2010); *Naiman v. Freedom Forever, LLC*, No. 19-CV-00256-JSC, 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019); *Pallamary v. Elite Show Servs., Inc.*, No. 17CV2010-WQH-BGS, 2018 WL 3064933, *14 (S.D. Cal. June 19, 2018); *Luis v. Walker v. Ditech Fin. LLC*, No. 16-CV-03084-KAW, 2016 WL 5846986, *4 (N.D. Cal. Oct. 6, 2016); *Emazing Lights, LLC v. De Oca*, No. SACV 15-1561-AG(EX), 2016 WL 7507765, *3 (C.D. Cal. June 20, 2016); *Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, *3 (S.D. Cal. June 13, 2013); *Mindlab Media, LLC. v. LWRC Int'l LLC*, No. CV 11-3405 CAS

To establish personal jurisdiction through an agency relationship, Plaintiff is required to "show[ ] that [his caller] is subject to this court's jurisdiction, and that [the caller's] actions are attributable to [First Family] because [the caller] was [First Family's] agent with respect to the calls that [the caller] allegedly made to plaintiff." *TranzVia*, 2017 WL 5992123 at *10. That is because "[i]t is only when the acts of an agent can be imputed to the principal that the court can exercise personal jurisdiction over the principal for those acts." *Id.* (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 414 (9th Cir. 1977). The TCPA "incorporate[s] federal common law agency principles of vicarious liability . . . ." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013)). *See also Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) ("A defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it."). These common law agency principles "includ[e] not only formal agency, but also principles of apparent authority and ratification." *Dish Network*, 28 F.C.C. Rcd. at 6584. *See also Abante*, 2018 WL 288055 at *4 (same). Nothing in the SAC comes close to plausibly stating an agency relationship, as opposed to a standard contractor relationship, between First Family and Lopez or the "offshore telemarketer" under any of these principles, each of which is addressed in turn.

### a.  Formal Agency

With respect to formal or actual agency, "[a]n agent is one who 'act[s] on the principal's behalf and subject to the principal's control.'" *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010) (quoting Restatement (Third) of Agency § 1.01 (2006)). "Generally, an individual acting as an 'independent contractor,' rather than an agent, does not have the traditional agency relationship with the principal necessary for vicarious liability." *TranzVia*, 2017 WL 5992123 at *12.

Here, Plaintiff posits Lopez as one "agent" and an "offshore telemarketer" as a supposed "subagent," though also allegedly hired by First Family, without identifying what those terms

---

FEMX, 2012 WL 386695, *4 (C.D. Cal. Feb. 6, 2012); *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1084 (N.D. Cal. 2011).

7

mean or providing any supporting facts. SAC ¶¶ 33-39, 109. While Plaintiff conclusorily asserts Lopez "made multiple auto-dialed robocalls to Plaintiff," (*id.* at ¶ 103), he never makes a well-pleaded allegation of fact that Lopez called him. So, First Family's relationship with Lopez cannot possibly impute jurisdictional contacts with Arizona, since there are none created by Lopez. SAC ¶¶ 38-39. Nor does Plaintiff ever allege facts showing First Family "controlled or had the right to control [Lopez] and, more specifically, the manner and means of the [marketing] . . . they conducted," which is necessary for actual agency. *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014). Plaintiff alleges even less when it comes to the so-called "offshore telemarketers" who purportedly placed the calls, providing no factual basis to support the existence of an agency relationship. Plaintiff's generic conception of the "offshore telemarketing" agent is simply a placeholder, with assertions of "agency" or "control" that are nothing more than naked assertions devoid of the factual enhancement required to plausibly allege agency. Courts reject conclusory and naked assertions of authorization and control, completely lacking in any factual enhancement and an explanation as to how plaintiffs could know such facts, as sufficient and plausible to allow a court to draw the reasonable inference of the existence of an agency relationship, as opposed to a standard contractual relationship. Plaintiffs allegations effectively could be alleged about anybody. Far more is required. *See Rogers v. Postmates Inc.*, No. 19-cv-05619, 2020 WL 3869191, *4 (N.D. Cal. July 9, 2020) (finding the plaintiff had "not alleged facts that support the inference that [defendant] exercised any control over [the purported agent] or [its] marketing") ("*Rogers II*").[3]

    Nor can Plaintiff plausibly base formal agency, and thus personal jurisdiction, upon the

