Jason Crews
1515 N. Gilbert Rd 107-204
Gilbert, AZ 85234
602-295-1875
Jason.crews@gmail.com

*In propria persona*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT ARIZONA

PHOENIX DIVISION

| | |
|---|---|
| Jason Crews,<br><br>Plaintiff,<br><br>vs.<br><br>First Family Insurance, LLC, *et al.*<br><br>Defendant. | Case No.: CV-24-00366-PHX-GMS<br><br>Plaintiff's Response to Movants First Family Insurance, LLC And John Cosgriff's Motion to Dismiss Plaintiff Jason Crews' Second Amended Complaint or In the Alternative Leave to File An Amended Complaint and/or Conduct Jurisdictional Discovery |

Plaintiff Jason Crews hereby responds to Movants First Family Insurance, LLC ("First Family") and John Cosgriff's (collectively "Movants") Motion to Dismiss the Second Amended Complaint ("SAC") as follows:

## I. INTRODUCTION

Movants are serial TCPA violators as evidenced by numerous actions against them throughout the United States as early 2014. In fact, it seems that Defendant Cosgriff

1

through his various corporate alter egos[1] has engaged in a systematic, willful, and knowing disregard of the TCPA throughout the United States and that they can do so with impunity because no Court has jurisdiction over them and that they are not liable for their agents conduct. As movants should be well aware, the courts have roundly rejected both at the MTD stage. See *Biringer v. First Family Insurance, Inc.*[2], No. 4:14-cv-00566-RH-CAS (N.D. Fla. Oct. 24, 2014) where First Family agreed to pay $2,900,000 in settlement, and class action *James v. First Family Insurance, LLC,* No. 2:24-cv-00098-JLB-KCD (M.D. Fla. April 4, 2024), *Prosser v. US Health Advisors, LLC, et al.*, Missouri Middle District, *Hirsch v. US Health Advisors, LLC*, Northern District Of Texas, Fort Worth Division, *Muccio v. US Health Advisors LLC*, Florida Palm Beach Court System, *Hobbs v. US Health Advisors LLC*, Florida Southern Court, *Prosser v. US Health Advisors LLC*, Eastern District of Missouri.

## II. LEGAL STANDARD

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d. 797, 800 (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).2 "If service is not authorized under a relevant federal statute, the federal court must rely on the jurisdictional statute of the state in which the federal court is located to obtain jurisdiction." *Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986). As relevant here, Arizona's long-arm statute provides that "A court of this state may exercise personal jurisdiction over parties, whether found within or outside the state, to the maximum extent permitted by the Constitution of this state and the Constitution of the United States" *Ariz. R. Civ. P. 4.2* "Because Arizona's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional

---

[1] John Cosgriff is listed as the sole manager of USHealth Advisors, LLC in a filing dated April 9, 2024 (Exhibit 1).
[2] First Family Insurance, Inc., converted to First Family Insurance, LLC in a filing dated September 3, 2020 (Exhibit 2).

2

analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800–01.

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts may be established via general jurisdiction or specific jurisdiction. *See id.* at 801–02. General jurisdiction exists where the defendant's contacts with the forum state "are so continuous and systematic as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citation omitted). Specific jurisdiction exists when the plaintiff's claims or causes of action "arise out of or relate to" the defendant's contacts with the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation omitted). Even if a defendant has "sufficient minimum contacts," the court must also find that the exercise of jurisdiction is reasonable. *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1136 (S.D. Cal. 2018) (citing *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987)).

Courts analyze specific personal jurisdiction under a three-part test: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of proving the first two prongs of the test. *Id.* If, however, the plaintiff succeeds in demonstrating both prongs, the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would not be reasonable. *Burger King*, 471 U.S. at 476–78.

The first prong of this test asks courts to apply either a "purposeful availment" or "purposeful direction" standard. *Schwarzenegger*, 374 F.3d at 802. Although the purposeful availment standard has typically been applied in actions based on contract while the purposeful direction standard typically applies to actions sounding in tort, the Ninth Circuit has repeatedly stated that these usual applications do not create a "hard-and fast-rule." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023). *See also Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088–89 (9th Cir. 2023).

