SHARON A. URIAS (SBN 016970)
**GREENSPOON MARDER LLP**
8585 E. Hartford Drive, Suite 700
Scottsdale, AZ  85255
Tel.  602.726.0711
Fax  480.306.5459
Email:  sharon.urias@gmlaw.com
         azdocket@gmlaw.com

JEFFREY A. BACKMAN (admitted *pro hac vice*)
ROY TAUB (admitted *pro hac vice*)
**GREENSPOON MARDER LLP**
200 East Broward Boulevard, Suite 1800
Ft. Lauderdale, FL 33301
Tel.  954.491.1120
Fax  954.213.0140
Email:  jeffrey.backman@gmlaw.com
         roy.taub@gmlaw.com
         mary.torres@gmlaw.com
         cheryl.cochran@gmlaw.com

*Attorneys for Defendants*
*First Family Insurance, LLC and John Cosgriff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jason Crews,<br><br>                    Plaintiff,<br><br>v.<br><br>First Family Insurance, LLC and John Cosgriff,<br><br>                    Defendants. | No. 2:24-cv-00366-PHX-GMS<br><br>**DEFENDANTS FIRST FAMILY INSURANCE, LLC AND JOHN COSGRIFF'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF JASON CREWS'S SECOND AMENDED COMPLAINT** |

**PRELIMINARY STATEMENT**

Plaintiff has now taken three swings at pleading a viable case, and misses this time, too. In his Response to Defendants First Family Insurance, LLC's ("First Family") and John Cosgriff's Motion to Dismiss (the "Response") (Dkt. No. 51), Plaintiff fails to make a *prima facie* showing of personal jurisdiction and presents no evidence to refute First Family's sworn testimony that it did not call or authorize anyone to call Plaintiff, and Cosgriff's sworn testimony that he has nothing to do with telemarketing. Plaintiff can make all the implausible allegations of a multi-company conspiracy that strike his fancy – although he has now dropped two named defendants (one of which never even existed) – but he cannot avoid dismissal for lack of personal jurisdiction by repeating them. In the face of Defendants' sworn testimony, he must come forth with evidence of specific personal jurisdiction contacts, and he presents none. Nor does he discharge his evidentiary obligation by branding First Family a "serial violator," a totally fictitious charge without any factual support (and certainly no judgments or adjudications), particularly when most of the cited cases do not involve First Family. And while Plaintiff makes a cursory request for jurisdictional discovery, he does not attempt to make a showing of what discovery he would seek to respond to Defendants' unrefuted denials of any involvement or authorization of the calls to him. Plaintiff's repeated assertions of some implausible conspiracy is not enough.

Plaintiff also fails to identify well-pleaded facts sufficient to state a plausible claim for relief under the Telephone Consumer Protection Act ("TCPA"). And a chief executive officer is not plausibly named for personal liability on conclusory assertions, no more than a company is plausibly named on an agency theory when none of the predicates for an agency relationship, as opposed to an ordinary contractual arrangement, have been stated. There is no basis for Plaintiff's request for leave to file yet another complaint.

**ARGUMENT**

**I.    LACK OF PERSONAL JURISDICTION**

    **A.    Plaintiff Fails to Establish Personal Jurisdiction Over John Cosgriff**

In their Motion, Defendants demonstrated that the allegations against Cosgriff, First

1

Family's Chief Executive Officer, of purported personal involvement are conclusory and insufficient as a matter of law. *See* Mot. at 4-11. In one of the many lawsuits filed by Plaintiff, Judge Lanza found the exact same allegations of an officer's purported personal involvement could not be credited because they were "boilerplate," "conclusory and unsupported by specific facts." *Crews v. Sun Sols. AZ LLC*, No. CV-23-01589-PHX-DWL, 2024 WL 2923709, *7 (D. Ariz. June 10, 2024) (addressing allegation identical to Paragraph 16 of the SAC).

