Jason Crews
1515 N. Gilbert Rd 107-204
Gilbert, AZ 85234
602-295-1875
Jason.crews@gmail.com

*In propria persona*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT ARIZONA

PHOENIX DIVISION

| | |
|---|---|
| Jason Crews, | Case No.: CV-24-00366-PHX-GMS |
| Plaintiff, | |
| vs. | Plaintiff's Response to Movants Ryan |
| First Family Insurance, LLC, *et al.* | Anthony Lopez's Motion to Dismiss |
| Defendant. | Plaintiff Jason Crews' Second Amended |
| | Complaint or In the Alternative Leave to |
| | File An Amended Complaint and/or |
| | Conduct Jurisdictional Discovery |

Plaintiff Jason Crews hereby responds to Movants Ryan Anthony Lopez's ("Lopez")
Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") as follows:

**I. INTRODUCTION**

Defendant Lopez has filed his Motion to Dismiss Plaintiff Jason Crews' Second
Amended Complaint ("SAC") under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).
Lopez's motion should be denied because Plaintiff has properly pled both personal
jurisdiction over Lopez and viable claims against him under the Telephone Consumer
Protection Act ("TCPA") and Florida Telephone Solicitation Act ("FTSA"). The SAC
contains well-pleaded factual allegations connecting Lopez to the calls at issue, and Lopez
fails to meet his burden to establish that the complaint should be dismissed.

1

1    Plaintiff incorporates by reference Plaintiff's Response to Movants First Family

2    Insurance, LLC And John Cosgriff's Motion to Dismiss Plaintiff Jason Crews' Second

3    Amended Complaint or In the Alternative Leave to File An Amended Complaint and/or

4    Conduct Jurisdictional Discovery (Doc. 51).

5    **II. LEGAL STANDARD**

6    "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction,

7    the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."

8    *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d. 797, 800 (citing *Sher v. Johnson*, 911 F.2d

9    1357, 1361 (9th Cir. 1990)).2 "If service is not authorized under a relevant federal statute, the

10   federal court must rely on the jurisdictional statute of the state in which the federal court is

11   located to obtain jurisdiction." *Butcher's Union Loc. No. 498, United Food & Com. Workers v.*

12   *SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986). As relevant here, Arizona's long-arm statute

13   provides that "A court of this state may exercise personal jurisdiction over parties, whether

14   found within or outside the state, to the maximum extent permitted by the Constitution of

15   this state and the Constitution of the United States" *Ariz. R. Civ. P. 4.2* "Because Arizona's

16   long-arm jurisdictional statute is coextensive with federal due process requirements, the

17   jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*,

18   374 F.3d at 800–01.

19   "For a court to exercise personal jurisdiction over a nonresident defendant, that

20   defendant must have at least 'minimum contacts' with the relevant forum such that the

21   exercise of jurisdiction 'does not offend traditional notions of fair play and substantial

22   justice.'" *Id.* at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum

23   contacts may be established via general jurisdiction or specific jurisdiction. *See id.* at 801–02.

24   General jurisdiction exists where the defendant's contacts with the forum state "are so

25   continuous and systematic as to render them essentially at home in the forum state."

26   *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation

27   marks and citation omitted). Specific jurisdiction exists when the plaintiff's claims or causes

28   of action "arise out of or relate to" the defendant's contacts with the forum state. *See Burger*

2

1    *King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation omitted). Even if a defendant has

2    "sufficient minimum contacts," the court must also find that the exercise of jurisdiction is

3    reasonable. *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1136 (S.D. Cal.

4    2018) (citing *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987)).

5         Courts analyze specific personal jurisdiction under a three-part test: "(1) The non-

6    resident defendant must purposefully direct his activities or consummate some transaction

7    with the forum or resident thereof; or perform some act by which he purposefully avails

8    himself of the privilege of conducting activities in the forum, thereby invoking the benefits

9    and protections of its laws; (2) the claim must be one which arises out of or relates to the

10   defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with

11   fair play and substantial justice, *i.e.* it must be reasonable." *Schwarzenegger*, 374 F.3d at 802.

12   The plaintiff bears the burden of proving the first two prongs of the test. *Id.* If, however, the

13   plaintiff succeeds in demonstrating both prongs, the burden shifts to the defendant to

14   demonstrate that the exercise of jurisdiction would not be reasonable. *Burger King*, 471 U.S. at

15   476–78.

