# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Crews, | No. CV-24-00366-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| First Family Insurance LLC, et al., | |
| Defendants. | |

Pending before the Court are Defendants First Family Insurance, LLC and John Cosgriff's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 46) and Defendant Ryan Lopez's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 58). Each motion argues that the Second Amended Complaint ("SAC") (Doc. 41) should be dismissed for lack of personal jurisdiction and failure to state a claim. (Doc. 46 at 2; Doc. 58 at 2). For reasons discussed below, the motions are granted.

## BACKGROUND

Plaintiff Jason Crews ("Plaintiff") is an Arizona resident with Arizona phone numbers. (Doc. 41 at 2, 7). Defendant John Cosgriff ("Cosgriff") is Chief Executive Officer ("CEO") of Defendant First Family Insurance ("FFI")—a Florida limited liability company that brokers health insurance, life insurance, and medical savings plans. (*Id.* at 2). Defendant Ryan Lopez ("Lopez") is a Florida resident, independent insurance advisor, and licensed Arizona insurance agent, who works with FFI out of its Coral Springs, Florida office. (*Id.* at 3, 31-32). "Plaintiff ha[s] no prior business relationship" with Cosgriff, FFI,

or Lopez (collectively, "Defendants"). (*Id.* at 5).

On December 9, 2023, Plaintiff received a call from an unfamiliar number. (*Id.*). Plaintiff answered, "said hello multiple times, heard a beep sound, and then began recording the call." (*Id.* at 6). The caller mentioned "marketplace health insurance plans" and repeatedly told Plaintiff that "he was attempting to transfer Plaintiff to a licensed agent in [Plaintiff's] area." (*Id.*). Plaintiff feigned interest in obtaining insurance so that he could learn the identity of the caller, before eventually hanging up. (*Id.*). Approximately fifteen minutes later, Plaintiff received another call from a second unfamiliar number. (*Id.*). Plaintiff again answered, "said hello multiple times, heard a beep sound, and then began recording the call." (*Id.*). The caller, "Brian," confirmed Plaintiff's age and zip code, and stated that Plaintiff "qualified for insurance in [the] Marketplace." (*Id.* at 24). When Plaintiff feigned interest in obtaining insurance so that he could learn the identity of the caller, Brian transferred him to "Andrew," who was the "same individual who" made the first call to Plaintiff. (*Id.* at 6, 25). Indeed, Andrew told Plaintiff: "We had a conversation a few minutes ago." (*Id.* at 25). Andrew again confirmed Plaintiff's age and zip code before transferring Plaintiff to Lopez, "a licensed agent from [Plaintiff's] state." (*Id.* at 25-26).

After Plaintiff confirmed that he was "looking for insurance," Lopez asked for his phone number, state of residence, zip code, and other personal information. (*Id.* at 26-27). Once Lopez identified an insurance plan for Plaintiff, Plaintiff asked to "verify" Lopez's identity "[be]cause [he] was scammed" previously. (*Id.* at 29). Lopez immediately sent Plaintiff his business card, national producer number, and Arizona insurance license. (*Id.* at 29-31). Answering Plaintiff's questions about his credentials and associations, Lopez confirmed that he was "an independent broker" and that he worked "for" or "through" FFI. (*Id.* at 30-32).

At this point, Plaintiff asked to be placed on "Do Not Call List" and for Lopez to "send [him] a copy of [FFI's] internal Do Not Call policies." (*Id.* at 32). Lopez stated that he did not know who was calling Plaintiff but that the numbers were "coming from . . . a

call bank." (*Id.* at 33). Lopez said that he did not "physically dial[]" Plaintiff's number but rather picked up an "inbound call" from an "automated" system. (*Id.*). At this point, Plaintiff hung up. (*Id.*). Subsequently, between December 12, 2023, and January 16, 2024, Plaintiff received ten other calls from the second unfamiliar number. (*Id.* at 7-8). Plaintiff did not consent to any such calls. (*Id.* at 5).

## DISCUSSION

Plaintiff alleges that Defendants are individually and vicariously liable for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.[1] (*Id.* at 4-5, 12-21). The TCPA provides private causes of action based on violations of its provisions or Federal Communications Comision ("FCC") regulations. 47 U.S.C. §§ 227(b)(3), (c)(5). The FTSA creates a private cause of action for calls made to Florida residents. Fla. Stat. §§ 501.059(8)(a), (10).

### I.     Florida Telephone Solicitation Act

As an initial matter, Plaintiff has no standing to his claim under the FTSA. Although standing under a statutory cause of action is not generally treated as a jurisdictional issue, a plaintiff's suit may be "foreclosed" for a lack of standing under Article III of the U.S. Constitution if it is "so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that" the enacting legislature intended to authorize the plaintiff to sue. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014) (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012)).