---

[3] *See also*, *e.g.*, *Canary v. Youngevity Int'l, Inc.*, No. 5:18-CV-03261-EJD, 2019 WL 1275343, *5–7 (N.D. Cal. Mar. 20, 2019) (allegations that Youngevity "allows" agents to market loans via autodialed calls and that an agent had "actual authority" were too general and conclusory); *Ewing v. Encor Solar, LLC*, No. 18-CV-2247-CAB-MDD, 2019 WL 277386, *7 (S.D. Cal. Jan. 22, 2019) (holding allegations that Sunrun controlled agents, directed their actions, and was identified as the principal were insufficient for vicarious liability); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440 (VEC), 2015 WL 7736547, *7 & n.13 (S.D.N.Y. Nov. 30, 2015) (allegations that Experian had the "right to control" and "actually controlled" text message campaigns lacked specific facts about the principal-agent relationship).

8

allegation that Lopez identified himself as "from" or "work[ing] for" First Family. SAC at ¶¶ 39 & 41. First, "[i]t is not enough that each representative identified him or herself as acting on behalf of [First Family]. Such allegations say nothing about whether defendant consented to those representations. And, more importantly, such allegations indicate nothing about the amount of control, if any, defendant purportedly exercised over the representatives." *Abante*, 2018 WL 288055 at *5; *see also Clemons v. State Farm Mut. Automobile Ins. Co.*, No. 1:20-CV-1050, 2020 WL 4193997, *4 (C.D. Ill. July 21, 2020) (same); *Rogers II*, 2020 WL 3869191 at *5 (finding allegations that company sent text messages on behalf of another failed to plausibly allege agency, as opposed to contractual relationship). Moreover, as the specific jurisdictional contacts must provide the basis for actual agency for purposes of a TCPA claim, Plaintiff "must do more than establish an agency relationship. [He] must also establish that the purported agent had actual authority to place the unlawful calls," *i.e.*, to place a telephone call using an ATDS, automated system, or in violation of the "do-not-call" rules. *Jones*, 887 F.3d at 449.[4]

The SAC has no well-pleaded facts along these lines. Indeed, Plaintiff makes no well-pleaded allegation that Lopez ever called him, so Lopez identifying himself as acting for First Family does not plausibly allege First Family authorized him to call Plaintiff. Plaintiff allegedly spoke with Lopez only after being transferred twice, first by the caller, and then by an intermediary, so Lopez was twice removed from the calling party. *See* SAC at ¶¶ 37-39. In any event, First Family has submitted sworn testimony that it "never authorized any third party to place or initiate a telephone call to Plaintiff that would violate the [TCPA or FTSA]," and instead

---

[4] *See also Declements v. Americana Holdings LLC*, No. CV-20-00166-PHX-DLR, 2020 WL 4220075, *1 (D. Ariz. July 23, 2020) ("[E]ven assuming Mr. Berube's actions could be attributed to Mr. Stark, Plaintiff has not shown that Mr. Stark can be held liable for TCPA violations because Plaintiff does not allege that Mr. Berube directed agents use an autodialer in any way that violates the TCPA."); *Rogers v. Postmates Inc.*, No. 19-CV-05619-TSH, 2020 WL 1032153, *4 (N.D. Cal. Mar. 3, 2020) ("*Rogers I*") ("[E]ven if the sender was authorized to market on Postmates' behalf, there are no factual allegations suggesting that Postmates knew or reasonably should have known that the sender of the text or any of its agents or sub-agents were violating the TCPA on its behalf.").

"requires that all such persons who seek to contract with First Family, including independently contracted insurance advisors such as Ryan Lopez, represent and agree that their insurance marketing and advertising activities will be in compliance with all applicable federal and state laws, which includes the TCPA and FTSA." Blanchard Decl. at ¶ 8; *see* SAC at ¶¶ 10, 39-41, 54-57, 103-109, 116. That testimony precludes any finding that First Family authorized anyone to violate the TCPA or FTSA. *Accord Jones*, 887 F.3d at 449 (explaining contractual prohibition of "any act or omission that violates applicable state or Federal law, including but not limited to 'robo-calling,'" precluded finding of authority to place telephone calls in violation of the TCPA); *Abante Rooter & Plumbing, Inc. v. Arashi Mahalo, LLC*, No. 18-CV-07311-VC, 2019 WL 6907077, *1 (N.D. Cal. Dec. 19, 2019) ("Abante doesn't contend that Arashi actually granted DTX the authority to use an ATDS or to call merchants on the Do-Not-Call Registry. And for good reason: Arashi presented unrebutted evidence that DTX 'repeatedly represented that its services were compliant with the TCPA.'"). Hence, actual agency theory cannot be established, and Plaintiff cannot satisfy his burden to establish personal jurisdiction.