Instead, the Ninth Circuit has found that "the purposeful direction and availment tests simply frame [the] inquiry into the defendant's purposefulness vis-à-vis the forum state, ensuring that Movants are not haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (internal quotation marks and citation omitted). Instead of considering merely the nature of a plaintiff's claims when deciding which test to apply, "courts should comprehensively evaluate the extent of the defendant's contacts with the forum state and those contacts' relationship to the plaintiffs' claims—which may mean looking at both purposeful availment and purposeful direction." *Davis*, 71 F.4th at 1162.

Purposeful direction occurs where the defendant allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (citation omitted). "Failing to sufficiently plead any one of these three elements is fatal" to a plaintiff's "attempt to show personal jurisdiction." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014). Where a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," the defendant must "submit to the burdens of litigation in that forum." *Schwarzenegger*, 374 F.3d at 802 (first quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) and then quoting *Burger King*, 471 U.S. at 476). In all cases, however, a plaintiff must establish "a direct nexus" between a defendant's contacts with the forum state and the cause of action. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015).

Finally, for a plaintiff appearing *pro se*, as is the case here, the Court must construe the allegations of the complaint liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*).

## III. ARGUMENT

### A. General Personal Jurisdiction

As a preliminary matter, Plaintiff does not allege that Defendants Cosgriff or First Family is subject to general jurisdiction and the Court need only examine if Plaintiff has sufficiently pleaded specific jurisdiction.

### B. Specific Personal Jurisdiction

#### 1. Cosgriff purposefully directed his activities with the forum

Plaintiff plausibly alleged Cosgriff purposefully directed his activities with the forum, performed actions which purposefully availed himself of the privilege of conducting activities in the forum. "Cosgriff is the principle officer … closely holds … [personally] made the decision to hire agents …who are licensed in Arizona ..approved of training … directed the use of technology … [and] has direct and personal involvement in and ultimate control over every aspect of Defendant FFI's wrongful conduct that violated the TCPA and/or directly controlled and authorized this conduct" SAC at ¶¶ 16, 91-96.

Courts have found individual liability under the TCPA even where defendants did not personally place the calls. In *Callier v. National United Group,* 2022 WL 4088205, the court held an individual could be vicariously liable where specific facts established an agency relationship between the caller and the agent. The Court found that at least one of the calls violating the TCPA could be sufficiently linked to defendant even though defendant did not make the calls herself she was still potentially personally liable on a vicarious liability theory. See *Callier v. National United Group,* 2022 WL 4088205 (W.D. Texas, El Paso Sept. 6, 2022). Finally, as pleaded in his SAC, "There is a precedent holding corporate officers personally liable when they participate in the alleged actions: "If the officer directly participated in **or authorized** the statutory violation, even though acting on behalf of the corporation, he may be personally liable." See *United States v. Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985) (emphasis added)" SAC at ¶¶ 97.

5

"To state a valid claim Plaintiff must do more than rely on generic accusations, he must allege and show that the officer "failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA, or that he authorized or personally engaged in conduct that clearly violated the TCPA." *Mais*, 2013 WL 1283885, at *4.", Doc. 46 ¶ 5. Plaintiff has alleged that Cosgriff is the "Cosgriff is the CEO of numerous companies, [SAC] Exhibit 4, facing numerous allegations of TCPA violations [SAC] Exhibit 5", SAC at ¶¶ 14, and "Cosgriff is the only common denominator between these companies and the pattern of violative telephone calls" SAC at ¶¶ 15.

Movants falsely assert "Plaintiff never plausibly explains First Family's alleged role", Doc. 46 at ¶ 5. To the contrary Plaintiff very clearly states "Lopez stated that he worked for First Family Insurance SAC at ¶¶ 41 and Exhibit 1, and alleged his actions were ratified by SAC at ¶¶ 115-122. Here Cosgriff (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state SAC at ¶¶ 102.