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *CollegeSource, Inc. v. AcademyOne, Inc*., 653 F.3d 1066, 1073 (9th Cir. 2011). Plaintiff, however, overlooks that Cosgriff submitted a declaration expressly refuting the conclusory allegations made against him with respect to the alleged telephone calls to Plaintiff and in general as to telemarketing. *See* Dkt. No. 48 at ¶ 3. Accordingly, Plaintiff must do more than point to his (insufficient) allegations because a court can no longer assume them to be true. *Data Disc. v. Systems Tech. Ass'n, Inc*., 557 F.2d 1280, 1284 (9th Cir. 1977). Where a "defendant moves to dismiss by filing affidavits or declarations refuting the jurisdictional allegations in a complaint, the plaintiff may not rest on those allegations and must support them with the plaintiff's own affidavits or evidence." *Matter of Star & Crescent Boat Co., Inc.*, 549 F. Supp. 3d 1145, 1154 (S.D. Cal. 2021). Plaintiff makes no evidentiary showing whatsoever. The only evidence he submits about Cosgriff is that he is "listed as the sole manager" of another affiliated entity of UnitedHealthcare in a corporate filing from 2024. *See* Resp. at 2 n.1. Since Plaintiff fails to satisfy his burden of establishing personal jurisdiction over Cosgriff, Cosgriff should be dismissed.

      **B.**    **Plaintiff Fails to Establish Personal Jurisdiction Over First Family**

Like Cosgriff, First Family submitted sworn testimony that First Family never called either of Plaintiff's telephone numbers, "never authorized, directed, controlled, or caused any third party to place or initiate a telephone call to the Plaintiff," and that far from authorizing, directing, controlling, or causing anyone to violate the TCPA or FTSA, it requires all of its independently contracted insurance advisors to comply with those and any other applicable laws. *See* Dkt. No. 47 at ¶¶ 6-8. Rather than provide evidence as required, and not rely on refuted

allegations, Plaintiff regurgitates his conclusory, unspecific, and confusing "all of the above" boilerplate allegations that vaguely assert First Family, "Defendants," Ryan Lopez, and an unnamed "offshore telemarketer" all somehow made the calls, without any coherent explanation of who actually placed them or how First Family is responsible. *See* SAC at ¶¶ 53, 73, 78, 82, 88, 103, 110, 140; Resp. at 7. As in *Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL 511217, *5 (D. Ariz. Feb. 11, 2021), Plaintiff's allegations fail to "distinguish between entities when setting out the challenged conduct," presenting a "word salad of allegations" that "ma[k]e it impossible to analyze the extent to which [First Family] may have had an agency relationship with another entity that could subject it to specific personal jurisdiction."

Indeed, Plaintiff tries to attribute to First Family the Arizona jurisdictional contacts he claims the "offshore telemarketer" made in the alleged telephone calls, but only by assuming they are First Family's "representatives," "agents," and "sub-agents." Resp. at 6, 7, 8. That conclusory shortcut cannot be credited. *See Winters*, 2021 WL 511217 at *6; *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 957 (N.D. Cal. 2015) (declining to impute jurisdictional contacts "under an agency theory" based on "broad and conclusory allegation" that a defendant acts "as 'the agent' of the others"). As the court in *Winters* stated,

> Plaintiff do[es] do not allege any facts showing that [First Family] had "the right to substantially control its [purported agent's] activities,' which is a fundamental tenet of an agency relationship." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017). . . .
>
> . . . . Plaintiff['s] conclusory allegations of agency are similar to those deemed insufficient in *Williams*, because the allegations in . . . the SAC say nothing about control.

*Winters*, 2021 WL 511217 at *6.

Plaintiff confuses his own allegations that Lopez is First Family's agent (and the "offshore telemarketer" is a sub-agent), since he never alleges that Lopez placed or initiated any calls to him. Instead, Plaintiff alleges that the "offshore telemarketer" (who identified themselves as Brian) placed the call, transferred him to another person (Andrew), who then

3

transferred him to Lopez, the first person in the chain of speakers to allegedly identify themselves as being associated with First Family. *See* SAC at ¶¶ 32-41. Thus, unlike in *Winters*, none of the alleged "callers identified themselves as representatives of [First Family]," which still would not have "cured" Plaintiff's pleading "deficiency" "because this again says nothing about control." *Winters*, 2021 WL 511217 at \*6 (citing *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-cv-03315-PJH, 2018 WL 288055, \*5 (N.D. Cal. 2018)).