16        The first prong of this test asks courts to apply either a "purposeful availment" or

17   "purposeful direction" standard. *Schwarzenegger*, 374 F.3d at 802. Although the purposeful

18   availment standard has typically been applied in actions based on contract while the

19   purposeful direction standard typically applies to actions sounding in tort, the Ninth Circuit

20   has repeatedly stated that these usual applications do not create a "hard-and-fast-rule." *Davis*

21   *v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023). *See also Impossible Foods Inc.*

22   *v. Impossible X LLC*, 80 F.4th 1079, 1088–89 (9th Cir. 2023).

23        Instead, the Ninth Circuit has found that "the purposeful direction and availment

24   tests simply frame [the] inquiry into the defendant's purposefulness vis-à-vis the forum state,

25   ensuring that Movants are not haled into a jurisdiction solely as a result of random,

26   fortuitous, or attenuated contacts." *Id.* (internal quotation marks and citation omitted).

27   Instead of considering merely the nature of a plaintiff's claims when deciding which test to

28   apply, "courts should comprehensively evaluate the extent of the defendant's contacts with

3

the forum state and those contacts' relationship to the plaintiffs' claims—which may mean looking at both purposeful availment and purposeful direction." *Davis*, 71 F.4th at 1162.

Purposeful direction occurs where the defendant allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (citation omitted). "Failing to sufficiently plead any one of these three elements is fatal" to a plaintiff's "attempt to show personal jurisdiction." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014). Where a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," the defendant must "submit to the burdens of litigation in that forum." *Schwarzenegger*, 374 F.3d at 802 (first quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) and then quoting *Burger King*, 471 U.S. at 476). In all cases, however, a plaintiff must establish "a direct nexus" between a defendant's contacts with the forum state and the cause of action. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015).

Finally, for a plaintiff appearing *pro se*, as is the case here, the court must construe the allegations of the complaint liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*).

**III. ARGUMENT**

**A.    General Personal Jurisdiction**

As a preliminary matter, Plaintiff does not allege that Defendants Cosgriff or First Family is subject to general jurisdiction and the Court need only examine if Plaintiff has sufficiently pleaded specific jurisdiction.

**B.    This Court Has Specific Personal Jurisdiction Over Lopez**

Lopez's argument that he merely "received an incoming call" fundamentally mischaracterizes his contacts with Arizona and ignores his active participation in a coordinated telemarketing campaign targeting Arizona residents. The jurisdictional facts establish that Lopez purposefully directed his activities toward Arizona in multiple ways:

**Prong 1:  Lopez purposefully direct his activities with the forum and Plaintiff Jason Crews a resident of the forum**

*First, Lopez Was Part of a Coordinated Telemarketing Campaign Targeting Arizona.* While Lopez focuses narrowly on who physically dialed the number, this perspective overlooks the nature of modern telemarketing operations. The SAC alleges facts showing that Lopez was an integral part of a coordinated telemarketing campaign:

- the SAC alleges that Lopez was an employee of First Family Insurance; SAC ¶¶ 10, 39, 41, 103-109;
- the callers confirmed Plaintiff's residence in Arizona during the call; *Id.* ¶ 37, Exhibit 1, Page 1, ¶¶ 11, 15; Page 2, ¶ 16; Page 3, ¶¶ 16, 23; Page 7, ¶ 10, stated they would be connected with "a licensed agent from your state," *Id.*, Page 2, ¶¶ 20-25;
- Lopez specifically confirmed Plaintiff's residence in Arizona during the call; *Id.* ¶ 40;
- Lopez was the designated licensed agent to complete insurance sales following the initial telemarketing contact; *Id.* ¶¶ 38-39.

This multi-stage telemarketing process - where initial callers qualify leads before transferring them to licensed agents like Lopez who can complete sales - is a common practice that courts have recognized as supporting jurisdiction over all participants. See, e.g., *Ott v. Mortgage Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1058-59 (D. Or. 2014) (finding specific personal jurisdiction where defendants were "alleged to be primary participants in the TCPA violations, much as a puppeteer pulls a puppet's strings" and "knew that the alleged conduct would cause harm to [forum state] residents"). The *Ott* Court recognized that individuals who are primary participants in TCPA violations and who know their conduct would harm residents of the forum state are appropriately subject to personal jurisdiction in that forum. As the designated insurance agent in the alleged illegal telemarketing scheme who was held out to be licensed in Arizona and participating in calls with confirmed Arizona residents, Lopez acted as a primary participant in the telemarketing campaign directed at this forum.