Here, Plaintiff's interests are inconsistent with the statute's explicit purpose. The FTSA creates a private cause of action only for plaintiffs who reside in or are present in Florida when the call is received. Fla. Stat. §§ 501.059(1)(e), (8)(d); *Turizo v. Subway*

---

[1] Though Plaintiff does not distinguish between Defendants in Counts One, Two, or Three (Doc. 41 at 19-21) or state which theory of liability applies to which Defendant, the Court will assume that Plaintiff intended to make the allegations within each Count as to each Defendant. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a *pro se* pleading is to be "liberally construed").

- 3 -

*Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1346 (S.D. Fla. 2022) ("[B]y the statute's own terms, the autodialer provision does not extend to calls to non-Florida residents or persons outside the state."). The statute's explicit purpose—to protect Florida consumers—does not extend to Plaintiff, who is an Arizona resident, has Arizona phone numbers, and makes no claim that he was present in Florida at the time he received the alleged calls. (Doc. 60 at 1; *see also* Doc. 53 at 6-7; Doc. 61 at 8). Accordingly, Plaintiff's claim is foreclosed and Count III is dismissed with prejudice as to each Defendant.

## II. Telephone Consumer Protection Act

Counts I and II relate to the TCPA. Count I alleges that Defendants violated the TCPA's autodialer provision, which prohibits the use of an automatic telephone dialing system ("ATDS") to call a "telephone number assigned to a . . . cellular telephone service" absent "prior express [written] consent of the called party." (Doc. 41 at 19-20); 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii). Under the TCPA, an ATDS "must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021). Count II asserts that Defendants violated the FCC's Do-Not-Call registry regulations, which prohibit any telephone solicitation to "[a] residential telephone subscriber who has registered his . . . telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2); 47 U.S.C. § 227(c)(3)(F); (Doc. 41 at 20). A private right of action is available to people who "receive[] more than one telephone call within any 12-month period by or on behalf of the same entity in violation of" FCC regulations. 47 U.S.C. § 227(c)(5).

Defendants' Motions to Dismiss challenge Counts I and II for lack of personal jurisdiction and failure to state a claim. (Doc. 46 at 2; Doc. 58 at 2). Because Plaintiff's Second Amended Complaint falls below the standard necessary to state a claim against any Defendant, Counts I and II are also dismissed.

### A. Legal Standard for Failure to State a Claim

Under Rule 12(b)(6), a party may move to dismiss a claim for relief by asserting

"failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Indeed, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. In reviewing the complaint and any appropriately considered documents,[2] the Court will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court will not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). As such, "a formulaic recitation of the elements of a cause of action will not" suffice. *Twombly*, 550 U.S. at 545. Additionally, the Court "cannot assume any facts necessary to [a plaintiff's] . . . claim that they have not alleged." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). "Vague and conclusory allegations . . . are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**B.    Application**

Plaintiff fails to state a claim as to either Count I or Count II. As described above, to state a claim as to Count I, Plaintiff must plausibly allege that (1) Defendants called his number, (2) using an ATDS, (3) without his consent. *Meyer v. Portfolio Recovery Assocs.,*

---

[2] Though considering evidence outside the pleadings generally requires the Court to "convert the 12(b)(6) motion into a Rule 56 motion for summary judgment," the Court can "consider certain materials—documents attached to the complaint, documents incorporated by reference . . . —without converting" the motion. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

*LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); 47 U.S.C. § 227(b).  As to Count II, Plaintiff must plausibly allege that (1) Defendants called his number, (2) which was registered on the national do-not-call registry, (3) more than once in any 12-month period. 47 C.F.R. § 64.1200(c)(2); 47 U.S.C. §§ 227(c)(3)(F), (c)(5).  The first element of each claim can be fulfilled by alleging direct liability or by alleging vicarious liability which, under the TCPA, requires "an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014).  As discussed below, Plaintiff's SAC is almost entirely comprised of conclusory statements that "are not sufficient to withstand a motion to dismiss." *Ivey*, 673 F.2d at 268.  Plaintiff fails to make any more than a speculative claim that he has a right to relief as to any Defendant.  *Twombly*, 550 U.S. at 545.