### b.     Ratification

The only other theory of agency that Plaintiff advances is ratification, and he fails to establish personal jurisdiction by agency on this theory as well. *See* SAC at ¶¶ 112, 115-122. Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen*, 879 F.3d at 1014 (quoting *Restatement (Third) of Agency* § 4.01(1)). "Even if a principal ratifies an agent's act, '[t]he principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking.'" *Id.* (quoting *Restatement (Third) of Agency* § 4.01, cmt. b). Thus, to allege that First Family ratified the making of any "allegedly improper calls, plaintiff must allege facts sufficient to allow the court to reasonably infer that [First Family] knew that [some purported agent] violated the TCPA and that [First Family] 'knowingly' accepted the benefits of [their] violation." *TranzVia*, 2017 WL 5992123 at *13. No such facts are alleged in the SAC.

First, Plaintiff fails to allege any benefits – such as a health insurance plan that Plaintiff

10

purchased – for First Family to accept in the first place. Plaintiff makes a conclusory reference to First Family "accept[ing] referrals" but that makes no sense and in any event does not apply to Plaintiff. *See* SAC at ¶ 112. Ratification is not possible under those circumstances. *Accord Kristensen*, 879 F.3d at 1014-15. Second, Plaintiff does not plausibly allege First Family had knowledge of any TCPA (or FTSA) violations by Lopez or the "offshore telemarketer." Third, Plaintiff's complete failure to allege or establish any agency relationship is also fatal to a ratification finding because, "[a]lthough a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Thomas*, 582 F. App'x at 680. *See also Kristensen*, 879 F.3d at 1015; *Abante*, 2018 WL 288055 at *6.

### c.     The Irrefutable Evidence

Not only has Plaintiff failed to make any plausible allegation of any specific personal jurisdictional contacts between First Family and Arizona (directly or via agency), the evidence is that "First Family has never authorized, directed, controlled, or caused any third party to place or initiate a telephone call to the Plaintiff." Blanchard Decl. at ¶¶ 6-7. Plaintiff's information, including his telephone number, does not even appear in First Family's records as a potential lead. *Id.* Under these facts, there is no basis to find First Family called or caused anyone to call him. *See*, *e.g.*, *TranzVia*, 2017 WL 5992123 at *12 (finding that the plaintiff could not show personal jurisdiction because it failed to adequately plead liability based on agency); *Abante*, 2018 WL 288055 at *5 (finding that some connection between the parties was insufficient for the court to infer that defendant exercised control over the representatives); *Thomas*, 879 F. Supp. 2d at 1084 (no vicarious liability where plaintiff failed to show defendant "controlled the manner and means by which the text message was created and distributed"); *Rogers II*, 2020 WL 3869191, at *4 (holding that the plaintiff failed to allege facts showing that the defendant had the right to control "the manner and means of the call made to state a plausible claim based on actual authority") . Plaintiff cannot satisfy his burden to establish personal jurisdiction, and First Family should be dismissed on that basis. The fact is that First Family never authorized anyone to violate the TCPA or to call people who had not given consent to be called, bringing

11

an end to any possible agency theory.

### III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST FIRST FAMILY

Even if the Court found it could exercise personal jurisdiction against First Family, the claims against it should be dismissed for failure to state a claim for relief.

#### A. The TCPA ATDS Claim (Count I) Should be Dismissed

Plaintiff's first cause of action is for violation of the TCPA's prohibition against the use of an automatic telephone dialing system ("ATDS"). *See* SAC at ¶¶ 139-144. Plaintiff's allegations fall short of alleging what is now definitively required to state an ATDS claim.