**2. First Family purposefully directed its activities with the forum**

There are direct and specific contacts between First Family and the State of Arizona, and the SAC contains specific non-conclusory factual allegations that must be accepted as true: First Family's agent Lopez used First Family's software provide by First Family. SAC ¶¶ 104. First Family's agent Lopez used proprietary information and systems provided by First family. SAC ¶¶ 105. First Family was aware of the phone calls being made by Lopez and accepted referrals from Lopez pursuant to the authorization that FFI provided to Lopez. SAC ¶¶ 107. First Family gave access to their proprietary systems and software to Defendant Lopez. SAC ¶¶ 105. First Family, agents, and its employee's intentionally called Plaintiff's Arizona Telephone numbers. SAC ¶¶ 53. First Family, agents, and its employee's intentionally used Arizona telephone numbers to call Plaintiff. SAC ¶¶ 26, 53. First Family, agents, and its employee's confirmed Plaintiff's residence in Arizona on multiple occasions, SAC ¶¶ 37, *Id.* Exhibit 1 Page 1 ¶¶11, 15, Page 2,¶16; Page 3 ¶16, 23; Page 7 ¶10, stated they would be connected "licensed agent from your state", *Id.* Page 2 ¶20-25. First Family's agent

6

Lopez himself confirmed Plaintiff's residence in Arizona. SAC ¶¶ 40. First Family's agent Lopez provided a copy of his Arizona license (SAC, Exhibit 2) to sell insurance in Arizona. SAC ¶¶ 11. First Family's agent Lopez explicitly identified himself as being from "First Family Insurance" and confirmed he worked for First Family. SAC ¶¶ 39, 41. First Family's agent Lopez verified Plaintiff's Arizona location multiple times before stating he would "connect you with a licensed agent from your state". SAC ¶¶ 37-38. First Family, agents, and its employee's specifically targeted Plaintiff in Arizona at least 12 times residents. SAC ¶ 53. Here First Family (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state SAC at ¶¶ 102.

### 3. Prongs Two and Three for both Cosgriff and First Family

Courts have consistently held that defendants who engage in telemarketing calls, in violation of the TCPA, direct their activities at the forum and know that harm will be felt in the forum when those defendants call an in-forum phone number. *See Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884, at *6 (N.D. Cal. Apr. 20, 2020) ("In TCPA actions, courts have consistently held that the second and third prongs of the *Calder* test are satisfied when defendants contact numbers with area codes associated with that state."); *see also Schlesinger v. Collins*, No. 19-CV-03483-EMC, 2019 WL 4674396, at *2 (N.D. Cal. Sept. 25, 2019) (citing cases); *Moser*, 2018 WL 325112, at *4; *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014) (finding that where the defendant "intentionally sent text messages directly to cell phones with California based area codes, which conduct allegedly violated the TCPA and gave rise to this action, [the defendant] expressly aimed its conduct at California" and "knew that the alleged harm caused by the text messages it sent to California cell phones was likely to be suffered in California").

The exercise of jurisdiction over both First Family and Cosgriff comports with fair play and substantial justice. First Family maintains active business operations in Arizona through licensed agents and systematically markets to Arizona consumers. The company's own

7

representatives confirmed Plaintiff's Arizona location, offered Arizona-specific insurance products, and provided Arizona insurance licensing credentials. Any burden of litigating in Arizona is outweighed by Arizona's substantial interest in protecting its residents from unlawful telemarketing practices.

Jurisdiction is equally reasonable given his direct role in orchestrating First Family's Arizona operations. As CEO, he personally directed and authorized calling strategies targeting Arizona residents, selected third-party callers operating in Arizona, and oversaw the hiring of Arizona-licensed agents. His ongoing oversight of systematic marketing to Arizona consumers makes jurisdiction both foreseeable and fair.