Plaintiff also alleges the same telephone number he received calls from was the telephone number that Brian called him from. *See* SAC at ¶¶ 32, 53. And there is no allegation and certainly not evidence that Brian works for or is an agent of First Family, or that Brian's telephone number belongs to First Family. Yet, Plaintiff contends personal jurisdiction exists on the basis that Lopez called him, ***despite making no well-pleaded allegations to that effect***. *See* Resp. at 6-7. Plaintiff even argues that personal jurisdiction is established because "Lopez verified Plaintiff's Arizona location multiple times before stating he [Lopez] would 'connect you with a licensed agent from your state,'" (*id.* at 7), disregarding that he alleged the person who told him that was Brian, who transferred him to Andrew, who then transferred him to Lopez. *See* SAC at ¶¶ 37-38. Even Plaintiff cannot keep his word salad of allegations straight.

At bottom, Plaintiff points to one telephone number that called him, one he alleges belonged to an "offshore telemarketer" twice-removed from Lopez, and nowhere does Plaintiff plausibly allege, ***never mind submit evidence of***, an agency relationship that would permit him to impute the "offshore telemarketer's" alleged jurisdictional contacts to the (at least thrice-removed) First Family.[1] The so-called "offshore telemarketer's" purported jurisdictional

---

[1] Plaintiff tries to align the allegations in the SAC, which he thoroughly misdescribes in the Response, with allegations deemed sufficient in *Callier v. National United Group*, No. EP-21-CV-71-DB, 2021 WL 5393829 (W.D. Tex. Nov. 17, 2021), and *Cunningham v. Foresters Financial Services, Inc.*, 300 F. Supp. 3d 1004 (N.D. Ind. 2018). Plaintiff's reliance on out-of-circuit decisions when there is an abundance of case law on this issue from within the Ninth Circuit, is telling. In any event, neither decision involved a defendant that submitted sworn testimony refuting the agency allegations upon which the plaintiff premised personal jurisdiction. The *Cunningham* decision brings that contrast into sharp relief, as it dismissed one set of defendants for lack of personal jurisdiction where they submitted "unrefuted evidence of [their] lack of contacts with the State of Indiana . . . ." *Id.* at 1013.

contacts cannot be imputed to First Family.

Plaintiff's Response also fails to establish personal jurisdiction under a ratification theory. The Ninth Circuit has made clear, in the context of the TCPA, ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority" and that "[a]n act is ratifiable if the actor acted or purported to act as an agent on the person's behalf," which means that "[w]hen an actor is not an agent and does not purport to be one, the doctrine of ratification does not apply." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (internal quotations omitted). Furthermore, "[t]he principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking." *Id.* (quotation omitted). None of that has been plausibly alleged or evidenced.

Plaintiff contends he "plausibly alleged that First Family was aware of the call campaign when he delivered DNC requests to movants, yet continued to call, despite receiving and opening the requests." Resp. at 9. But that does not plausibly allege or evidence that an agent or someone purporting to be an agent of First Family called Plaintiff, that First Family knew someone acting on its behalf was placing calls to Plaintiff, *and* that First Family somehow ratified their conduct by accepting the benefits from it. *See Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, *13 (N.D. Cal. Dec. 4, 2017) ("In order to allege that TranzVia 'ratified' Rose's allegedly improper calls, plaintiff must allege facts sufficient to allow the court to reasonably infer that TranzVia knew that Rose violated the TCPA and that it 'knowingly' accepted the benefits of Rose's violation.").

Plaintiff has not plausibly alleged that First Family even knows who allegedly called him (the thrice-removed "offshore telemarketer," apparently), let alone any of the other requirements for ratification. First Family has submitted sworn testimony denying that it authorized, directed, controlled, or caused anyone to do so. *See* Dkt. No. 47 at ¶¶ 7-8. Plaintiff's own allegations make clear that the calls he claims he continued to receive after making a do-not-call request came from the "offshore telemarketer" that called him, not Lopez and not First Family. Nor does Plaintiff identify any possible "benefit" First Family accepted. Indeed, there is no alleged

5

or cognizable connection between him and First Family, such as a purchase, that could be accepted by First Family for its benefit. *See Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 253-54 (4th Cir. 2018). Plaintiff fails to establish any basis for personal jurisdiction.