5

Moreover, Lopez's framing of the issue misrepresents the nature of TCPA liability. The statute does not limit liability only to the person who physically dials a number. Rather, courts have held that those who are substantially involved in the placement of a call or who continue a telemarketing solicitation after a transfer can be held liable. The FCC has recognized that "[c]ongress therefore put the responsibility for compliance with the law directly on the party that 'makes' or 'initiates' automated and prerecorded message calls. As the Commission recognized in the DISH Declaratory Ruling, neither the TCPA nor the Commission's rules define 'make' or 'initiate,' nor do they establish specific factors to be considered in determining who makes or initiates a call, but noted that 'initiate' suggests some 'direct connection between a person or entity and the making of a call.'" FCC 15-72, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135, ¶ 29 (2015). The FCC later clarifies, "Specifically, a direct connection between a person or entity and the making of a call can include tak[ing] the steps necessary to physically place a telephone call. It also can include being so involved in the placing of a specific telephone call as to be deemed to have initiated it." *Id.* 30 (2015).

By continuing the telemarketing solicitation after the transfer, confirming Plaintiff's location in Arizona, and using his Arizona insurance license to attempt to sell insurance to an Arizona resident, Lopez purposefully directed his activities toward Arizona, making the exercise of personal jurisdiction proper.

Courts have found individual liability under the TCPA even where defendants did not personally place the calls. In *Callier v. National United Group,* 2022 WL 4088205, the Court held an individual could be vicariously liable where specific facts established an agency relationship between the caller and the agent. The Court found that at least one of the calls violating the TCPA could be sufficiently linked to defendant even though defendant did not make the calls herself she was still potentially personally liable on a vicarious liability theory. See *Callier v. National United Group,* 2022 WL 4088205 (W.D. Texas, El Paso Sept. 6, 2022). Finally, as pleaded in his SAC, "There is a precedent holding corporate officers personally

liable when they participate in the alleged actions: "If the officer directly participated in **or authorized** the statutory violation, even though acting on behalf of the corporation, he may be personally liable." See *United States v. Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985) (emphasis added)." SAC at ¶ 97.

   ***Second, Lopez called, or caused Plaintiff, an Arizona Resident, to be called on his Arizona phone number after the call described in the SAC.*** As set forth in the accompanying Declaration of Jason Crews ("Crews Decl."), Lopez sent an additional text message to Plaintiff's Arizona phone number that included a photo of Lopez's Arizona insurance license. Crews Decl. ¶ 3, SAC Exhibit 2. This act of sending a communication directly to an Arizona resident constitutes another purposeful direction toward the forum state that independently supports personal jurisdiction. See *Luna v. Shac, LLC*, 122 F. Supp. 3d 936, 939-40 (N.D. Cal. 2015) (holding that Shac is reasonably subject to the personal jurisdiction of this Court when "Shac intentionally sent unsolicited text messages advertising Sapphire to California cell phone numbers, giving rise to this litigation and purposefully directing its activity to California").

   ***Lopez's Arizona Insurance License Demonstrates Purposeful Direction.*** Lopez's self-professed possession, SAC ¶¶ 38-39 and presentation of an Arizona insurance license, SAC Exhibit 2, to Plaintiff demonstrates that he deliberately established a formal connection with the state and sought to utilize that connection to establish credibility with Plaintiff.

   By obtaining an Arizona insurance license, Lopez:

   - Deliberately sought authorization to conduct insurance business with Arizona residents,
   - Submitted to Arizona's regulatory authority over insurance sales,
   - Intentionally availed himself of the privilege of conducting business in Arizona,
   - Purposefully directed his professional activities toward Arizona residents,

   ***Lopez's Use of His Arizona License Constitutes Purposeful Availment.*** Lopez did not merely passively possess an Arizona license. Instead, as alleged in the SAC and supporting

declaration, he actively leveraged his Arizona licensure status during his interactions with Plaintiff by:

- Making himself available specifically to sell insurance products to Arizona residents as licensed in Arizona; *Id.*, Exhibit 1, Page 1, ¶¶ 11, 15; Page 2, ¶ 16; Page 3, ¶¶ 16, 23; Page 7, ¶ 10, stated they would be connected with "a licensed agent from your state," *Id.*, Page 2, ¶¶ 20-25;

- Confirming Plaintiff's Arizona residency during their conversation; *Id.* ¶ 40; and

- Sending a copy of his Arizona license to Plaintiff via text message. *Id.* Exhibit 2.