### 1. Cosgriff

Plaintiff pleads no plausible connection between Cosgriff and the calls at issue.  Individual liability for a corporate officer under the TCPA requires that "the individual defendant[] [is] alleged to be [a] primary participant[] in the TCPA violations, much as a puppeteer pulls a puppet's strings, going well beyond the routine functions of [a] corporate officer[]." *Ott v. Mortg. Inv. Corp of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1057 (D. Or. 2014) (denying a motion to dismiss for failure to state a claim against individual defendants, who were corporate officers of a company which had employees placing calls according to internal policies).  Plaintiff parrots much of the language found in *Ott* about direct and personal participation of corporate officers (*see* Doc. 41 at 4-5) but overlooks the distinction that the corporate officers in *Ott* worked for the *same* company as the telemarketers—not for a company which may have hired third-party telemarketers.  *See Ott*, 65 F. Supp. 3d at 1054, 1060-61 (collecting cases and describing the bases for extension of individual TCPA liability over corporate officers).

Further unlike *Ott*, where the corporate officers' roles plausibly gave them authority over their own company's telemarketing, *id.* at 1054, Plaintiff's allegations that Cosgriff was personally and directly involved in the calls at issue are based on inferences drawn

from a description of a *different* company where Cosgriff serves as CEO—"UnitedHealthOne, the individual, family, and distribution line of business within UnitedHealthcare"—which has no relation to this litigation. (Doc. 41 at 5). Plaintiff alleges no facts regarding Cosgriff's responsibilities for his role at FFI from which the Court can draw any inference that Cosgriff might be able to have personal and direct involvement in the operations of third-party telemarketers. This dearth of factual support is equally fatal to any theory of Cosgriff's vicarious liability. (*See id.* at 15).

Cosgriff's liability under the TCPA cannot be premised on his role as FFI's CEO when all of Plaintiff's attempts to connect Cosgriff to the calls at issue depend on the repetition of "personal" and "direct" involvement based only on a speculative relationship with a third-party telemarketer and a description of another company not involved in this litigation.[3] Accordingly, Counts I and II are dismissed as to Cosgriff for failure to state a claim.

### 2. Lopez & FFI

Plaintiff also fails to state a claim against either Lopez or FFI under Count I or Count II. As an initial matter, only one of the phone calls that Plaintiff alleges provides any potentially meaningful factual support for Plaintiff's claims against Lopez and FFI: the second call that Plaintiff received on December 9, 2023. Plaintiff fails to plausibly connect Lopez and FFI to the other eleven calls, relying instead on speculative and attenuated assumptions about any purported relationship with the callers.

Indeed, the only actors that Plaintiff has plausibly associated with all the calls are Andrew and Brian, who Plaintiff spoke to before being transferred to Lopez. As Plaintiff notes in the SAC, he played along with the first call "with the hopes of ascertaining [the caller's] identity and asking them to stop," before eventually hanging up. (Doc. 41 at 6). When he received the second call, "[d]espite the different" number, "Plaintiff believed . . . [the caller] . . . to be the same individual who had called" earlier "that day because the

---

[3] For the same reasons, Plaintiff's inability to connect Cosgriff to the calls in any non-speculative way is fatal to his assertions of vicarious liability. *Campbell-Ewald Co.*, 768 F.3d at 879 (requiring plaintiff to show an agency relationship between defendant and third-party caller).

individual complained about Plaintiff disconnecting the call."[4] (*Id.*). Each of the subsequent ten calls that Plaintiff received came from the second phone number, associated with that "same individual." (*Id.* at 6-8).

The same cannot be said for Lopez or FFI. Neither Andrew nor Brian specifically mentioned Lopez, referring only to a "licensed agent" from Plaintiff's state. (*Id.* at 23-26). Lopez was connected to Plaintiff via an incoming call following two transfers, which Lopez attributed to a "call bank." (*Id.* at 31-33). During the call, Lopez stated that he did not know who had called Plaintiff, and Plaintiff provides no factual allegations to the contrary. (*Id.* at 33). In fact, Plaintiff seems to recognize that someone else—not Lopez— was the driving force behind the subsequent calls, acknowledging that his claims against Lopez are based on the "assum[ption] [that he] could have been connected to Lopez on any of the other calls" that came from the same number. (Doc. 61 at 10). Any alleged connection between Lopez and the first call relies on an even weaker assumption that Lopez is associated with a different phone number than the one that initiated the second call.

Similarly, during the second call, neither Andrew nor Brian mentioned FFI. (Doc. 41 at 23-26). FFI was not mentioned until after Plaintiff was transferred twice and asked Lopez who he worked for. (*Id.* at 31-33). Indeed, Lopez's statement during the second call that he worked with FFI as an independent broker is the only fact that ties FFI to any call. (*Id.* at 31). As discussed above, Plaintiff's connection between Lopez and any call other than the second is purely speculative; because Lopez represents the only potential tie between FFI and the callers, Plaintiff's claim that "FFI called at least [ten] additional times from the same caller ID" or placed the initial call is equally speculative. (*Id.* at 7).