The TCPA defines an ATDS as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." 47 U.S.C. § 227(a)(1). The Supreme Court has clarified that to qualify as an ATDS under the TCPA, "whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170 (2021). The Ninth Circuit confirmed "an autodialer must be able to generate and dial random or sequential number phone numbers, not just any number." *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1234 (9th Cir. 2022). "After the *Duguid* [*Facebook*] opinion, the ATDS portion of the claim requires an allegation that [defendant] used a random or sequential number generator to place a call to Plaintiff's cellphone . . . ." *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2021 WL 5040228, *3 (N.D. Tex. Oct. 29, 2021) (citation omitted).[5]

Plaintiff still fails to allege that his telephone number was randomly or sequentially generated. Plaintiff asserts that an ATDS was used because he heard "silence" and a "bloop" while being connected to Defendants' alleged representatives, and that "it would be illogical to

---

[5] *See also*, *e.g.*, *Borden*, 2022 WL 1695561, *1232-33; *DeClements v. Americana Holdings LLC*, No. CV-20-00166-PHX-DLR, 2021 WL 5138279, *2 (D. Ariz. Nov. 4, 2021) (dismissing ATDS claim because "the complaint does not allege any facts showing that Plaintiff was texted as a result of an autodialer sequentially or randomly generating the digits of his phone number"); *Camunas v. Nat'l Republican Senatorial Comm.*, No. CV 21-1005, 2021 WL 5143321, *6 (E.D. Pa. Nov. 4, 2021) (finding that plaintiff failed to allege that his number was stored after being generated by a random or sequential number generator, and thus did not plead facts supporting a reasonable inference that the defendant used a device with the required capacity).

dial a number manually, have Plaintiff answer the phone, and only then connect Plaintiff to a human being." SAC at ¶¶ 76-77, 82.[6] The "audible pauses, clicks, and beeps" that Plaintiff claims "are hallmark indicia of ATDS systems," (SAC at ¶ 83), in fact are not and are not included in the narrow definition of an ATDS that was later adopted by SCOTUS.[7]  . Accordingly, courts have found allegations about pauses, clicks, and beeps at the beginning of a call, because they may indicate no more than the use of a predictive dialer, fail to "support any inference that a random or sequential number generator was used." *Hunsinger v. Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481, *7 (N.D. Tex. Feb. 7, 2023), report and recommendation adopted, 2023 WL 2386710 (N.D. Tex. Mar. 4, 2023). *See also Forteza v. Vehicle Serv. Dep't*, No. 3:23-CV-874-L-BN, 2024 WL 2868271, *5 (N.D. Tex. Apr. 22, 2024) ("[A]fter *Duguid*, alleging dead air when a phone call connects – without further facts that could show the use of ATDS – may not be enough to plausibly plead that the equipment in question [used] a random or sequential number generator, not merely auto-dial stored numbers") (internal quotation omitted), report and recommendation adopted, 2024 WL 2869354 (N.D. Tex. June 6, 2024); *Perez v. Quicken Loans, Inc.*, No. 19-CV-2072, 2020 WL 1491145, *2-3 (N.D. Ill. Mar. 27, 2020) (agreeing "the allegation of a 'pause'" was "too thin to support an inference that Defendant used an ATDS to make the calls" because "at least some predictive dealers . . . have no capacity to generate random or sequential numbers") (internal quotation omitted). Moreover, that Plaintiff alleges multiple calls were made to him per day, even by the same caller who allegedly "complained about Plaintiff disconnecting the [earlier] call," "indicate[s] an effort to target Plaintiff, rather than to randomly or sequentially contact [him]." *Forteza*, 2024 WL 2868271 at *5 (quoting *Perez*, 2020 WL 1491145 at *2). Since Plaintiff fails to state facts

---

[6] In *Winters v. Quicken Loans Inc.*, the Court decided not to address the party's interpretation of *Duguid* because the claims failed "on the threshold issue of agency." No. CV-20-00112-PHX-MTL, 2021 WL 5040323, at *6 (D. Ariz. Oct. 29, 2021).

[7] *See, e.g., Abramson v. Oasis Power LLC*, No. 2:18-CV-00479, 2018 WL 4101857, *2 (W.D. Pa. July 31, 2018) (reciting allegation that "the dialing technology that causes a distinctive click and/or pause is known as a 'predictive dialer,' in which lines are dialed using an algorithm to predict when a call center operator will be available—leading to the 'pause and click' as the operator takes the call"), report and recommendation adopted, 2018 WL 4095538 (W.D. Pa. Aug. 28, 2018).

sufficient to plausibly allege the use of ATDS, as opposed to a predictive dialer, Count One should be dismissed.

### B.     Plaintiff Fails to State a NDNC Claim (Count II)

Count II attempts to assert a claim under 47 U.S.C. § 227(c) for "Defendants" allegedly calling "Plaintiff's private residential telephone number, which was registered on the National Do Not Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2)." SAC at ¶ 146.