**a) Formal Agency:** See *Callier v. National United Group, LLC, et al.* 3:21-cv-00071-DB, W.D. Texas citing *Cunningham v. Foresters Financial Services, Inc.*, where the court found an agency relationship was plausibly alleged even though the plaintiff could not "allege details regarding the relationships between the [defendants]" at the pleading stage. "…[A] person or entity 'may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer'" See *in re DISH Network, LLC* 28 FCC Rcd. 6574, 6582 (2013), and "a defendant may be vicariously liable … on the use of automated equipment where the plaintiff can show an agency relationship between a defendant and a third-party telemarketer." *Id.* As in that case here Plaintiff cannot reasonably be expected to know such information at this stage of litigation regarding the precise nature of the agency relationships between First Family, Lopez, and the unidentified callers who transferred Plaintiff to Lopez. However, the SAC contains sufficient factual allegations to plausibly establish an agency relationship: unidentified callers connected Plaintiff to Lopez, who explicitly identified himself as being from "First Family Insurance" confirming he worked for First Family (SAC ¶¶ 39-41), being transferred directly to a licensed First Family agent who was prepared to sell their products - plausibly suggests these callers were acting as agents or sub-agents of First Family. Multiple district courts have addressed the sufficiency of plaintiff's pleadings regarding the possible existence of an agency relationship.

8

b) **Ratification:** *Callier v. Wide Merch. Inv.*, 671 F. Supp. 3d 736 (W.D. Tex. 2023), citing *Aranda v. Caribbean Cruise Line, Inc.,* a party was held liable under ratification theory, because it knowingly accepted the benefits that flowed from the call campaign in the form of increased business. There is evidence that the party (Berkley) was aware of the call campaign, and that it violated the TCPA, but thought that it could drum up business. Yet there was no evidence that the party took any steps to ensure it would no longer receive leads generated through potentially unlawful calls.  Here Plaintiff has plausibly alleged that First Family was aware of the call campaign when he delivered DNC requests to movants, SAC ¶ 54-65, yet continued to call, SAC ¶ 53, despite receiving and opening the requests, SAC¶ 59-66. Defendant Lopez identified himself as an employee of First Family, and it is plausible that he was doing this the behest of and benefit of Movants.

**C.  Failure to State a Claim**

1. The SAC Adequately Pleads Use of an ATDS

Movants' argument that Plaintiff fails to plausibly allege use of an ATDS ignores both the SAC's specific factual allegations and the proper pleading standard. The SAC alleges multiple indicia of ATDS use:  Plaintiff heard silence and was forced to say hello multiple times while waiting to be connected, A distinctive "bloop" sound occurred before being connected to representatives, Identical or nearly identical scripts were used, Representatives purposefully concealed company identity, Multiple calls were placed from various numbers. SAC ¶ 73-78. These allegations, viewed together, plausibly suggest use of equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator.

Courts recognize that pre-discovery plaintiffs cannot be expected to plead the precise technical specifications of Movants' dialing systems. See *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), and *Prosser v. US Health Advisors, LLC, et al.*, Missouri Middle District, Doc 73 citing *Gould v. Farmers Ins. Exch.*, 288 F. Supp. 3d 963, 970 (E.D. Mo. 2018) (holding plaintiff alleged the defendant was vicariously liable under the TCPA based on apparent authority where plaintiff had a "reasonable basis" to believe the agents were acting at defendant's

9

direction, the text messages stated they were agents with defendant and referenced insurance products, and the texts were "approved" by defendant") and the pleading standard does not require Plaintiff to plead such "technical matter," *Duguid*, 141 S. Ct. at 1172. See *Jance v. Homerun Offer LLC*, 4:20-cv-00482-JGZ, 2021 WL 3270318, at *3 (D. Ariz. July 30, 2021); *Callier v. MultiPlan, Inc.*, 3:20-cv-00318- FM, 2021 WL 8053527, at *17 (W.D. Tex. Aug. 26, 2021) ("To require Plaintiff to plead the specifics of the technology used to place harassing calls would raise the pleading standard for TCPA claims impermissibly high."); *Atkinson v. Pro Custom Solar LCC*, 5:21-cv-00178-OLG, 2021 WL 2669558, at *1 (W.D. Tex. June 16, 2021) ("As a practical matter, no plaintiff will have personal knowledge of the defendant's telephone system at the pleadings stage. Only the defendant has that knowledge.").