## II.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST FIRST FAMILY

### A.     The TCPA ATDS Claim (Count I) Should be Dismissed

To qualify as an ATDS, the equipment at issue must use a random or sequential number generator in calling the plaintiff, and a plaintiff is required to allege facts sufficient to permit the plausible inference that such equipment was used, as opposed to a predictive dialer that calls telephone numbers placed on a list. *See* Mot. at 12. In his Response, Plaintiff effectively asks the Court to ignore the Supreme Court's ruling in *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021), on a Rule 12(b)(6) motion and conclude a plaintiff can never be expected to allege facts sufficient to plausibly allege the specific indicia of an ATDS. *See* Resp. at 9-10. But that is not the law, and there is no exception to the plausibility pleading standard for ATDS cases. *See* Mot. at 12-13 & n.5 (collecting cases). The cases Plaintiff relies upon pre-date *Facebook* or do not follow the Supreme Court's rejection of a "broad interpretation" of the definition of an ATDS, which was found to reflect a "narrow statutory design" that "includes only devices that use" "random or sequential number generator technology," (*Facebook*, 592 U.S. at 408), and impermissibly regard allegations that describe nothing more than the use of predictive dialers, which do not create liability under the TCPA, as indicating the use of an ATDS. That, however, runs counter to the rule that "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). For this reason, the fact that Plaintiff alleges multiple calls were made to him per day, even by the same caller who allegedly "complained about Plaintiff disconnecting the [earlier] call," "indicate[s] an effort to target Plaintiff, rather than to randomly or sequentially contact [him]," and thus fails to plausibly allege the use of an ATDS (as opposed to some other non-qualifying equipment, such as a predictive dialer). *Forteza v. Vehicle Serv. Dep't*, No. 3:23-CV-874-L-BN, 2024 WL 2868271, *5 (N.D. Tex. Apr. 22, 2024).

### B.     Plaintiff Fails to State a NDNC Claim (Count II)

Plaintiff argues the interpretation of the TCPA's National Do-Not-Call ("NDNC") regulations that furnish the basis of his NDNC claim "begins with the text," (Resp. at 10 (quoting *Ross v. Blake*, 578 U.S. 632, 638 (2016)), but he ***never*** discusses the text of the regulation, which applies only to "telephone solicitation[s] to . . . [a] residential telephone subscriber ***who has registered his or her telephone number on the national do-not-call registry*** of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government . . . ." 47 C.F.R. § 64.1200(c)(2) (emphasis added). In his ***third*** complaint, Plaintiff still does not allege that he registered either of his telephone numbers on the NDNC Registry. That precludes Plaintiff from stating a claim for relief for violation of 47 C.F.R. § 64.1200(c)(2). *See Rogers v. Assurance IQ, LLC*, No. 2:21-CV-00823-TL, 2023 WL 2646468, \*4 (W.D. Wash. Mar. 27, 2023); *Rombough v. Robert D. Smith Ins. Agency, Inc*., No. 22-CV-15-CJW-MAR, 2022 WL 2713278, \*2 (N.D. Iowa June 9, 2022).[2]

Plaintiff argues the same regulation requires registrations to "be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." Resp. at 10 (quoting 47 C.F.R. § 64.1200(c)(2)). That is true, but does not help Plaintiff. The indefinite honoring provision was added as part of the FCC's implementation of the Do Not Call Improvement Act of 2007 ("DNC Act"), (Pub. L. 110-187, 122 Stat. 633 (2008)), "so that registrations will not automatically expire based on the current five year registration period," "to minimize the inconvenience to consumers of having to re-register their preferences not to receive telemarketing calls . . . ." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 73 Fed. Rec. 40183-01, 40183 (July 14, 2008). That did not change the fact that only persons who registered their telephone numbers are protected by the regulation. Indeed, in the same final rule quoted above, the FCC "recognize[d] the importance of maintaining an accurate Do-Not-Call Registry" and pointed