These actions demonstrate that Lopez deliberately sought to benefit from the credibility and authority conferred by the State of Arizona through his licensure. By obtaining and prominently displaying his Arizona license, Lopez was effectively saying to Plaintiff: "The State of Arizona has vetted me, approved me, and authorized me to sell insurance to you." This invocation of state authority was a calculated attempt to enhance his credibility and overcome potential resistance from Arizona consumers like Plaintiff.

The Arizona insurance licensing process is not merely administrative—it represents the state's sovereign authority to regulate who may sell insurance products to its residents. When Lopez obtained this license and then affirmatively used it in his communications with Plaintiff, he deliberately availed himself of the privilege of conducting activities within Arizona under the protection of Arizona law. He sought the state's imprimatur to bolster his commercial endeavors. This is precisely the type of purposeful availment that subjects Lopez to jurisdiction in Arizona for claims arising from his insurance-related communications with Arizona residents. See *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Here Lopez (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum.

**Prongs Two and Three for Lopez**

Courts have consistently held that defendants who engage in telemarketing calls, in violation of the TCPA, direct their activities at the forum and know that harm will be felt in

8

the forum when those defendants call an in-forum phone number. *See Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884, at *6 (N.D. Cal. Apr. 20, 2020) ("In TCPA actions, courts have consistently held that the second and third prongs of the *Calder* test are satisfied when defendants contact numbers with area codes associated with that state."); *see also Schlesinger v. Collins*, No. 19-CV-03483-EMC, 2019 WL 4674396, at *2 (N.D. Cal. Sept. 25, 2019) (citing cases); *Moser*, 2018 WL 325112, at *4; *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014) (finding that where the defendant "intentionally sent text messages directly to cell phones with California based area codes, which conduct allegedly violated the TCPA and gave rise to this action, [the defendant] expressly aimed its conduct at California" and "knew that the alleged harm caused by the text messages it sent to California cell phones was likely to be suffered in California").

The exercise of jurisdiction over Lopez comports with fair play and substantial justice. Lopez conducts business operations in Arizona by systematically markets to Arizona consumers and satisfying Arizona regulatory requirements to maintain his state insurance license. Lopez and his representatives confirmed Plaintiff's Arizona location, offered Arizona-specific insurance products, and provided Arizona insurance licensing credentials. Any burden of litigating in Arizona is outweighed by Arizona's substantial interest in protecting its residents from unlawful telemarketing practices.

Jurisdiction is equally reasonable given his Lopez's direct role in orchestrating illegal telemarketing telephones to Arizona residents.

## C. Failure to State a Claim

Lopez incorrectly asserts that Plaintiff has failed to plausibly plead "more than one telephone call" as required by 47 U.S.C. § 227(c)(5). This argument fails for several reasons. First, the Second Amended Complaint clearly identifies multiple calls placed from the same number associated with Lopez. The SAC details twelve calls received between December 9, 2023, and January 16, 2024, with eleven of these calls coming from the same number (860) 517-4558. SAC ¶ 53. This number is directly connected to the telemarketing operation in

9

which Lopez participated. The documentation of these repeated calls from the same number establishes a pattern of conduct clearly satisfying the "more than one telephone call" statutory requirement.

Second, Lopez's attempt to isolate himself from these calls ignores the coordinated nature of the telemarketing campaign. As the Ninth Circuit recognized in *Gomez v. Campbell-Ewald Co.*, liability under the TCPA extends to all participants in an integrated telemarketing operation, not just those who physically dial the numbers. 768 F.3d 871, 878-79 (9th Cir. 2014). The multiple calls from the same number demonstrate that Plaintiff was targeted by the same telemarketing operation in which Lopez was an active participant.