In sum, Plaintiff only plausibly connects Lopez and FFI to the second call. As to all other calls, any connection with the remaining Defendants "stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678. Because Plaintiff's claims therefore rest wholly on his allegations regarding the second call, Plaintiff fails to state a claim against Lopez and FFI under Counts I and II. The Court will address Count II first.

---

[4] Brian made the second call to Plaintiff, before transferring him to Andrew, who told Plaintiff: "We had a conversation a few minutes ago." (Doc. 41 at 25).

Without any connection to the callers outside of the second phone call, Count II must be dismissed for failure to state a claim. To have a private cause of action under do-not-call registry regulations, a plaintiff's complaint must allege "more than one telephone call within any 12-month period by or on behalf of the same entity." 47 U.S.C. § 227(c)(5). Even if Defendants directly or vicariously caused the call to Plaintiff and Plaintiff's number was on the registry, the singular call which Plaintiff ties to Lopez and FFI cannot create liability under section 227(c) of the TCPA.[5] As such, Count II is dismissed as to Lopez and FFI.

As to Count I, Plaintiff's allegations do provide some facts about how the second call was made—specifically, that "Plaintiff said hello multiple times, heard a beep, and then began recording the call" (Doc. 41 at 6)—but again stop short of plausible entitlement to relief. Even if we assume that two elements of Plaintiff's ATDS claim are satisfied—Defendants directly or vicariously caused the second call to Plaintiff and Plaintiff did not consent to the second call—Plaintiff still fails to sufficiently allege that the callers used an ATDS during the second call. Indeed, a plaintiff must allege other facts that support an inference that an ATDS was used, such as "a pause" heard in "frequent and persistent" calls which "continued" after the plaintiff "asked the defendant to stop calling." *Schley v. One Planet Ops Inc.*, 445 F. Supp. 3d 454, 462 (N.D. Cal. 2020) (quoting *Smith v. Aitima Med. Equip., Inc.*, No. ED CV 16-00339, 2016 WL 4618780, at *5 (C.D. Cal., July 29, 2016)). While Plaintiff provides "a formulaic recitation of" some of these factors, he does so without sufficient support from specific factual allegations. (*See* Doc. 41 at 9); *Twombly*, 550 U.S. at 545.

---

[5] Plaintiff asserts in his Response to Lopez's motion to dismiss that Lopez's text message to Plaintiff during their phone call qualifies as "more than one telephone call." (Doc. 61 at 10). Though a text message can be considered a "call" under the TCPA, *Satterfield v. Simon & Schuester, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009), such a "call" can only provide the basis for liability if it violates the TCPA or associated regulations. 47 U.S.C. § 227(c)(5). A "call" made with the called party's "prior express invitation or permission" does not constitute "telephone solicitation" and therefore, is not subject to the do-not-call-registry regulations. 47 C.F.R. § 64.1200(f)(15)(i). Here, Plaintiff asked for a way to "verify" Lopez's identity, and gave permission—saying "that would make me feel better" and "[a]ll right"—when Lopez offered to send Plaintiff information about his license and credentials. (Doc. 41 at 29-30). Thus, Lopez's message to Plaintiff is not subject to the TCPA.

- 9 -

Because Lopez and FFI were only plausibly involved in one call, Plaintiff cannot rely on the frequency or persistence of calls to support an inference that an ATDS was used during the second calls. (Doc. 41 at 9). Though Plaintiff heard a pause and a beep, "[o]ne call and one pause, standing alone, do not take the claim of the use of an ATDS beyond the speculative level." *Schley*, 445 F. Supp. 3d at 462 (quoting *Smith*, 2016 WL 4618780, at *6). Moreover, Plaintiff's claims that he "was targeted" and "that the "same individual" made both the first and second calls (Doc. 41 at 6; Doc. 61 at 10), further condemn his claims. Despite his allegation that the first and second calls used "identical or nearly identical scripts" (Doc. 41 at 9), Plaintiff's detailed transcript of the second call does not reflect an "identical, repetitive, or impersonal call." *Stewart v. Network Cap. Funding Corp.*, 549 F. Supp. 3d 1058, 1060-61 (C.D. Cal. 2021). Rather, given Plaintiff's own emphasis on Andrew's "complain[t] about Plaintiff disconnecting the [earlier] call" (Doc. 41 at 6), Plaintiff seems to describe a resumption of the first call. Though such targeting does not automatically disqualify the use of an ATDS, *see Iniguez v. CBE Group*, 969 F. Supp. 3d 1241, 1247 (E.D. Cal. 2013), it does weigh against the plausibility of Plaintiff's already weak allegations. Plaintiff therefore also fails to state a claim against Lopez or FFI as to Count I.