As is relevant for Plaintiff's NDNC claim, the regulations prohibit "initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government . . . ." 47 C.F.R. § 64.1200(c)(2). Plaintiff, though, is *not* "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . ." *Id.* Plaintiff never alleges that he himself registered the relevant telephone number on the Registry, instead passively alleges, that "[t]he Cell Number has been on the Do-Not-Call registry since November 7, 2006." SAC at ¶ 52. Because only residential telephone subscribers – assuming for present purposes that applies to Plaintiff's cellular telephone number – who have registered their telephone number can bring an NDNC claim, Plaintiff has no private right of action and cannot state a claim for relief for an alleged violation of 47 C.F.R. § 64.1200(c)(2). This issue was previously raised in the motion to dismiss Plaintiff's FAC, (Dkt. No. 21 at 12-13), and yet Plaintiff still fails to provide any allegations curing this deficiency.

As one court recently explained,

> [t]he plain language of Section 64.1200(c) indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry. . . . Section 6[4].1200(c) does not include a private remedy for a residential telephone subscriber who has not registered his or her telephone number on the national do-not-call registry. ***The regulation's plain language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else***.

14

*Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, *2 (N.D. Iowa June 9, 2022) (emphasis added). Similarly, in *Rogers v. Assurance IQ, LLC*, No. 2:21-CV-00823-TL, 2023 WL 2646468, *4 (W.D. Wash. Mar. 27, 2023) ("*Rogers III*"), the court dismissed an NDNC claim where plaintiffs failed to allege "that they placed their own numbers on the DNC list," because "the numbers could have been registered by previous owners of those numbers rather than by Plaintiffs themselves."

Consistent with the reasoning that § 64.1200(c) is specific to the person who actually registered the telephone number, Congress expressly directed the agency charged with maintaining the National Do-Not-Call Registry, the Federal Trade Commission ("FTC"), to "periodically check" and "remove . . . telephone numbers that have been disconnected and reassigned." 15 U.S.C. § 6155(b). That is why the FTC states on its website, ***twice***, that it "automatically" "removes numbers" that are "disconnected and reassigned" from the Registry. Ex. A. To state a NDNC claim, Plaintiff must allege he registered his telephone number, something he has repeatedly refused to do even though that would be within his knowledge. As in *Rombough* and *Rogers III*, Plaintiff's NDNC claim should be dismissed, here with prejudice.

**C.    Count Three Should Also Be Dismissed Because Plaintiff Fails to Plausibly Allege First Family Caused the Calls to be Placed, and That An "Automated System" Was Used**

Count III of the SAC attempts to re-assert a claim under the FTSA. Plaintiff attempts to allege a claim under Fla. Stat. § 501.059(8)(a), which prohibits, in relevant part, "mak[ing] or knowingly allow[ing] a telephone sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers . . . without the prior express written consent of the called party." Defendants previously moved to dismiss this claim because the FAC was "devoid of any well-pleaded facts plausibly suggesting any such system was used by whomever called Plaintiff in any of the telephone calls placed to him." Dkt. No. 18 at 13-14. The SAC fails to make any allegations that differ from the FAC and this claim should therefore be dismissed with prejudice.

15

Plaintiff, at a minimum, must allege that First Family[8] caused the alleged violative calls to be directed at him. *TSA Stores, Inc. v. Department of Agriculture & Consumer Services,* 957 So.2d 25, at *4, 6 (5th DCA 2007). Without such an allegation, there is no cognizable basis to state a claim under the law. Hence, for the same reasons he fails to allege that the calls were placed by First Family under an agency theory, he fails to allege the same here.

Plaintiff simply alleges that "Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff to be made utilizing an automated system for the selection or dialing of telephone numbers." SAC at ¶ 155. That language simply parrots the language of the FTSA, which of course is not enough to state a plausible claim. *See Iqbal*, 556 U.S. at 678. There are no facts alleged in the SAC that plausibly suggest an "automated system for the selection or dialing of telephone numbers," as opposed to any other system, was used to place the twelve calls to Plaintiff over the five-week period identified in the SAC. In *Davis v. Coast Dental Servs., LLC*, the court ruled that effectively the same scant allegation – in that case, "[t]o transmit the above telephonic sales calls, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers" – was conclusory and insufficient to state a plausible claim for relief. No. 8:22-CV-941-KKM-TGW, 2022 WL 4217141, *2 (M.D. Fla. Sept. 13, 2022). The court explained that the plaintiff "could have pleaded facts such as information on [the defendant's] website indicating that messages are sent through automated systems, information regarding the formality of the message, or information regarding the phone number from which the message was received that could indicate an automated source." Instead, the conclusory allegation—like Plaintiff's here—was consistent with the hiring of "a marketing firm to send individual messages from a personal cell phone in full compliance with the FTSA." *Id*. Hence, Plaintiff has failed to allege facts sufficient to plausibly suggest First Family caused the calls to be placed and that the calls were