<u>2) Movants argue Plaintiff has failed to state a NDNC claim</u>

Movant's reading of the TCPA to require that the recipient of an illegal call personally register their telephone number on the Do Not Call Registry rests on a statutory interpretation that is "a bit strained as an initial matter." *Riley v. California*, 573 U.S. 373, 397 (2014). As with any question of statutory interpretation, the court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016).  Defendant's sole case in support of its proposition that a subscriber must personally register their number on the Registry, is *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022), a case from the Northern District of Iowa holding that a plaintiff must personally register their number on the Do Not Call Registry. Relying on *Rombough*, the Defendant misstates the applicable law. The FCC's regulations permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." *Id.* Therefore, *Rombough*, requires some TCPA plaintiffs (not this one) to do the impossible– personally reregister a number already on the Registry.

1
2
3
4

*Rombough* has been rejected by a multitude of courts, most notably in *Callier v. Am.-Amicable Life Ins. Co. of Texas*, No. EP-22-CV-00018-FM, 2022 WL 17732717, at *5 (W.D. Tex. Oct. 18, 2022), where the Western District of Texas called the argument underlying the *Rombough* decision one that "borders on the frivolous."

5
6
7
8
9
10
11
12
13

*Rombough* also ignores the fact that the subscriber or regular user of a telephone line has standing under the TCPA. *D.G. v. William W. Siegel & Assocs.*, 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011) ("Plaintiff is the regular user and carrier of the phone, Plaintiff qualifies as a "called party" under the TCPA."); *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1225 (S.D. Cal. 2014) ("Defendant seeks to arbitrarily limit standing to only the individual whose name appears on the bill. Notably, Defendant does not cite a single case to support this position. Further, this position has been rejected by other courts."). This is notwithstanding the fact that the plain text of the TCPA's DNC standing provision allows any "person who has received" a call in violation of the FCC's regulations to sue. 47 U.S.C. § 227(c)(5).

14
15
16
17
18
19
20
21
22

Other courts have similarly rejected the *Rombough* court's approach, including at class certification and in refusing to strike class allegations. See, e.g., *Watson v. Manhattan Luxury Automobiles, Inc.*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *9 (S.D.N.Y. Sept. 29, 2022). (holding that "whether each class member registered their number on the NDNCR is irrelevant."); *Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185, at *4 (D. Colo. Nov. 14, 2023) (refusing to strike class allegations and reformulating class definition). As a result, there is no requirement that an individual personally register their number on the Do Not Call Registry and this Court need not even consider the issue when determining whether to strike the class allegations at the pleadings stage.

23
24
25
26
27

Regardless, the Plaintiff has, in fact, registered his number personally on the National Do Not Call Registry. Nowhere in the complaint does he plead that someone else registered the number on the Registry or even that it was on the Registry before he came to possess the number. Furthermore, the Plaintiff has confirmed that he personally registered his telephone number on the Registry in his affidavit. (Crews Dec. ¶ 1). Thus, the entire analysis of

28

*Rombough* or its applicability to this case does not even come into question and the motion to dismiss on this basis must also be denied.

3) <u>Plaintiff plausibly Alleges First Family Caused the Calls to be Placed, and That An "Automated System" Was Used</u>

Plaintiff's prior arguments pertaining to <u>The SAC Adequately Pleads Use of an ATDS</u> are applicable here and briefed in detail above and are incorporated by reference. Given these arguments that Plaintiff has made or knowingly allowed the calls to Plaintiff to be made utilizing an ATDS and that Movants admit "as its principal place of business in Florida" Doc. 46 at ¶ 15 the court should not dismiss this claim.

**D. Amendment Would Not Be Futile**

Should the Court find any deficiencies in the SAC, Plaintiff requests leave to amend. Nothing suggests amendment would be futile, and justice requires giving Plaintiff the opportunity to cure any pleading defects and/or conduct limited jurisdictional discovery.

**IV. CONCLUSION**

For the foregoing reasons, Movants' motion to dismiss should be denied in its entirety. Alternatively, Plaintiff requests leave to file an amended complaint addressing any deficiencies the Court may find.

Dated this February 28, 2025.

                                                                    */s/Jason Crews*

                                                                    Jason Crews

**COPIES** of the forgoing were filed with the court electronically via CM/ECF this same date.

By: _____/s/*Jason Crews*_____
    Jason Crews