---

[2] Even though these are clearly two different decisions, Plaintiff ignores *Rogers* and describes *Rombough* as "Defendants' sole case in support of its proposition that a subscriber must personally register the number on the Registry . . . ." Resp. at 10.

out "[t]he DNC Act provides that the FTC," the agency charged with administering the Registry, "shall periodically check the numbers in the Registry and purge those numbers that have been disconnected and reassigned." *Id.* at 40184.[3] Congress's express direction that the FTC "periodically check" and "remove . . . telephone numbers that have been disconnected and reassigned" is codified at 15 U.S.C. § 6155(b). That is why the FTC states on its website, ***twice***, that it "removes numbers" – "automatically" – that are "disconnected and reassigned" from the Registry. *See* Dkt. No. 46-1. So a person need not re-register their preference not to be called, but they still must register *their* preference as to *their* telephone number. That is actually what Congress directed and the FTC understands: only if the user of the telephone number has registered *their* preference not to be called are they protected. Plaintiff does not address the FTC's own website language, and none of the authorities relied upon by Plaintiff considered the proper context of the "indefinite honoring" language and the DNC Act's direction that the FTC maintain an accurate Registry of persons who registered *their* preference not to be solicited by regularly removing reassigned telephone numbers.[4]

### C.   **Plaintiff Fails to State a FTSA Claim (Count III)**

Plaintiff dedicates a mere five lines to rehash his same baseless argument that just as he does not need to state facts sufficient to plausibly allege the use of an ATDS for purposes of a claim under the TCPA, he does not need to state facts sufficient to plausibly allege the use of "an automated system for the selection or dialing of telephone numbers" to state a claim for

---

[3] The FCC further noted that it "intends to work closely with the FTC to consider options to enhance the Registry's accuracy, including whether scrubbing the database more frequently is possible and might improve the overall accuracy of the database," "encourage[d] local exchange carriers . . . to report information on disconnected and reassigned numbers to the FTC subcontractor as timely as possible so that such numbers might be purged more than once per month," and downplayed commenters' "fear[ ] that numbers that had been disconnected or reassigned would not be purged from the Registry in a timely manner." *Id.* at 40184, 40185. None of these considerations is consistent with Plaintiff's view that a telephone number is protected regardless of whether it has been reassigned to someone else.

[4] Plaintiff argues he does not need to allege someone else registered his telephone number, (Resp. at 11), but that is a red herring. He ***never*** alleges that ***he*** registered either of the two telephone numbers at issue. The SAC was Plaintiff's third opportunity to make that allegation.

relief under the FTSA. Resp. at 12. That is not the law. *See Davis v. Coast Dental Servs., LLC*, No. 8:22-CV-941-KKM-TGW, 2022 WL 4217141, *2 (M.D. Fla. Sept. 13, 2022). Nor does Plaintiff point to any allegations plausibly alleging either of the Defendants caused the alleged violative calls to be directed to him. *See* Mot. at 15-16.

### III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST COSGRIFF

In their Motion, Defendants explained that in his third pleading, Plaintiff still fails to state a plausible claim for individual liability against Cosgriff. *See* Mot. at 17. Plaintiff does not respond to this argument at all, and therefore this branch of the Motion should be granted as unopposed. *See*, *e.g.*, *Doe v. Dickenson*, No. CV–07–1998–PHX–GMS, 2008 WL 4933964, *5 (D. Ariz. 2008) (Snow, J.). Indeed, what Plaintiff alleges against Cosgriff is the very same "boilerplate," conclusory, and non-specific allegation that Plaintiff has repeatedly asserted, and it should be rejected as insufficient here, too. *See Sun Sols.*, 2024 WL 2923709, *7.