Third, Lopez not only participated in the December 9, 2023 call but, as established in the accompanying declaration, subsequently sent a text message to Plaintiff's Arizona cell phone. Under established Ninth Circuit precedent, "a text message is a 'call' within the TCPA." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009). This text message constitutes a separate "call" that, when combined with Lopez's participation in the December 9 telemarketing call, satisfies the multiple call requirement of § 227(c)(5).

Fourth, it is well-established that the TCPA is a remedial statute that should be construed to benefit consumers. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). Courts have consistently rejected formalistic approaches that would shield telemarketers from liability based on technical distinctions about which participant in a coordinated campaign physically dialed the number. The purpose of the TCPA is to protect consumers from unwanted calls, not to create loopholes for telemarketers to exploit.

The record clearly establishes multiple unwanted calls as part of a coordinated campaign targeting Plaintiff, with Lopez playing an integral role in this campaign. It is not unreasonable to assume Plaintiff could have had been connected to Lopez on any of the other calls presenting matching caller ID's thus the statutory requirement for "more than one telephone call" is therefore satisfied.

Lopez's core argument that he cannot be liable because he "did not initiate the call" fundamentally misunderstands TCPA liability. The Ninth Circuit has explicitly rejected this

narrow interpretation in *Gomez v. Campbell-Ewald Co.*, where the Court held that liability extends beyond those who physically dial a telephone number. 768 F.3d 871, 878-79 (9th Cir. 2014).

In *Gomez*, the Court explained that "[a]lthough Campbell-Ewald did not send any text messages, it might be vicariously liable for the messages sent by Mindmatics." *Id.* at 878. The Court further clarified that "the statutory language suggests otherwise, as § 227(b) simply imposes liability upon 'any person'—not 'any merchant.'" *Id.* at 879. Just as Campbell-Ewald argued it outsourced the dialing to avoid liability, Lopez similarly attempts to evade responsibility by claiming he merely received transferred calls rather than initiating them. The Gomez court also addressed the argument that outsourcing the actual dialing shields a defendant from liability, explaining that "[a]s a matter of policy it seems more important to subject the consultant to the consequences of TCPA infraction. After all, a merchant presumably hires a consultant in part due to its expertise in marketing norms." *Id.* at 879. This reasoning directly rebuts Lopez's position that his role in receiving the transferred call absolves him of responsibility.

Perhaps most significantly for this case, in Gomez the Ninth Circuit referenced its own precedent in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), noting that "we allowed a case to proceed against an analogous marketing consultant who was not 'responsible for the actual transmission of the text messages.'" *Gomez*, 768 F.3d at 879. The Court emphasized that while it "did not explain the basis of the defendants' potential liability, we implicitly acknowledged the existence of that basis." *Id.*

Here, Lopez was not merely a passive recipient of a transferred call. He actively participated in a coordinated telemarketing campaign targeting Arizona residents, identified himself as working for First Family Insurance, confirmed Plaintiff's residence in Arizona, and continued the sales pitch aimed at selling insurance to Plaintiff. The fact that Lopez did not physically dial Plaintiff's number does not shield him from liability under the TCPA or FTSA.

**D. Additional arguments for Rule 12(b)(6) motions to dismissed incorporated by reference**

To the extent Defendant Lopez incorporates Section III of the Dismissal Motion and in Section II of the Reply Plaintiff incorporates by reference Plaintiff's Response to Movants First Family Insurance, LLC And John Cosgriff's Motion to Dismiss Plaintiff Jason Crews' Second Amended Complaint or In the Alternative Leave to File An Amended Complaint and/or Conduct Jurisdictional Discovery (Doc. 51).

**E. Amendment Would Not Be Futile**

Should the Court find any deficiencies in the SAC, Plaintiff requests leave to amend. Nothing suggests amendment would be futile, and justice requires giving Plaintiff the opportunity to cure any pleading defects and/or conduct limited jurisdictional discovery.

**IV. CONCLUSION**

For the foregoing reasons, Movants' motion to dismiss should be denied in its entirety. Alternatively, Plaintiff requests leave to file an amended complaint addressing any deficiencies the Court may find, and/or conduct limited jurisdictional discovery.

Dated this April 1, 2025.

/s/ *Jason Crews*

Jason Crews

12

**COPIES** of the forgoing were filed with the court electronically via CM/ECF this same date.



By: _____/s/*Jason Crews*_____

      Jason Crews

13