Accordingly, Plaintiff fails to plausibly allege the basic elements of either cause of action he asserts under the TCPA. Counts I and II are therefore dismissed as to both Lopez and FFI.

### III. Jurisdictional Discovery & Dismissal

Plaintiff asks the court to for leave to amend or to conduct limited jurisdictional discovery. (Doc. 53 at 12; Doc. 61 at 12). Both requests are denied.[6]

A "district court's discretion to deny leave to amend is particularly broad where [the] plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). Indeed, "whether [a] plaintiff has previously

---

[6] Because Defendants' Motions to Dismiss are not granted for lack of jurisdiction, leave to conduct jurisdictional discovery is irrelevant to the disposition of these motions, and is denied.

- 10 -

amended his complaint" is one of "[f]ive factors are frequently used to assess the propriety of a motion for leave to amend." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citing *Ascon Props.*, 866 F.2d at 1160). The other four factors are: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, [and] (4) futility of amendment," but the Court need not apply all five factors to deny Plaintiff's request for leave to amend. *Id.* (declining to apply all five factors because futility and the chance to previously amend "plainly reveal[ed]" that plaintiff's claim should be dismissed with prejudice).

Leave to further amend—particularly where Plaintiff has already filed *three* versions of this complaint—would be futile. Plaintiff's lack of standing for Count III cannot be cured by amendment. As to Counts I and II, Plaintiff "fail[s] to state what additional facts [he] would plead if given leave to amend." *Kendall*, 518 F.3d at 1052. His pleadings fall far short of his burden to allege a plausible right to relief and rest on such attenuated theories liability that the Court is doubtful that his arguments could be cured.

Further, although leave to amend should be given "freely . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), Plaintiff has made misstatements of law that suggest "justice" would not apply in his favor. Throughout his arguments, Plaintiff attributes quotations to sources which do not contain such language, includes quotations with no attempt to connect them to a source, provides inaccurate pin cites, and repeatedly quotes legal authority out of its context, misstating the applicable legal rules. For instance, in his SAC (Doc. 41 at 12) and in his Responses (Doc. 53 at 5; Doc. 61 at 6-7), Plaintiff attributes a quotation to *United States v. Pollution Services of Oswego, Inc.*, 763 F.2d 133, 134-135 (2d Cir. 1985) that, upon the Court's reading of the case, cannot be found in that case. Similarly, he misattributes an inaccurate quotation that appears to be from *Luna v. Shac, LLC*, No. C14-00607, 2014 WL 3421514, at *4 (N.D. Cal. July 4, 2014) to a related, published case, *Luna v. Shac, LLC*, 122 F. Supp. 3d 936, 939-40 (N.D. Cal. 2015), which does not contain that language. (Doc. 61 at 7).

It is true that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle*, 429 U.S. at 106.

But a "*pro se* litigant[] [is] not excused from following court rules." *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1997). This includes Federal Rule of Civil Procedure 11(b), which binds litigants not only to a duty of candor to the Court but to a duty "to make a reasonable prefiling inquiry into the facts and law supporting intended claims." *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 836 (9th Cir. 2022).

Plaintiff has already filed three versions of his complaint and has not provided any basis upon for a finding that amendment is not futile. The Court thus denies leave to amend. Fed. R. Civ. P. 11(c)(4).

## CONCLUSION

Accordingly, the Court will grant all Defendants' Motions to Dismiss as to Counts I and II without granting Plaintiff leave to amend. Further, as provided above, Count III of Plaintiff's Second Amended Complaint is dismissed with prejudice.

**IT IS THEREFORE ORDERED** that Defendants First Family Insurance, LLC and John Cosgriff's Motion to Dismiss (Doc. 46) and Defendant Ryan Anthony Lopez's Motion to Dismiss (Doc. 58) are **GRANTED with prejudice as to Count III** for lack of standing to bring suit under the Florida Telephone Solicitation Act.

**IT IS FURTHER ORDERED** that Defendants First Family Insurance, LLC and John Cosgriff's Motion to Dismiss (Doc. 46) and Defendant Ryan Anthony Lopez's Motion to Dismiss (Doc. 58) are **GRANTED with prejudice as to Counts I and II** for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall terminate this action and enter judgment accordingly.

Dated this 1st day of December, 2025.

_____
G. Murray Snow
Senior United States District Judge