---

[8] It is unclear against whom this claim is being made, Plaintiff only refers to "Defendant" in a complaint where he names five. Nonetheless, in an abundance of caution, given the language following paragraph 155, it is assumed this count, like the other two, applies to all five Defendants. SAC at ¶ 155.

sent to him using an "automated system".

## IV. PLAINTIFF FAILS TO STATE A CLAIM AGAINST COSGRIFF

Separate and apart from the numerous deficiencies that require dismissal of Counts I-III as asserted against First Family, which on their own merit dismissal of any claims for individual liability against Cosgriff, for the same reasons that Plaintiff's conclusory allegation that Cosgriff authorized First Family's "calling strategy" fails to allege a *prima facie* basis for the exercise of personal jurisdiction over Cosgriff, it also fails to state a claim for relief against him.[9] Plaintiff's bald, unsupported accusation that Cosgriff "orchestrat[ed] the calling strategy" of using "pre-recorded calls," (SAC at ¶ 16), fails to plausibly allege the necessary involvement of a senior executive to state a claim for individual liability under the TCPA or FTSA.

As a general rule of agency law, a corporate director or officer's personal liability must be based on specific acts by the individual. *United States v. Reis*, 366 Fed. Appx. 781, 782 (9th Cir. 2010). **Courts require specific allegations demonstrating** the individual had direct, personal participation in or personally authorized the violative conduct. *Ott v. Mortgage Investors Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1060 (D. Or. 2014) (finding allegations that individual defendants designed and implemented telemarketing activities, deliberately disabled Do-Not-Call lists, and ignored direct requests to stop calls were deemed sufficient to state a claim). Plaintiff falls far short of providing a plausible basis for asserting individual liability against First Family's CEO under the TCPA or FTSA.

## CONCLUSION

For the foregoing reasons, Defendants First Family Insurance, LLC and John Cosgriff respectfully request that the Court enter an order dismissing Plaintiff's Second Amended Complaint with prejudice, and granting any other relief the Court deems appropriate.

---

[9] *See, e.g.*, *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, No. 14 C 5602, 2019 WL 527497, *7 (N.D. Ill. Feb. 11, 2019); *Mais*, 2013 WL 1283885 at *3-4; *Physicians Healthsource*, 2015 WL 3644598 at *3; *Savanna Group, Inc. v. Trynex, Inc.*, No. 10 C 7995, 2013 WL 4734004, *8 (N.D. Ill. Sept. 3, 2013); *Texas v. Am. Blastfax, Inc*., 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001).

## **CERTIFICATION PURSUANT TO LRCiv 12.1(c)**

The undersigned hereby certifies that, in accordance with LRCiv 12.1(c), on February 13, 2025, Roy Taub, counsel for Defendants, met and conferred with Plaintiff *Pro Se*, by e-mail. Counsel and Plaintiff continued to correspond via e-mail, and Plaintiff elected not to pursue a telephonic meet and confer to further discuss the asserted grounds for dismissal. The parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party.

DATED: February 19, 2025

Respectfully Submitted,

GREENSPOON MARDER LLP

*/s/ Roy Taub*
Jeffrey A. Backman (admitted *pro hac vice*)
Roy Taub (admitted *pro hac vice*)
200 East Broward Boulevard, Suite 1800
Ft. Lauderdale, FL 33301
Tel.  954.491.1120
Fax  954.213.0140
jeffrey.backman@gmlaw.com
roy.taub@gmlaw.com
mary.torres@gmlaw.com
cheryl.cochran@gmlaw.com

Sharon A. Urias (SBN 016970)
8585 E. Hartford Drive, Suite 700
Scottsdale, AZ  85255
Tel.  602.726.0711
Fax  480.306.5459
sharon.urias@gmlaw.com
azdocket@gmlaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 19, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

                                                       */s/ Roy Taub*

                                                       ROY TAUB