### IV. PLAINTIFF IS NOT ENTITLED TO JURISDICTIONAL DISCOVERY

Under the heading "Amendment Would Not Be Futile," Plaintiff makes a throwaway request, to "conduct limited jurisdictional discovery." Resp. at 11. Of whom? What forms of discovery? And about what? Far more than uttering the phrase "jurisdictional discovery" is necessary. Courts in the Ninth Circuit require at least a *colorable* showing that the Court can exercise jurisdiction over Defendants. *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007). Additionally, Plaintiff must provide evidence substantiating his request for discovery or describe with precision what evidence discovery could produce that would support jurisdiction, and how it would be helpful. *Gamez v. Huffy Corp. Inc.*, No. CV-21-00414-TUC-JCH, 2024 WL 98423, *8 (D. Ariz. Jan. 9, 2024); *Ariz. Sch. Risk Retention Tr., Inc. v. NMTC, Inc.*, 169 F. Supp. 3d 931, 942 (D. Ariz. 2016). Plaintiff has done none of that. "[C]ourts are within their discretion to deny requests based 'on little more than a hunch that [discovery] might yield jurisdictionally relevant facts.'" *Pfister v. Selling Source, LLC*, 931 F. Supp. 2d 1109, 1118 (D. Nev. 2013) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)). Here, Plaintiff does not even attempt to articulate a hunch, only an unsupported demand. Under settled law, "[p]rior to receiving jurisdictional discovery against either of these Defendants, [Plaintiff] would

9

have to establish a more specific basis on which to believe there may be jurisdiction as to either." *Hedges Indus. Enterprises, Inc. v. Rio Tinto PLC*, No. CV-09-8113-PCT-GMS, 2010 WL 2662270, *6 n.2 (D. Ariz. July 1, 2010) (Snow, J.). As here, "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006).

## V. THE COURT SHOULD DENY LEAVE TO FILE ANOTHER COMPLAINT

Plaintiff also makes a throwaway request, in the event "the Court find[s] any deficiencies in the SAC," for "leave to amend." Resp. at 12. "Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Id.* For the numerous reasons set forth herein, leave to amend would be futile and prejudicial to Defendants, especially where Plaintiff never explains what he would change or add in a fourth complaint either to establish personal jurisdiction or state a plausible claim for relief against Defendants. *Accord Korea Kumho Petrochemical Co. v. Flexsys Am. LP*, 370 F. App'x 875, 878 (9th Cir. 2010) (affirming denial of leave to amend where plaintiff "failed to assert how it might remedy the complaint"). Nor has Plaintiff complied with Local Rule 15.1 by "lodg[ing] a proposed amended complaint or otherwise show what [he] would have pleaded to cure the deficiencies." *Guerrero v. Greenpoint Mortg. Funding, Inc.*, 403 F. App'x 154, 157 (9th Cir. 2010). Leave to file yet another complaint is particularly inappropriate where Plaintiff "has already amended [his] complaint twice, and has not specified what other facts [he] would add to address the deficiencies in [his] complaint." *Bell v. Wells Fargo Bank, NA*, 663 F. App'x 549, 553 (9th Cir. 2016) (affirming denial of leave to file amended complaint).

## CONCLUSION

For the foregoing reasons, Defendants First Family Insurance, LLC and John Cosgriff respectfully request that the Court enter an order dismissing Plaintiff's Second Amended

Complaint with prejudice, and granting any other relief the Court deems appropriate.

DATED:  March 7, 2025					Respectfully Submitted,

							GREENSPOON MARDER LLP

							*/s/ Roy Taub*
							Jeffrey A. Backman (admitted *pro hac vice*)
							Roy Taub (admitted *pro hac vice*)
							200 East Broward Boulevard, Suite 1800
							Ft. Lauderdale, FL 33301
							Tel.  954.491.1120
							Fax  954.213.0140
							jeffrey.backman@gmlaw.com
							roy.taub@gmlaw.com
							mary.torres@gmlaw.com
							cheryl.cochran@gmlaw.com

							Sharon A. Urias (SBN 016970)
							8585 E. Hartford Drive, Suite 700
							Scottsdale, AZ  85255
							Tel.  602.726.0711
							Fax  480.306.5459
							sharon.urias@gmlaw.com
							azdocket@gmlaw.com

							*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

							  */s/ Roy Taub*
							  ROY TAUB